# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2005 MAR -4 P 2: 19

U.S. DISTRICT COURT
DISTRICT OF MASS.

```
*********************************************
CHARLES J. SENIOR, NORMAN FAHY,        *
RONALD D. PHIPPS, RAYMOND W.           *
POSTMA, THOMAS G. HIRL,                *
GARRETT M. FAGAN and UNITED            *
STEELWORKERS OF AMERICA,               *
LOCAL 12004,                           *
                                       *
                      Plaintiffs       *
v.                                     *
                                       *
NSTAR ELECTRIC AND GAS                 *
CORPORATION and COMMONWEALTH           *
GAS COMPANY,                           *
                                       *
                      Defendants.      *
*********************************************
```

Civil Action No. 04-10160-EFH

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Plaintiff retirees and their former labor union filed suit in January 2004, raising claims over modifications to retiree health benefits identical to claims then pending in Local 369, Utility Workers, et al. v. NSTAR Electric and Gas Corp., Civil Action No. 03-10530-EFH. In May 2004, this Court entered summary judgment for NSTAR Electric and Gas Corporation ("NSTAR") in Local 369, and dismissed the action. See Local 369, Utility Workers v. NSTAR Electric and Gas Corp., 317 F.Supp. 2d 69 (D. Mass. 2004) (Exh. A hereto). Despite the entry of summary judgment, the Plaintiffs to this action have been allowed to engage in discovery for over six (6) months. Notwithstanding this discovery, Plaintiffs will be unable to identify any material differences between this and the related action in which summary judgment was entered, much less any disputed issue

of material fact. Accordingly, summary judgment should be allowed, and Plaintiffs' suit dismissed.[1]

I.    **Background**

A.    **Pertinent Facts**

The individual Plaintiffs are former union employees of Commonwealth Gas who were represented by Plaintiff Local 12004 of the United Steelworkers of America ("Local 12004") upon retirement. After Boston Edison Company ("Boston Edison") and Commonwealth Energy System merged in 1999, resulting in the creation of NSTAR, NSTAR retained pre-existing retiree health maintained by those two companies, until April 1, 2003. At that time, NSTAR instituted changes to health coverage, affecting all union and non-union retirees of both Boston Edison and Commonwealth Energy. (See NSTAR Statement, ¶¶1-8, 23-34).

The Commonwealth Energy Post Retirement Benefit Program, established in 1993, has provided since that time that "the Company, through the Plan Administrator, may terminate the Program or discontinue Benefits hereunder at anytime..." (See NSTAR Statement, par. 36). In communications to employees and retirees regarding medical benefits, Commonwealth Energy consistently reserved its right to modify benefits. Employee benefit handbooks provided that "[t]he Company reserves the right, subject to the provisions of any collective bargaining agreement, to amend, modify or terminate the Plan at anytime." Summary plan descriptions, distributed regularly to employees and retirees, likewise contained similar language. (See id., ¶¶38-46).

The changes to retiree health benefits instituted in April 2003 were intended to continue comprehensive retiree health benefits, while reducing expenses and the burden of maintaining

---

[1]*For purposes of this motion only,* all matters set forth in the Statement of Undisputed, Material Facts Submitted by NSTAR Electric and Gas Corporation and Commonwealth Gas Company Pursuant to Local Rule 56.1 ("NSTAR Statement") are admitted to be true.

different plans. (See NSTAR Statement, ¶25). Some changes enhanced health benefits for Commonwealth Energy retirees (see id., ¶¶27-28), while others aligned benefits with those of Boston Edison retirees. Thus, before April 1, 2003, Commonwealth Energy retirees were reimbursed for Medicare Part B premiums (currently $78.20 per month); afterwards, retirees were not reimbursed. By contrast, no Boston Edison retiree has ever been reimbursed for this premium. Commonwealth Energy retirees under age 65 were transferred from Master Medical to Blue Care Elect Plan (or to one of two HMO plans, at their option). Boston Edison retirees have been covered by Blue Care Elect since the early 1990s. Retirees 65 and older were transferred from Medex III to Medex II (Medicare supplement) coverage, also provided to Boston Edison retirees. (Id., ¶¶26, 29, 31).[2]

**B.    Plaintiffs' Claims And Related Action**

Plaintiffs alleged the following claims for relief in their Second Amended Complaint:

Count I:     Violation of retiree health insurance plan in contravention of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C., §1001 et seq.

Count II:    Violation of collective bargaining agreements, and certain other labor agreements, under Section 301 of the Labor Management Relations Act, 29 U.S.C. §185.

Count III:   Equitable and/or promissory estoppel.

Count IV:    Breach of fiduciary responsibility, in violation of ERISA.

Count V:     Claims under state law for breach of retirement programs in 1997 and 1999.

In Local 369, Utility Workers v. NSTAR Electric and Gas Corp., 317 F.Supp. 2d 69 (D. Mass. 2004), this Court entered summary judgment for NSTAR on claims by retirees of Commonwealth Electric, Commonwealth Gas and NSTAR who had been members of Local 369 of the Utility Workers Union. Their claims challenged the same changes to retiree health benefits at

---

[2]The full changes are described at NSTAR Statement, pars. 26-34.

3

issue here. Their claims were based on the theory, also raised in this action, "that they were entitled to a life time of unaltered coverage under the Commonwealth plan." 317 F.Supp. 2d at 72.

The Plaintiffs in Local 369 based part of their claim on language in collective bargaining agreements (hereinafter "CBAs" or "CBA"), identical to that in Local 12004's CBAs with Commonwealth Gas. (See NSTAR Statement, pars. 9-16, 19). This Court held "that by incorporating the terms of the Master Medical, Medex and dental benefit plans, the CBAs at issue in this case did not prohibit NSTAR from making the types of changes at issue here. The plaintiffs' claim for breach of a CBA in violation of the LMRA is dismissed." 317 F.Supp. 2d at 73-74.

This Court also considered benefit summary documents identical to those provided to the Plaintiff retirees in this action. Some of these documents provided, inter alia, that health and dental "coverage will be for your life." See Local 369, 317 F.Supp. 2d at 74. This Court found any argument based on this provision unpersuasive: "[T]he [benefit] summaries provide that '[i]f any conflict arises between this description and the Plan document, or if we do not cover any point, the terms of the Plan document will always govern.' It is clear that the plan documents, not the plan summaries, control... [T]he plan documents clearly allow for the plans to be changed or cancelled." 317 F. Supp.2d at 74-75. In short, "the welfare benefit plans at issue here did not provided for a lifetime of unaltered health insurance coverage. The plaintiffs' claim for breach of plan provision in violation of ERISA is dismissed." 317 F.Supp. 2d at 77. See also 317 F.Supp. 2d at 77 n.7 (even if promise of unalterable health benefits made under 1997 retirement program, that program also "stated [that ] [t]his summary is not intended to offer detailed descriptions of the System's employee benefit plans. All information furnished is governed by the provisions of the actual plan documents pertaining to the appropriate benefit plan. If any conflict arises between this summary and the

4

System's employee benefit plan documents, or if any point is not covered, the terms of the appropriate plan documents will govern in all cases.' As already explained in detail, the terms of the...benefits plan explicitly provided that the plans could be changed or cancelled.").[3]

Further facts, as needed, are set forth in the "Argument" section of this memorandum.

**C.    ARGUMENT:    <u>Summary Judgment Is Appropriately Entered On All Counts Of Plaintiffs' Amended Complaint</u>.**

The claims of the Plaintiffs to this action are all based on the same modification of benefits at issue in <u>Local 369</u>. For the reasons discussed therein, summary judgment must enter in NSTAR's favor on all claims to the present action.

**1.    <u>Plaintiffs' Claim Of Breach Of Plan Provisions Under ERISA Must Be Dismissed</u> (Count I).**

Count I misconstrues the treatment of medical benefits under ERISA. Medical benefits are *not vested* by operation of ERISA. Plaintiffs provide no basis for concluding that the prerequisite explicit written agreement for vesting retiree medical benefits was ever created.

ERISA regulates pension benefits, and welfare benefits (such as health insurance). <u>U.A.W. v. Skinner Engine</u>, 188 F.3d 130, 147 (3rd Cir. 1999). While pension benefits vest, "ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. Nor does ERISA establish any minimum

---

[3]Also pending in this Court is a purported class action suit (<u>Balestracci, et al. v. NSTAR Electric and Gas Corp., et al.</u>, Civil Action No. 04-11103-EFH) brought by 22 management retirees of the Commonwealth Energy System, who challenged the adjustments to dental benefits provided under the 1997 and 1999 retirement programs. These same claims were asserted, and dismissed in <u>Local 369</u>. A summary judgment motion is being filed in that action simultaneously with the present motion. The memorandum (at 6-7) discusses whether ERISA applies to 1997 and 1999 retirement programs. That discussion is incorporated by reference herein.

participation, vesting, or funding requirements for welfare plans as it does for pension plans." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995). See Local 369, 317 F. Supp.2d at 76 ("The First Circuit has instructed district courts that the 'resolution of questions concerning employer obligations under such plans must be tailored to avoid undermining Congress' considered decision that welfare benefit plans not be subject to a vesting requirement.'") (citation omitted).

Since health plans are not vested under ERISA, Plaintiffs bear the significant burden of proving a vested right to coverage under retiree health plans, with no alteration of benefits, for life. See Howe v. Varity Corp., 896 F.2d 1107, 1109 (8th Cir. 1990) ("Plaintiffs have the burden of proving vested welfare benefits."). "'[C]ourts may not lightly infer an intent' on the part of a plan to 'voluntarily undertak[e] an obligation to provide vested, unalterable benefits.'" Spacek v. The Maritime Association, 134 F.3d 283, 293 (5th Cir. 1998) (citation omitted). "Given [the] presumption against vesting of welfare benefits, silence indicates that welfare benefits are not vested." Vallone v. CNA Financial, 375 F.3d 623, 632 (7th Cir.), cert. denied, 125 S. Ct. 670 (2004).

A commitment to vest welfare benefits must be found in express language in plan documents. Sprague v. General Motors, 133 F.3d 388, 400 (6th Cir.), cert. denied, 524 U.S. 923 (1998). Accord, Vallone v. CNA Financial, 375 F.3d at 632 ("The Supreme Court, followed by several courts of appeals, has indicated that a modification that purports to vest welfare benefits must be contained in the plan document, and must be stated in clear and express language."). "The written terms of the plan documents control and cannot be modified or superseded by the employer's oral undertakings." In re Unisys Corp., 58 F.3d 896, 902 (3rd Cir. 1995). See Dall v. The Chinet Co., 33 F. Supp. 2d 26, 41 (D. Me. 1998), aff'd mem., 201 F.3d 426 (1st Cir. 1999) ("ERISA prohibits oral and informal written amendments to welfare benefit plans."). See also Local 369, 317 F.Supp. 2d at 76 ("Several

6

circuits require that employers agree to vested benefits in writing as part of the plan documents.").

In the present matter, as in <u>Local 369</u>, <u>supra</u>, in which the exact same documents were at issue, no document provides for the vesting of retiree health benefits.  On the contrary, the Company's benefit documents made clear that it reserved the right to modify such benefits. Accordingly, Plaintiffs cannot meet their burden of establishing that their health benefits vested.

Plaintiffs may contend that "lifetime" language found in benefit summaries provided as part of early retirement programs in 1997 and 1999 created vested rights to health benefits.  Similar arguments are likely to be advanced for earlier versions of those summaries not containing the "lifetime" language.  Plaintiffs' position is untenable for the reasons discussed in <u>Local 369</u>.  As this Court found, other language in those summaries, varying only slightly over 20+ years, that the provisions of the actual benefit plans determined the benefits payable thereunder, made "clear that the plan documents, not the plan summaries, control," and that "the plan documents clearly allow for the plans to be changed or cancelled."  <u>See</u> 317 F.Supp. 2d at 74-75.

The governing plan document for Commonwealth Energy's post-retirement benefit plan reserved the right to discontinue benefits.  (NSTAR Statement, par. 36).  Likewise, the Summary Plan Description for health plans provided that "[t]he Company reserves the right, subject to the provisions of any collective bargaining agreement, to amend, modify or terminate the Plan at any time." (NSTAR Statement, par. 43, 44).  The language of the plan documents and plan summaries, as well as other documents (<u>see</u> <u>id</u>., pars. 39-41, 42-46, 53), when coupled with the language of the benefit summaries, makes plain that health benefits, which are not vested under ERISA, were not vested under the retiree dental plan.  <u>See U.A.W. v. Rockford Powertrain, Inc.</u>, 350 F.3d 698, 705 (7th Cir. 2003) (entering summary judgment for employer where benefit calculation sheets furnished

7

upon retirement provided that "eligibility for benefits and the actual amount of any payment are determined under the legal documents applying to the Plan.").

Plaintiffs may also assert that the reimbursement to retirees of Medicare Part B premiums prior to April 1, 2003 was not part of any plan, and so was not subject to any reservation of rights language. Plaintiffs' position is baseless. As discussed in <u>Local 369</u>, 317 F.Supp. 2d at 76, an obligation to vest benefits 'is not to be inferred lightly...' [T]he 'resolution of questions concerning employer obligations under such plans must be tailored to avoid undermining Congress' considered decision that welfare benefit plans not be subject to a vesting requirement.' In addition, 'several circuits require that employers agree to vested benefits in writing as part of the plan documents.'"

The meager language upon which Plaintiffs rely cannot be construed as creating any vested rights to reimbursement of the Medicare Part B premiums. Prior to a voluntary retirement program in 1997, employee benefit summaries provided, "[t]he Company will reimburse you for the cost of Medicare Part "B"..." (<u>See</u> NSTAR Statement, ¶66). Nothing in this language can be reasonably construed as creating a vested benefit. And when Commonwealth Energy adjusted the benefit summaries in about 1997 to read that Medicare Part B premiums were "currently" paid (see <u>id.</u>, ¶¶ 49, 55), Plaintiffs were certainly placed in no stronger position for creating a right to a vested benefit.

In addition, Plaintiffs cannot rely on the "for life" language in the benefit summaries (first issued around 1997), because the summaries use this phrase to describe "medical insurance coverage." Medicare Part B is a federal program. No representation is made regarding reimbursement for the cost of this federal program as being for any specific duration.

**2.    <u>No Triable Issue Of Material Fact Exists On The CBA Claims</u>** (Count II).

No material issue exists on whether Plaintiff retirees had a vested right to unaltered health

8

benefits, for life, under Local 12004's CBAs with Commonwealth Gas. Thus, Plaintiffs' claims under 29 U.S.C. §185, Section 301 of the Labor Management Relations Act, must be dismissed.

Plaintiffs are unlikely to argue that retiree health benefits vested under CBAs between Local 12004 and Commonwealth Gas between April 1980 and 2002.[4] These agreements consistently provided that "[e]ligible employees...will be covered under the terms of" certain health plans specifically identified therein. (See NSTAR Statement, ¶¶9-16, 19). As found by this Court in Local 369, 317 F.Supp. 2d at 74, in considering the exact same bargaining provisions at issue here:

> [T]he [CBAs]...explicitly incorporate the provisions of the Master Medical, Medex and dental benefit plans. The Master Medical, Medex and dental benefit plans, in turn, explicitly state that the plans can be changed or cancelled...When the benefit plans and the [CBA] are read as a whole contract, it is clear that the phrase 'will be covered' cannot mean a lifetime of unaltered coverage, as the plaintiffs contend, because the health benefit plans contain language in which the insurance company and NSTAR reserve the right to change or cancel coverage...In short, the contract is not ambiguous and its interpretation is therefore a question of law for the court. The Court holds that by incorporating the terms of the Master Medical, Medex and dental benefit plans, the [CBAs]...did not prohibit NSTAR from making the types of changes at issue here. The...claim for breach of a [CBA] in violation of the LMRA is dismissed.

Instead of relying upon these agreements, Plaintiffs may cite to a 1993 Memorandum of Agreement between Local 12004 and Commonwealth Gas. This agreement provided that employees meeting certain eligibility requirements "WILL BE eligible for COM/Energy sponsored Blue Cross and Blue Shield Master Medical or Medex plan. If you retire or terminate prior to age 62, you will pay 10% of medical premiums in effect as of January 1..When you reach age 62, COM/Energy will pay your entire premium." (NSTAR Statement, ¶17) (emphasis in original). The agreement

---

[4]NSTAR understands that no claim is asserted under the current CBA, executed in 2002.

9

contained a similar statement for dental plans. (Id., ¶17).

This language provides Plaintiffs with no greater rights than the CBAs discussed above. Just as with those agreements (which regularly used the phrase "will be covered" in respect to benefit plans), the 1993 agreement "incorporates the provisions of" medical and dental plans which "explicitly state that the plans can be changed or cancelled...When the benefit plans and the [CBA] are read as a whole contract, it is clear that the phrase 'will be covered' cannot mean a lifetime of unaltered coverage as the plaintiffs contend because the health benefit plans contain language in which the insurance company and NSTAR reserve the right to change or cancel coverage." 317 F.Supp. 2d at 74. Use of the phrase "will be eligible" in the memo of agreement, as opposed to "will be covered" in the CBAs, does not create any greater rights for Plaintiffs to this action.

For a small group of retirees between April 1, 1973 and March 31, 1980 (numbering about 10), Plaintiffs may argue that the CBAs in this period provided that "[a]ny eligible employee or retiree who is 65 years of age or over or whose spouse is age 65 or over, will be reimbursed an amount equal to the premium charged for Medicare Part B coverage for himself and/or his spouse." (See NSTAR Statement, ¶¶ 9-11). This language offers no support to this small group of retirees.

Initially, this argument undermines any claim on behalf of retirees who began receiving reimbursement for Medicare Part B premiums on or after April 1, 1980. Since then, no CBA has referred to reimbursement under Medicare Part B for retirees; only employees have been mentioned. (See NSTAR Statement, ¶¶12-16, 19). The elimination of language on retiree premiums, after its inclusion for several contracts, demonstrates that there was no protection of any sort for retiree reimbursement. See Carbon Fuel v. United Mine Workers, 444 U.S. 212, 221-222 (1979) ("It would do violence to the bargaining process and the national policy furthering free collective bargaining

10

to impose by judicial implication duty...that the parties in arms-length bargaining first included and then purposely deleted."); George A. Hormel v. UFCW, 879 F.2d 347, 352 (8th Cir. 1989) ("[T]here is a strong policy not to impose by judicial interpretation a right that was purposely deleted during the bargaining process.").See Local 369, 317 F.Supp. 2d at 73 (interpretation of collective bargaining agreements, for courts, including issue of whether agreement is ambiguous).

As for the small group of living persons who retired between April 1973 and March 1980, Plaintiffs may argue, under UAW v. Yard-Man, 716 F.2d 1476 (6th Cir. 1983), cert. denied, 465 U.S. 1007 (1984), that benefits received upon retirement vest. However, courts have consistently rejected the view "that there exists a presumption of lifetime benefits in the context of employee welfare benefits." See UAW v. Skinner Engine, 188 F.3d at 140. Skinner Engine Co. quoted approvingly from Anderson v. Alpha Portland Industries, 836 F.2d 1512, 1517 (8th Cir. 1988) on this issue:

> [W]e disagree with Yard-Man to the extent that it recognizes an inference of an intent to vest. Congress explicitly exempted welfare benefits from ERISA's vesting requirements. It, therefore, seems illogical to infer an intent to vest welfare benefits in every situation where an employee is eligible to receive them on the day he retires. The court in Yard-Man recognized that no federal labor policy presumptively favors vesting. Because Congress has taken a neutral position on this issue 'traditional rules for contractual' interpretation are applied as long as their application is consistent with federal labor policies.' Yard-Man, 716 F.2d at 1479. We believe that it is not at all inconsistent with labor policy to require plaintiffs to prove their case without the aid of gratuitous inferences.

Skinner Engine Co., 188 F.3d at 141. The court in Skinner Engine "echo[ed] these concerns and add[ed] that the Yard-Man inference may be contrary to Congress' intent in choosing specifically not to provide the vesting of employee welfare benefits." 188 F.3d at 141. Accord, IAM v. Masonite Corp., 122 F.3d 228, 232 (5th Cir. 1997) (rejecting Yard-Man).

11

The law in this Circuit is not to the contrary. In <u>United Steelworkers of America v. Textron</u>, 836 F.2d 6 (1ˢᵗ Cir. 1987), the court upheld a preliminary injunction on a claim for retiree health benefits. On the factor of likelihood of success on the merits, the court noted the "conflicting arguments" of the parties, 836 F.2d at 9, one of which -- the union's, citing <u>Yard-Man</u> -- was that "[t]he contract language -- retiree medical benefits 'shall be provided' and the 'Company shall pay' for retiree insurance -- is consistent with a...promise to pay retirees' insurance costs throughout their retirement, even after the particular collective bargaining agreement expires."

In <u>In re Morse Tool</u>, 148 B.R. 97 (Bankr. D. Mass. 1992), the court held that <u>Textron</u> had not adopted <u>Yard-Man</u> as the law of this Circuit. The citation to <u>Yard-Man</u> "suggests it is a recitation of the Union's argument; the [court] seldom decides such complex issues in a single sentence; and the Court stated clearly, 'at this stage of the proceedings, we need not weigh these conflicting arguments.' But even if it is a ruling of law, its reach is modest: it states only that the quoted contract language 'is consistent with' a promise to pay such benefits for life. This hardly provides the full analytical framework needed to resolve the issues presented in that case..." 148 B.R. at 145.

Applying these principles, it is apparent that no reasonable factfinder could conclude that the contract provision on reimbursing retirees for Medicare Part B premiums continues to provide rights to those who retired under that agreement, nearly 25 years after the agreement expired, and after the contract was amended to eliminate any reference to retirees. The language on retirees stands alongside numerous provisions on employee benefits. No contention is made that employees continue to enjoy rights under any agreement long after its expiration. There is no reasonable basis for concluding that this part of one provision should last indefinitely while none others did.

12

3.     **Plaintiffs' Claims of Equitable or Promissory Estoppel Should Be Dismissed** (Count III).

In Count III Plaintiffs assert claims of equitable or promissory estoppel against NSTAR, without explicitly addressing whether those claims arise under ERISA or state law. Regardless of how these claims are treated, summary judgment is appropriately entered.

a.     **Any State Law Claims Of Estoppel Are Preempted**.

With the potential exception of the 1997 and 1999 retirement programs (see discussion <u>supra</u> at ), any state law claims of equitable and promissory estoppel are preempted by ERISA, and must be dismissed. Under 29 U.S.C. §1144(a) of ERISA, "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter...shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." "'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." §1144(c)(1). "ERISA preempts a state law that has a connection with or refers to an ERISA-regulated benefits plan, 'even if the law is not specifically designed to affect such plans, or the effect is only indirect and even if the law is consistent with ERISA's substantive requirements.'" <u>Hampers v. W.R. Grace & Co.</u>, 202 F.3d 44, 49 (1st Cir. 2000) (citations omitted). <u>Accord, Hotz v. Blue Cross and Blue Shield</u>, 292 F.2d 57, 60 (1st Cir. 2002) (§1144(c) "has been applied widely to bar state claims seeking damages for alleged breach of obligations pertaining to an ERISA plan.").

Plaintiffs' claims of estoppel "relate to" -- indeed, center on -- NSTAR's retiree health plans. The broad preemptive reach of ERISA sweeps away any state law claims based thereon. See <u>Algren v. Pirelli Armstrong Tire</u>, 197 F.3d 915, 916 (8th Cir. 1999) ("state-law promissory estoppel claims" based on termination of retiree health benefits "were preempted by ERISA."); <u>Carlo v. Reed Rolled Thread Die</u>, 49 F.3d 790, 791 (1st Cir. 1995) ("ERISA preempts a state law claim of negligent

misrepresentation against an employer based on...representations regarding the employee's prospective benefits under an early retirement program."). See <u>Local 369</u>, 317 F.Supp. 2d at 72 (holding that ERISA preempts state law claims of breach of contract and misrepresentation).

**b.     <u>The Estoppel Claims Fail As A Matter Of Law</u>.**

There are further obstacles to Plaintiffs making any recovery under ERISA based on an estoppel theory.  As found by this Court in <u>Local 369</u>, 317 F.Supp. 2d at 72-73:

> An ERISA estoppel claim arises under the federal common law and is considered a form of 'appropriate relief' that is available under Section 1132(a)(3) of ERISA...However, equitable relief under Section 1132(a)(3) is not appropriate when 'Congress elsewhere provided adequate relief for a beneficiary's injury.'  In this case, Congress provided the plaintiffs with an adequate, alternative form of relief in the form of Section 1132(a)(1)(B), which provides plaintiffs with a cause of action 'to recover benefits due...under the terms of [the] Plan.'  Indeed, the plaintiffs have pursued this alternative cause of action...  In light of this alternative claim, the plaintiffs' separate cause of action for promissory estoppel under ERISA is not 'appropriate equitable relief,' and is dismissed. (citations omitted).

In this action, the Plaintiffs are likewise asserting an ERISA claim (Count I) for "benefits due", which arises under 29 U.S.C. §1132(a)(1)(B).  For the reasons stated in this Court's opinion, a further ERISA claim for equitable/promissory estoppel is unavailable.

Moreover, while it remains "an open question in this circuit whether an equitable estoppel claim is permitted under ERISA," <u>Mauser v. Raytheon Co. Pension Plan</u>, 239 F.3d 51, 57 (1st Cir. 2001),[5] it is unnecessary for this Court to decide this issue.  No Plaintiff can create a triable issue of material fact on an ERISA estoppel claim.  "'[T]here [is] no federal common law right to

---

[5]"The primary difference" between equitable and promissory estoppel is the nature of the statement inducing reliance: 'equitable estoppel depends on misrepresentation of an existing fact, while promissory estoppel requires a promise concerning future intent.'" <u>Lund v. Citizens Financial Group, Inc.</u>, 1999 WL 814341 (D. N.H. 1999) (citation omitted).

promissory estoppel under ERISA in cases involving oral amendments to or modifications of employee plans governed by ERISA.'" <u>Hudson v. Delta Air Lines</u>, 90 F.3d 451, 457-458 (11th Cir. 1996), <u>cert</u>. <u>denied</u>, 519 U.S. 1149 (1997) (citation omitted). <u>Accord</u>, <u>Law v. Ernst & Young</u>, 956 F.2d 364, 367-368 (1st Cir. 1992) (plaintiff's "estoppel claim is not actionable under ERISA because he did not establish that the estoppel would merely hold [the defendant] to a plausible interpretation of the plan, rather than to a modification of that plan."). Plaintiffs here are plainly seeking to amend the health plan documents to insert a vesting provision where none exists.

Even when state law principles are considered, no triable issue of material fact exists, and summary judgment must enter. The elements of estoppel are: "(1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." <u>Loranger Construction v. E.F. Hauserman</u>, 6 Mass. App. Ct. 152, 154, <u>aff'd</u>, 376 Mass. 757 (1978). "[A]n essential element under...promissory estoppel...is that there is an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation." <u>Rhode Island Hospital v. Varadian</u>, 419 Mass. 841, 848 (1995). <u>Compare Kelly v. Apollo Travel</u>, 2000 WL 1170074 (N.D. Ill. 2000) ("To establish a prima facie case for estoppel in an ERISA case, [plaintiff] must show the following: (1) knowing misrepresentation by the Defendants; (2) in writing; (3) with reasonable reliance by Plaintiff on the misrepresentation; (4) to Plaintiff's detriment.").

Plaintiffs cannot establish the requisite promise regarding health coverage that could never be altered. As discussed, Commonwealth Energy's benefit descriptions have consistently reserved the right to modify benefits. Thus, the summary plan description for January 1996 stated that "[t]he

15

Company reserves the right, subject to the provisions of any collective bargaining agreement, to amend, modify or terminate the Plan at anytime." (NSTAR Statement, ¶43). Likewise, the Post-Retirement Benefit Program, established in 1993, reserved the right to "terminate the Program or discontinue Benefits hereunder at any time..." (See id., ¶36). Since Plaintiffs are seeking to modify unambiguous plan documents in which the Company reserved the right to modify or terminate benefits, the estoppel claims must be dismissed. See Perreca v. Gluck, 295 F.3d 215, 225-226 (2nd Cir. 2002) (summary judgment for employer affirmed on ERISA estoppel claim, in light of "prominent disclaimer", as a result of which no promise can "reasonably be construed..."); Parker v. BankAmerica, 50 F.3d 757, 769 (9th Cir. 1995) (summary judgment for employer affirmed on ERISA estoppel claim based on statements inconsistent with plan, where disclaimer provided that plan language would prevail); Hart v. Equitable Life Assurance Society, 29 EBC 1831, 1835 (S.D.N.Y. 2002), aff'd mem., 75 Fed. Appx. 51 (2nd Cir. 2003) (summary judgment on ERISA estoppel claim where benefit statements stated that plan documents applied in event of discrepancy).

No promise can be based on describing health and dental benefits as "for life" in summaries provided before retirement (beginning in 1997). The summaries provided that the actual plan provisions, which themselves contained disclaimer language, controlled in each instance. In U.A.W. v. Rockford Powertrain, supra, the court upheld the entry of summary judgment for the employer, based in part on its rejection of the argument that "benefit calculation sheets" provided to employees during exit interviews prior to retirement provided them with vested medical benefits. These sheets provided that "'eligibility for benefits and the actual amount of any payment are determined only under the legal documents applying to the plan.'" 350 F.3d at 705. The court concluded that "the benefit calculation sheets do not seek to vest the retirees with any benefit different from that found

in the plan description." Id. Likewise, all Plaintiffs to this action were provided with benefit summaries, which stated that the plan documents determined the extent of any benefits. Thus, these documents cannot be viewed as making any promises upon which an estoppel claim can be based.

Further, Plaintiffs cannot establish that they detrimentally relied on the alleged promises. The benefit summaries were prepared, and exit interviews conducted, only after employees had given notice of retirement. Under these circumstances, any promises made at the exit interviews cannot have induced the retirement decision. See U.A.W. v. Rockford Powertrain, 350 F.3d at 705-706 (alleged statements at exit interviews cannot form basis of detrimental reliance).

In addition, Plaintiffs will be unable to establish that they reasonably relied upon the alleged promises. In Leuthner v. Blue Cross and Blue Shield, 270 F. Supp.2d 454 (M.D. Pa. 2003), the court granted summary judgment on a claim that the employer repeatedly promised to fund retiree health insurance for life. The court held that "because Blue Cross stated 'clearly and unequivocally' in the SPD that the company reserved the right to modify or amend the Plan... Plaintiffs cannot establish the reasonable reliance element of their equitable estoppel claim." 270 F.Supp. 2d at 592. Commonwealth Energy and NSTAR clearly and consistently reserved its right to modify or amend its dental insurance plans. Reliance on these promises was unreasonable, and summary judgment is thus properly entered on this claim.

**4.    Summary Judgment Is Properly Entered On Plaintiffs' Claim Of Breach Of Fiduciary Duty Under ERISA (Count IV).**

Plaintiffs further allege breach of fiduciary duty under ERISA, 29 U.S.C. §1104(a)(1). The evidence which Plaintiffs will be able to proffer falls far short of that required to create a triable issue of material fact on this claim, thus requiring the entry of summary judgment.

17

"[A] breach of fiduciary duty exists if fiduciaries 'mislead plan participants or misrepresent the terms or administration of a plan.'" Vallone v. CNA Financial, 375 F.3d at 640. The narrow scope of this cause of action is evident from the pertinent case law. In Sprague v. General Motors, supra, retirees based a fiduciary duty claim on representations that health benefits would be fully paid for life. The employer later imposed deductibles on medical treatment, and eliminated certain coverages. In entering summary judgment for General Motors (GM), the court concluded that "GM never told the early retirees that their health care benefits would be fully paid up or vested upon retirement. What GM told many of them, rather, was that their coverage was to be paid by GM for their lifetimes. This was undeniably true under the terms of GM's then-existing plan." 133 F.3d at 405. The court concluded:

> Had an early retiree asked about the possibility of the plan changing, and had he received a misleading answer, or had GM on its own initiative provided misleading information about the future of the plan, or had GM been required by ERISA or its implementing regulations to forecast the future, a different case would have been presented. But we do not think that GM's accurate representations of its current program can reasonably be deemed misleading. GM having given out no inaccurate information, there was no breach of fiduciary duty. 133 F. 3d at 406.

In Skinner Engine Co., supra, the court likewise affirmed the entry of summary judgment for the employer on a claim for breach of fiduciary duty. The court concluded that "there [was] no competent evidence...that the company...affirmatively made representations to the effect that retiree benefits were vested and could never be modified or terminated by the company." 188 F.3d at 150.

The court further held:

> [T]here is no evidence that suggests that the company stood silent and failed to properly advise employees when specifically asked about the duration of retiree benefits. There is no indication that the company created the belief in

18

the minds of the employees that the retiree benefits could never be changed or terminated. If they did not create this understanding, then the case law discussed above suggests that the company was under no obligation, as far as ERISA is concerned, to correct what turns out to have been a mistaken assumption on the part of the employees.

188 F.3d at 150. The court relied upon Sprague, 133 F.3d at 405-406, in concluding that the employer had no duty "under ERISA to inform its employees that retiree benefits may at some point in the future be modified or changed." 188 F.3d at 151.

Similarly, in Vallone v. CNA Financial, supra, the court affirmed the entry of summary judgment on a fiduciary duty claim. When an early retirement offer was made, the employer "had no intention of eliminating the 'lifetime' [health] benefit in the future." 375 F.3d at 641. Simply "because [the employer] wanted as many of its eligible employees as possible to accept the [retirement program] does not mean that it purposefully violated its duty of loyalty by failing to provide an explicit warning when the necessary information was already in the early retirees' hands. If anything, the failure to provide an explicit warning is just as easily explainable by non-actionable negligence as by a disloyal intent. In this respect, it is significant that the reduction of retiree welfare benefits in the face of rising health care costs is generally a relatively recent development, and warning of that possibility only recently became important." 375 F.3d at 641.

There must be evidence, the court held, that the employer "set out to disadvantage or deceive its employees...in order for a breach of fiduciary duty to be made out." 375 F.3d at 642. No such facts were presented. Indeed, "it [was] not even clear that the information provided was inaccurate. ...[T]he general retirement plan documents containing reservation of rights clauses were made part of the [plan] by the documents...There was no evidence that any employee ever specifically asked about the irrevocability of the...benefit, that [the employer] falsely indicated to any employee that

19

the benefit was irrevocable or that [the employer] was aware that the early retirees were coming to the mistaken conclusion that 'lifetime' equated to 'vested.'" 375 F.2d at 642.

Applying these principles, it is apparent that Plaintiffs' claim of breach of fiduciary duty must be dismissed. There is no evidence that when Plaintiffs, as prospective retirees, were provided with their summaries shortly before their retirement, NSTAR or its predecessor companies were aware that health benefits would not be provided for certain individuals' lifetimes. Nor is there any evidence of an intent to mislead or deceive any Plaintiff on the duration of health benefits. Indeed, as discussed, the plan summaries and documents allowed for adjustments to the benefit programs. Accordingly, summary judgment must be entered on this claim.

5.    **Summary Judgment Must Enter On Plaintiffs' Claims Under State Law For Breach Of The 1997 And 1999 Retirement Programs** (Count V).

In Count V Plaintiffs allege that NSTAR violated some undefined "state law" by breaching early retirement programs offered in 1997 and 1999. This Circuit has held that Commonwealth Energy's 1997 program was not an ERISA plan. See O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 266-272 (1st Cir. 2001). There is no reason to treat the 1999 program differently.

However, recourse to state law offers no assistance to Plaintiffs. The range of ERISA claims raised by Plaintiffs (breach of plan provisions, estoppel, breach of fiduciary duty) encompasses the full extent of potential state law claims. Since all ERISA claims must be dismissed, there is no basis for allowing parallel claims under state law to proceed. (See also Memorandum in Support of Defendants' Motion for Summary Judgment, Balestracci, et al. v. NSTAR Electric and Gas Corp., Civil Action No. 04-11103-EFH at 13-16).

20

**D.**    **Conclusion**

For all the above reasons, Defendants' Motion for Summary Judgment should be granted,

and Plaintiffs' suit dismissed, with prejudice.

Respectfully submitted,

NSTAR ELECTRIC AND GAS CORPORATION
and COMMONWEALTH GAS COMPANY,

By their Attorneys,

MORGAN, BROWN & JOY, LLP
200 State Street
Boston, MA 02109-2605
(617) 523-6666

By:_____
Keith B. Muntyan
B.B.O. #361380
Robert P. Morris
B.B.O. #546052

Dated: March 4, 2005

## CERTIFICATE OF SERVICE

I, Robert P. Morris, certify that on March 4, 2005, I caused to be served a copy of the
within pleading by hand on counsel for Plaintiffs, Warren H. Pyle, Pyle, Rome, Lichten, Ehrenberg
& Liss-Riordan, P.C., 18 Tremont Street, Suite 500, Boston, MA 02108.

_____
Robert P. Morris

21

Westlaw.

317 F.Supp.2d 69                                                                      Page 1
317 F.Supp.2d 69, 32 Employee Benefits Cas. 2774
(Cite as: 317 F.Supp.2d 69)

c

Motions, Pleadings and Filings

United States District Court,
D. Massachusetts.
UTILITY WORKERS, LOCAL 369, Robert J.
Dupre, et al., Plaintiffs
v.
NSTAR ELECTRIC AND GAS CORPORATION,
Defendant.
No. CIV.A.03-10530-EFH.

May 12, 2004.

**Background:** Local union and retired utility workers
sued electric and gas corporation formed as result of
merger between their employer and another
company, alleging it violated federal and state laws
when it switched them to the same health insurance
plans as retirees of the other company. Defendant
corporation moved for summary judgment.

**Holdings:** The District Court, Harrington, Senior
District Judge, held that:
(1) ERISA preempted state law breach of contract
and misrepresentation claims;
(2) promissory estoppel could be asserted as part of
Labor Management Relations Act (LMRA) breach of
contract claim, but could not be brought as
independent LMRA cause of action;
(3) separate cause of action for promissory estoppel
was not "appropriate equitable relief" under ERISA;
(4) for purposes of LMRA breach of contract claim,
"will be covered" language in collective bargaining
agreements (CBAs) was not ambiguous, and
agreements did not prohibit type of changes at issue;
and
(5) plans at issue were welfare benefit plans not
subject to ERISA's stringent vesting, participating
and funding requirements for pension plans, and they
did not provide for lifetime of unaltered health
insurance benefits.
Motion granted.

West Headnotes

**[1] Labor and Employment** ⊂⟶77
231Hk77

**[1] States** ⊂⟶18.51
360k18.51
ERISA preempted state law claims by local union
and retired utility workers for breach of contract and
misrepresentation; claims both related to postmerger
corporation's alleged representation that workers'
benefit plans, including health insurance for retirees,
would not change and necessarily had connection
with or reference to benefit plan itself.  Employee
Retirement Income Security Act of 1974, § 514(a),
29 U.S.C.A. § 1144(a).

**[2] Estoppel** ⊂⟶85
156k85
Federal common law of contract applicable under
LMRA includes doctrine of promissory estoppel;
thus, while promissory estoppel may be asserted as
part of LMRA breach of contract claim, it cannot be
brought as independent cause of action.  Labor
Management Relations Act, 1947, § 301, 29
U.S.C.A. § 185.

**[3] Estoppel** ⊂⟶85
156k85

**[3] Labor and Employment** ⊂⟶660
231Hk660
ERISA promissory estoppel claim arises under
federal common law and is considered form of
"appropriate equitable relief."  Employee Retirement
Income Security Act of 1974, § 502(a)(3), 29
U.S.C.A. § 1132(a)(3).

**[4] Estoppel** ⊂⟶85
156k85

**[4] Labor and Employment** ⊂⟶660
231Hk660
Separate cause of action for promissory estoppel was
not "appropriate equitable relief" under ERISA,
where retirees had adequate, alternative form of relief
in form of action to recover benefits due under terms
of plan and had pursued that alternative cause of
action in their amended complaint.  Employee
Retirement Income Security Act of 1974, §
502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B),(3).

**[5] Labor and Employment** ⊂⟶1235
231Hk1235
Collective bargaining agreements are contracts

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

317 F.Supp.2d 69                                                                Page 2
317 F.Supp.2d 69, 32 Employee Benefits Cas. 2774
(Cite as: 317 F.Supp.2d 69)

governed by federal common law.

[6] Contracts 🔑176(1)
95k176(1)

[6] Contracts 🔑176(2)
95k176(2)
Generally speaking, contract interpretation is legal
question for the court, unless contract is ambiguous,
in which case interpretation may become fact
question for jury.

[7] Contracts 🔑176(2)
95k176(2)
Whether contract is ambiguous in the first instance is
matter of law for court.

[8] Contracts 🔑143(2)
95k143(2)
Contract is "ambiguous" if agreement's terms are
inconsistent on their face or where phraseology can
support reasonable differences of opinion as to
meaning of words employed and obligations
undertaken.

[9] Contracts 🔑143.5
95k143.5
When interpreting contract, court cannot view words
or phrases in isolation; instead, language of contract
must be given construction which comports with
agreement as whole.

[10] Labor and Employment 🔑445
231Hk445
Language in collective bargaining agreements
(CBAs) that eligible employees "will be covered"
under terms and conditions of health insurance plans
was not ambiguous, and CBAs did not prohibit
postmerger corporation from making contested
changes in benefit coverage for retirees; CBAs
explicitly incorporated provisions of plans which in
turn explicitly stated they could be changed or
cancelled, and did not incorporate benefit summaries
stating that coverage would be "for life," which
would not control over plan documents anyway.
Labor Management Relations Act, 1947, § 301, 29
U.S.C.A. § 185.

[11] Estoppel 🔑52(5)
156k52(5)
In order for estoppel to apply, preliminary showing of
ambiguity is required; estoppel may not be invoked
to enlarge or extend coverage specified in contract.

[12] Labor and Employment 🔑425
231Hk425

[12] Labor and Employment 🔑549(1)
231Hk549(1)
Under ERISA, welfare benefit plans are not subject
to stringent vesting, participation and funding
requirements imposed on pension benefit plans; in
fact, employers or other plan sponsors are generally
free under ERISA, for any reason at any time, to
adopt, modify, or terminate welfare plans. Employee
Retirement Income Security Act of 1974, § 3(1, 2),
29 U.S.C.A. § 1002(1, 2).

[13] Labor and Employment 🔑549(1)
231Hk549(1)
Defining eligibility requirements for participation in
retiree welfare benefits plan is not the same as
granting vested rights; "vested" welfare benefits are
forever unalterable, whereas eligibility requirements
merely establish when or if person may participate in
welfare benefits plan should employer decide to offer
one. Employee Retirement Income Security Act of
1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

[14] Labor and Employment 🔑630
231Hk630
Court must enforce ERISA plans according to their
literal and natural meaning. Employee Retirement
Income Security Act of 1974, § 2 et seq., 29
U.S.C.A. § 1001 et seq.

*71 Paul F. Kelly, Segal, Roitman & Coleman,
Boston, MA, for Local 369 Utility Workers, Milton
Jenkins, Ruth Rebello, Mary Vieira, Mary Souza,
Antone Bernardo, Emile Cipriani, Jeanne Carrier,
Robert Tavares, Henry Knutsen, Vincent Crowley,
Elizabeth Mitchell, Cynthia Prsybyszewski, John
Whalen, Andrew Woodacre, Arnett Peccini,
Plaintiffs.

Keith B. Muntvan, Morgan, Brown & Joy, Robert P.
Morris, Morgan, Brown & Joy, Boston, MA, for
Nstar Electric & Gas Corporation, Roxanne Beth
Bungert, Defendant.

### MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

The plaintiffs allege that the defendant violated
federal and state laws when it changed certain
retirement benefits to which the plaintiffs were
entitled. The plaintiffs include Utility Workers Local
369 ("the Union") and twenty-five individuals who

317 F.Supp.2d 69                                                                 Page 3
317 F.Supp.2d 69, 32 Employee Benefits Cas. 2774
(Cite as: 317 F.Supp.2d 69)

retired from working for Commonwealth Energy ("Commonwealth"), which was merged with another corporation to form the defendant, NSTAR Electric and Gas Corp. ("NSTAR"). NSTAR has moved for summary judgment on all claims. NSTAR's motion is granted.

## I. BACKGROUND

NSTAR was created in 1999 by the merger of two companies, Boston Edison Co. ("Boston Edison") and Commonwealth. Prior to the merger, Boston Edison and Commonwealth maintained their own health insurance plans for retirees. After the merger, NSTAR retained these two separate plans until April 1, 2003, when it decided that Commonwealth retirees should be covered under the same plan as the Boston Edison retirees. The plaintiffs allege that they were entitled to a lifetime of unaltered coverage under the Commonwealth plan. According to the plaintiffs, switching to the Boston Edison plan caused them to pay more money for their health care or caused them to lose certain benefits that were covered by their previous plan. NSTAR maintains that the new plan is actually more generous than the Commonwealth retirees' previous plan.

The plaintiffs' amended complaint contains six counts. These include a claim for breach of collective bargaining agreements in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; a claim for breach of employee benefit plan provisions in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132; a claim of promissory estoppel under the LMRA; a claim of promissory estoppel under ERISA; a state law claim for breach of contract; and a state law claim *72 for misrepresentation. The complaint sought a permanent injunction against NSTAR, class certification, a clarification of the plaintiffs' rights, damages, and attorney's fees. After the complaint was filed, the plaintiffs moved for a preliminary injunction and class certification, but both motions were denied. NSTAR then filed the pending motion for summary judgment on all claims.

## II. DISCUSSION

A motion for summary judgment should be granted in favor of the defendant when the evidence, taken in the light most favorable to the plaintiff, shows that there is no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law. See Rocafort v. IBM Corp., 334 F.3d 115, 119 (1st

Cir.2003). The heart of this case is the plaintiffs' claims for breach of collective bargaining agreements in violation of the LMRA, and breach of employee benefit plan provisions in violation of ERISA. Before delving into those matters, the Court quickly addresses the plaintiffs' state law and estoppel claims.

[1] The First Circuit has held that ERISA "broadly preempts any state law claim that 'relate[s] to' an employee benefit plan...." Hotz v. Blue Cross and Blue Shield of Mass., Inc., 292 F.3d 57, 60 (1st Cir.2002). In this case, the plaintiffs' state law breach of contract and misrepresentation claims both relate to NSTAR's alleged representation that the plaintiffs' benefit plans would not change. These claims necessarily have "a connection with or reference to" the benefit plan itself. Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790, 794 (1st Cir.1995). Thus, the plaintiffs' state law claims for breach of contract and misrepresentation are preempted by federal law and are dismissed. See Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 277 (1st Cir.2000) (affirming district court's ruling that plaintiffs' state law breach of contract claim was preempted by ERISA); Carlo, 49 F.3d at 794 (plaintiff's state law misrepresentation claim preempted by ERISA).

[2] Preemption, however, does not apply to the plaintiffs' promissory estoppel claims because they are brought under the LMRA and ERISA, not under state law. The Court examines the LMRA promissory estoppel claim first. The defendant points to Sixth Circuit precedent holding that "[t]he federal common law of contract applicable under the LMRA includes the doctrine of promissory estoppel." Anderson v. AT&T Corp., 147 F.3d 467, 477 (6th Cir.1998). This means that while promissory estoppel may be asserted as part of an LMRA breach of contract claim, it "cannot be brought as an independent cause of action...." Bish v. Aquarion Servs. Co., 289 F.Supp.2d 134, 148 n. 9 (D.Conn.2003); see also Duran v. AT & T Corp., 2000 WL 33592869, *8 (S.D.Ohio 2000). In their papers opposing summary judgment, the plaintiffs make no developed counter argument on this issue and offer no authority to the contrary. Accordingly, the Court finds the Sixth Circuit precedent to be persuasive. The plaintiffs' separate claim of promissory estoppel under the LMRA is dismissed.

[3][4] The plaintiffs' ERISA promissory estoppel claim is also unavailing. An ERISA estoppel claim arises under the federal common law and is considered a form of "appropriate equitable relief" that is available under Section 1132(a)(3) of ERISA.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 4

See *Reid v. Gruntal & Co., Inc.,* 763 F.Supp. 672, 678 (D.Me.1991); *see also Ctr. v. First Int'l Life Ins. Co.,* 1997 WL 136473, *13 (D.Mass.1997). However, equitable relief under Section 1132(a)(3) is not appropriate when "Congress elsewhere provided adequate relief for a beneficiary's injury." *73*Varity Corp. v. Howe,* 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *see also Larocca v. Borden, Inc.,* 276 F.3d 22, 28-29 (1st Cir.2002). In this case, Congress provided the plaintiffs with an adequate, alternative form of relief in the form of Section 1132(a)(1)(B), which provides plaintiffs with a cause of action "to recover benefits due ... under the terms of [the] Plan." Indeed, the plaintiffs have pursued this alternative cause of action in their amended complaint. [FN1] In light of this alternative claim, the plaintiffs' separate cause of action for promissory estoppel under ERISA is not "appropriate equitable relief," and is dismissed. *See King v. UNUM Life Ins. Co. of Am.,* 221 F.Supp.2d 1, 4-5 (D.Me.2002).

> FN1. Count II of the complaint contains a claim for "breach of plan provision under ERISA," in which the plaintiffs allege that NSTAR has denied the plaintiffs "benefits due them under the terms of the plans." Although Count II makes no reference to any particular subsection of ERISA, the plaintiffs' memorandum in opposition to NSTAR's motion for summary judgment concedes that Count II is governed by Section 1132(a)(1)(B).

Having dismissed the plaintiffs' two state law claims and two promissory estoppel claims, the Court now addresses the primary issues in this case, namely the plaintiffs' claims for breach of collective bargaining agreements in violation of the LMRA, and breach of employee benefit plan provisions in violation of ERISA.

The Court begins with the LMRA claim. The plaintiffs argue that summary judgment is not appropriate on this claim because the collective bargaining agreements are ambiguous. [FN2] This ambiguity, according to the plaintiffs, means that interpreting the agreements is a question of fact best left for the jury.

> FN2. The plaintiffs are covered by multiple collective bargaining agreements. The parties agree, however, that the relevant portions of all the collective bargaining agreements are substantially the same.

[5][6][7][8] Collective bargaining agreements are contracts governed by federal common law. *See Textile Workers v. Lincoln Mills of Ala.,* 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Generally speaking, contract interpretation is a legal question for the court, unless the contract is ambiguous, in which case the interpretation may become a fact question for the jury. *See Casey v. Lifespan Corp.,* 62 F.Supp.2d 471, 480 (D.R.I.1999). Whether a contract is ambiguous in the first instance is a matter of law for the court. *See Lohnes v. Level 3 Communications, Inc.,* 272 F.3d 49, 53 (1st Cir.2001). A contract is ambiguous if "an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *Id.* (quoting *Fashion House, Inc. v. K mart Corp.,* 892 F.2d 1076, 1084 (1st Cir.1989)). The plaintiffs argue that ambiguity stems from language in the collective bargaining agreements that states:

> [E]ligible employees ... will be covered ... under the terms and conditions of Blue Cross and Blue Shield of Massachusetts Master Medical Certificate, MM CES 3, as amended, or Medex Subscriber Certificate, Medex CES 1, as amended, the provisions of which are made a part of this Contract.

Similar language was used regarding the dental benefits plan offered by the defendant. The plaintiffs contend that the phrase "eligible employees" could be construed to include retirees and that "will be covered" could mean a lifetime of unaltered coverage under the specified plans. NSTAR argues that the phrase "eligible employees" refers only to people currently working, not retirees. NSTAR further argues that the contract provides no indication that coverage would extend beyond *74 the expiration date of each collective bargaining agreement.

[9][10] The place to start is with the phrase "will be covered." When interpreting a contract, this Court cannot view words or phrases in isolation. *See Cochran v. Quest Software, Inc.,* 328 F.3d 1, 7 (1st Cir.2003). Instead, the language of a contract must be given "a construction which comports with the Agreement as a whole." *See Fashion House,* 892 F.2d at 1084. In this case, the collective bargaining agreements do not define the phrase "will be covered." The collective bargaining agreements do, however, explicitly incorporate the provisions of the Master Medical, Medex and dental benefit plans. The Master Medical, Medex and dental benefit plans, in turn, explicitly state that the plans can be changed or cancelled. [FN3] In light of these facts, the terms

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

317 F.Supp.2d 69                                                                                                    Page 5
317 F.Supp.2d 69, 32 Employee Benefits Cas. 2774
(Cite as: 317 F.Supp.2d 69)

of the collective bargaining agreements are not inconsistent, nor can there be reasonable differences of opinion regarding the meaning of the phrase "will be covered." *See In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.,* 58 F.3d 896, 903-04 (3d Cir.1995) ("the fact that the ... plans used terms such as 'lifetime' or 'for life' to describe the duration of retiree medical benefits, while at the same time expressly reserving the company's right to terminate the plans under which those benefits were provided, did not render the plans 'internally inconsistent' and therefore ambiguous."). When the benefit plans and the collective bargaining agreement are read as a whole contract, it is clear that the phrase "will be covered" cannot mean a lifetime of unaltered coverage, as the plaintiffs contend, because the health benefit plans contain language in which the insurance company and NSTAR reserve the right to change or cancel coverage. *See DeGeare v. Alpha Portland Indus., Inc.,* 837 F.2d 812, 816 (8th Cir.1988) (holding employer's promise that retiree benefits "will continue" did not create vested lifetime benefits in the face of a termination clause), vacated and remanded on other grounds, 489 U.S. 1049, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1989). In short, the contract is not ambiguous and its interpretation is therefore a question of law for the court. *See Lohnes,* 272 F.3d at 53. The Court holds that by incorporating the terms of the Master Medical, Medex and dental benefit plans, the collective bargaining agreements at issue in this case did not prohibit NSTAR from making the types of changes at issue here. The plaintiffs' claim for breach of a collective bargaining agreement in violation of the LMRA is dismissed.

> FN3. The Master Medical plan, for example, stated that "[w]e may change a part of the contract," and that "[y]our plan sponsor may cancel your contract for any reason." Similarly, the Medex plan stated "Blue Cross and Blue Shield will cancel your membership under this certificate only when ... [y]our group terminates the contract." The Delta Dental Plan of Massachusetts also provided that "[y]our plan sponsor may cancel your contract for any reason."

The plaintiffs raise one counter argument that is particularly worthy of discussion. The plaintiffs contend that the collective bargaining agreements provided a lifetime of unaltered coverage because some plaintiffs received benefit summaries that stated "your medical insurance coverage will be for your life" and "your dental coverage will be for your life." The benefit summaries, however, were not

incorporated into the terms of the collective bargaining agreements, as were the provisions of the Master Medical, Medex and dental benefit plans themselves. Therefore, the benefit summaries are not relevant to interpreting the terms of the collective bargaining agreements. Even if they were relevant, the benefit summaries explicitly state that "the Company reserves the **\*75** right, subject to the provisions of any collective bargaining agreement, to amend, modify or terminate the Plan at anytime." More importantly, the summaries provide that "[i]f any conflict arises between this description and the Plan document, or if we do not cover any point, the terms of the Plan document will always govern." It is clear that the plan documents, not the plan summaries, control. As has already been explained, the plan documents clearly allow for the plans to be changed or cancelled. *See Gable v. Sweetheart Cup Co., Inc.,* 35 F.3d 851, 856 (4th Cir.1994) ("[E]xpress reservation of the company's right to modify or terminate the participants' benefits is plainly inconsistent with any alleged intent to vest those benefits."); *Anderson v. Alpha Portland Indus., Inc.,* 836 F.2d 1512, 1519 (8th Cir.1988) (holding that employer's promise to provide welfare benefits "until death of retiree" did not create vested rights because employer had expressly reserved the right to terminate or amend the plan).

[11] In light of this Court's holding regarding the phrase "will be covered," it is not necessary to explore the meaning of "eligible employees." Even if the collective bargaining agreements applied to retirees, the plaintiffs would still not have a viable claim because, as this Court has already held, the collective bargaining agreements did not provide for unaltered, lifetime coverage. Before leaving the plaintiffs' LMRA claim, a brief word must be said about promissory estoppel. As the Court mentioned previously when discussing the plaintiffs' LMRA estoppel claim, "[t]he federal common law of contract applicable under the LMRA includes the doctrine of promissory estoppel." *Anderson,* 147 F.3d at 477. The Court, however, need not consider the estoppel issue as part of the plaintiffs' claim for breach of collective bargaining agreements given that the agreements themselves are unambiguous. The First Circuit has explained that in order for estoppel to apply "a preliminary showing of ambiguity is required; estoppel may not be invoked to enlarge or extend the coverage specified in a contract." *Gaskell v. Harvard Coop. Soc'y,* 3 F.3d 495, 502 n. 10 (1st Cir.1993) (citation and quotation marks omitted).

[12] The Court now turns to the second major issue

in this case, namely, the plaintiffs' allegation in Count II of the amended complaint that the defendant breached benefit plan provisions in violation of ERISA. It must be noted at the outset that Count II of the amended complaint does not allege that NSTAR violated the Master Medical, Medex or dental benefit plans themselves. Rather, the amended complaint alleges that NSTAR violated the Commonwealth Pension Plan and a second document entitled "Personnel Reduction Program" ("PRP"). Both the Commonwealth Pension Plan and PRP are considered "welfare benefit plans" under ERISA, and therefore are not subject to the "stringent vesting, participation and funding requirements" imposed by ERISA on pension benefit plans. [FN4] *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 585 (1st Cir.1993). In fact, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). This does not mean, however, that such plans can never vest. It is certainly possible *76 for an employer to "oblige itself contractually to maintain benefits at a certain level in ways that are not mandated by ERISA." *Vasseur v. Halliburton Co.*, 950 F.2d 1002, 1006 (5th Cir.1992). But such an obligation "is not to be inferred lightly." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W., v. Skinner Engine Co.*, 188 F.3d 130, 139 (3d Cir.1999). The First Circuit has instructed district courts that the "resolution of questions concerning employer obligations under such plans must be tailored to avoid undermining Congress' considered decision that welfare benefit plans not be subject to a vesting requirement." *Allen v. Adage, Inc.*, 967 F.2d 695, 698 (1st Cir.1992) (quotation marks omitted). In addition, several circuits require that employers agree to vested benefits in writing as part of the plan documents. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir.1998) (collecting cases), *cert. denied*, 524 U.S. 923, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998). With these principles in mind, the Court examines the facts of this case.

> FN4. NSTAR, in passing, suggests that the PRP is not an ERISA plan and therefore cannot be the basis for a claim under Count II. NSTAR, however, only offers one case citation and no developed argumentation on this point. Accordingly, the argument is deemed to be waived. *See Rocafort*, 334 F.3d at 121.

Count II of the amended complaint alleges that the plaintiffs "were entitled under the terms of the Commonwealth Pension Plan to the level of retiree medical care that they received at the time of their retirement for the rest of their life." It is undisputed, however, that the terms of the Commonwealth Pension Plan explicitly excluded health care coverage. [FN5] Simply put, the plaintiffs have failed to identify any provision of the Commonwealth Pension Plan that provides vested lifetime health insurance coverage.

> FN5. The Commonwealth Pension Plan states that "health care programs themselves are not part of this Plan, are not subject to the terms and conditions of this Plan and may be amended or terminated from time to time by appropriate officers of the Participating Company...."

The plaintiffs also claim as part of Count II that the PRP entitles them to a lifetime of vested health benefits. The PRP was a document that Commonwealth distributed to employees in 1997 when it decided to reduce its workforce. The PRP contained a section regarding health and dental care. This section defined eligibility criteria for participation in the company's health benefits program. [FN6] The plaintiffs claim that the eligibility requirements contained in the PRP amounted to promises of vested post-retirement health benefits. The crux of NSTAR's defense is that the eligibility requirements established by the PRP did not amount to vested post-retirement health benefits.

> FN6. The eligibility criteria included the so-called "Rule of 75," which was a calculation based on a combination of the employee's age and years of service to the company.

[13][14] It is clear that defining the eligibility requirements for participation in a retiree welfare benefits plan is not the same as granting vested rights. *See Williams v. Caterpillar, Inc.*, 944 F.2d 658, 666-67 (9th Cir.1991) ("Retiree medical benefits do not become vested once an employee becomes eligible or retires."); *Howe v. Varity Corp.*, 896 F.2d 1107, 1110 (8th Cir.1990) ("[T]he mere fact that employee welfare benefits continue in retirement does not indicate that the benefits become vested for life at the moment of retirement."). The Court understands "vested" welfare benefits to be benefits that are "forever unalterable." *Sprague*, 133 F.3d at 400. In contrast, eligibility requirements merely

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

317 F.Supp.2d 69
317 F.Supp.2d 69, 32 Employee Benefits Cas. 2774
**(Cite as: 317 F.Supp.2d 69)**

establish when or if a person may participate in a welfare benefits plan should an employer decide to offer one--keeping in mind, of course, that the plan "can be altered or terminated by an employer at any time." *77*Campbell v. BankBoston, 206 F.Supp.2d 70, 75 (D.Mass.2002)*. This Court must enforce ERISA plans according to their "literal and natural meaning." *Harris,* 208 F.3d at 277-78 (citation and quotation marks omitted). Simply put, the literal and natural meaning of the eligibility requirements contained within the PRP is not equivalent to promises of forever unalterable health benefits. [FN7] *See Sprague,* 133 F.3d at 400 ("the intent to vest must be found in the plan documents and must be stated in clear and express language." (citation and quotation marks omitted)). Accordingly, the welfare benefit plans at issue here did not provide for a lifetime of unaltered health insurance coverage. The plaintiffs' claim for breach of plan provisions in violation of ERISA is dismissed.

> FN7. Even if the eligibility requirements contained in the PRP could be construed as promises of unalterable health benefits, it should also be noted that the PRP stated "[t]his summary is not intended to offer detailed descriptions of the System's employee benefit plans. All information furnished is governed by the provisions of the actual plan documents pertaining to the appropriate benefit plan. If any conflict arises between this summary and the System's employee benefit plan documents, or if any point is not covered, the terms of the appropriate plan documents will govern in all cases." As already explained in detail, the terms of the Master Medical, Medex and dental benefits plan explicitly provided that the plans could be changed or cancelled.

Lastly, NSTAR has moved to dismiss Plaintiff Joyce Baker for failure to prosecute because she has not responded to interrogatories served on August 1, 2003. In light of this Court's dismissal of all claims on summary judgment, NSTAR's motion regarding Joyce Baker is moot.

III. *CONCLUSION*

NSTAR's motion for summary judgment is granted on all counts.

SO ORDERED.

317 F.Supp.2d 69, 32 Employee Benefits Cas. 2774

Motions, Pleadings and Filings (Back to top)

1:03CV10530          (Docket)
(Mar. 25, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.