UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CHARLES J. SENIOR, NORMAN FAHY,          \*
RONALD D. PHIPPS, RAYMOND W.             \*
POSTMA, THOMAS G. HIRL,                  \*
GARRETT M. FAGAN and UNITED              \*
STEELWORKERS OF AMERICA,                 \*
LOCAL 12004,                             \*
                                         \*
                          **Plaintiffs**     \*
v.                                       \*        **Civil Action No. 04-10160-EFH**
                                         \*
NSTAR ELECTRIC AND GAS                   \*
CORPORATION and COMMONWEALTH             \*
GAS COMPANY,                             \*
                                         \*
                          **Defendants.**    \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## STATEMENT OF UNDISPUTED, MATERIAL FACTS SUBMITTED BY NSTAR ELECTRIC AND GAS CORPORATION AND COMMONWEALTH GAS COMPANY PURSUANT TO LOCAL RULE 56.1

Pursuant to Local Rule 56.1, Defendant NSTAR Electric and Gas Corporation

("NSTAR") and Commonwealth Gas Company ("Commonwealth Gas") (collectively referred to as

"Defendants") submit their Statement of Undisputed, Material Facts in Support of their Motion for

Summary Judgment:

A.    **Parties**

1.    NSTAR is an energy delivery company serving approximately 1.3 million customers

in 80 Massachusetts cities and towns from Worcester to Provincetown.[1] Following the 1999 merger

of BEC Energy, the parent company of Boston Edison Company ("Boston Edison"), with

Commonwealth Energy, the parent company of Commonwealth Electric Company, Commonwealth

---

[1]All facts set forth herein are assumed to be true *for purposes of this motion only.*

Gas and Cambridge Electric Company, NSTAR became the merged entity's operating company and the employer of BEC Energy and Commonwealth Energy employees. (Amended Complaint and Demand for Jury Trial, <u>Utility Workers, Local 369, et al. v. NSTAR Electric and Gas Corp.</u>, Civil Action No. 03-19530-EFH, par. 3, Exh. 1 to Appendix to Motion for Summary Judgment of Defendants NSTAR Electric and Gas Corporation and Commonwealth Gas Company ("NSTAR Appendix");[2] Answer and Affirmative Defenses of Defendant NSTAR Electric and Gas Corporation to Amended Complaint and Demand for Jury Trial, <u>Utility Workers, Local 369, et al. v. NSTAR Electric and Gas Corp.</u>, Civil Action No. 03-10530-EFH, par. 3, Exh. 2 to NSTAR Appendix; Second Amended Complaint ("Complaint"), par. 3, Exh. 3 to NSTAR Appendix; Answer and Affirmative Defenses of Defendant NSTAR Electric and Gas Corporation and Commonwealth Gas Company to Second Amended Complaint of Plaintiffs ("Answer"), par. 3, Exh. 4 to NSTAR Appendix).

    2.    Plaintiff United Steelworkers of America, AFL-CIO ("Local 12004"), is a labor organization, and the collective bargaining representative of employees of Commonwealth Gas, and since 1999, of NSTAR. (Complaint, par. 2; Answer, par. 2).

    3.    Plaintiff Garrett Fagan was born on August 10, 1925. He was employed by Commonwealth Gas and its predecessors from on or about 1955 until on or about September 1, 1980. (Deposition of Garrett Fagan ("Fagan Dep"), 5-6, 31-32, Exh. 11 to NSTAR Appendix; New England Gas and Electric Association and Subsidiary Companies, Information Relative to Employee Benefits Upon Attaining Your Normal Retirement Age, Exh. 34 to NSTAR Appendix).

---

[2]Copies of all documents referred to herein are included in the NSTAR Appendix, submitted herewith. In accordance with Local Rule 5.3, documents containing the "personal data identifiers" set forth therein have been redacted to exclude such information.

4.     Plaintiff Norman Fahy was born on October 9, 1938.  He commenced employment for a predecessor of Commonwealth Gas on or about 1960.  (Information Relative to Employee Benefits Upon Your Retirement Date, Norman J. Fahy ("Fahy Information Document"), Exh. 35 to NSTAR Appendix).  He retired from Commonwealth Gas effective November 1, 1997.  (Deposition of Norman J. Fahy ("Fahy Dep."), 6, 9, Exh. 12 to NSTAR Appendix; Fahy Information Document).

5.     Plaintiff Thomas G. Hirl was born on December 11, 1944.  He was employed by Commonwealth Gas and its predecessors between on or about 1963 and March 1, 2000.  (Deposition of Thomas G. Hirl ("Hirl Dep"), 7-9, Exh. 16 to NSTAR Appendix; Information Relative to Employee Benefits Upon Your Retirement Date ("Hirl Information Document"), Exh. 36 to NSTAR Appendix).

6.     Plaintiff Ronald D. Phipps was born on July 26, 1938.  He was employed by Commonwealth Gas and its predecessors from on or about 1960 until on or about November 1, 1997.  (Deposition of Ronald D. Phipps ("Phipps Dep."), 6-8, Exh. 20 to NSTAR Appendix; Information Relative to Employee Benefit Upon Your Retirement Date ("Phipps Information Document"), Exh. 37 to NSTAR Appendix).

7.     Plaintiff Raymond W. Postma was employed by Commonwealth Gas and its predecessors from on or about 1968 until on or about April 1, 2000.  (Deposition of Raymond W. Postma ("Postma Dep."), 5-7, Exh. 21 to NSTAR Appendix; Information Relative to Employee Benefits Upon Your Retirement Date , Raymond W. Postma ("Postma Information Document"), Exh. 38 to NSTAR Appendix).

8.     Plaintiff Charles J. Senior was born on March 10, 1932.  He began working for a predecessor of Commonwealth Gas about 1956.  (Deposition of Charles J. Senior ("Senior Dep."),

3

5, Exh. 22 to NSTAR Appendix). He retired from Commonwealth Gas effective January 1, 1993.

(Senior Dep., 10). Mr. Senior died on January 27, 2005.

**B.    Pertinent Provisions Of Collective Bargaining Agreements**

9.    Local 12004 and Commonwealth Gas entered into a series of collective bargaining

agreements for many years. Article VI, Section 2 of the agreement covering the period April 1, 1973

to April 1, 1975 provided in part as follows:

> HEALTH INSURANCE COVERAGE
>
> A.    All full time regular employees with six (6) months of continuous employment and their eligible dependents will be covered under Blue Cross/Blue Shield Master Medical Certificate MM 2-1-68 Rev. and supplemented by amendatory riders R770, R642, R626, R603, R623, R630, R662, R126, R300 and R658 except that if such eligible employee or dependent is age 65 or over, such person shall be covered under Medicare Extension Certificate ME 3 7-1-66 as amended by Rider ME 3 R316. The Company will continue to pay the entire cost of this plan.
>
> B. Medicare B Reimbursement
>
> Any eligible employee or retiree who is 65 years of age or over or whose spouse is age 65 or over, will be reimbursed an amount equal to the premium charged for Medicare Part B coverage for himself and/or his spouse.
>
> C. Dental Plan
>
> Effective April 1, 1974, all full time regular and limited employees with six (6) months of continuous employment and their eligible dependents will be covered under Massachusetts Dental Service Corporation benefits as outlined in Certificate DS-1 and appropriate riders, otherwise known as First-Level 70% Plan (Plan 5). The Company will pay the entire premium of the plan.

(Exh. 24 to NSTAR Appendix).

10.    Local 12004 and Commonwealth Gas entered into a collective bargaining agreement

covering the period April 1, 1975 to April 1, 1978. Article VI, Section 2 of that agreement provided

in part as follows:

### HEALTH INSURANCE COVERAGE

A.    All full time regular employees with six (6) months of continuous employment and their eligible dependents will be covered under Blue Cross/Blue Shield Master Medical Certificate MM 2-1-68 Rev. and supplemented by amendatory riders R770, R642, R626, R603, R623, R630, R662, R126, R300 and R658 except that if such eligible employee or dependent is age 65 or over, such person shall be covered under Medicare Extension Certificate ME 3 7-1-66 as amended by Rider ME 3 R316.

The Company will continue to pay the entire cost of this plan.

B.  Medicare B Reimbursement

Any eligible employee or retiree who is 65 years of age or over or whose spouse is age 65 or over, will be reimbursed an amount equal to the premium charged for Medicare Part B coverage for himself and/or his spouse.

C.  Dental Plan

All full time regular employees with six (6) months of continuous employment and their eligible dependents will be covered under Massachusetts Dental Service Corporation benefits as outlined in Certificate DS-1 and appropriate riders, otherwise known as First-Level 70% Plan (Plan 5). The Company will pay the entire premium of the plan.

(Exh. 25 to NSTAR Appendix).

11.    Local 12004 and Commonwealth Gas entered into a collective bargaining agreement covering the period April 1, 1978 to April 1, 1980. Article VI, Section 2 of that agreement provided in part as follows:

### HEALTH INSURANCE COVERAGE

All full-time regular employees with thirty (30) days of continuous employment and their eligible dependents will be covered under Blue Cross/Blue Shield Master Medical Certificate MM 9 (1/1/76), as amended April 1, 1978, the provisions of which are made a part of this contract. The Company will continue to pay the entire cost of the Plan.

5

## MEDICARE B REIMBURSEMENT

Any eligible employee or retiree who is 65 years of age or over or whose spouse is age 65 or over, will be reimbursed an amount equal to the premium charged for Medicare Part B coverage for himself and/or his spouse.

## DENTAL PLAN

All full-time regular employees with thirty (30) days of continuous employment and their eligible dependents will be covered under Massachusetts Dental Service Corporation benefits as outlined in Certificate DS-1 and appropriate riders, otherwise known as First Level 70% (Plan 5), the provisions of which are made a part of this Contract. The Company will pay the entire premium of the Plan.

(Exh. 26 to NSTAR Appendix).

12.    Local 12004 and Commonwealth Gas entered into a collective bargaining agreement covering the period April 1, 1980 to March 31, 1983. Article VI, Section 2 of that agreement provided in part as follows:

## HEALTH INSURANCE COVERAGE

All full-time regular employees under age 65 with thirty (30) days continuous employment and their eligible dependents will be covered under Blue Cross/Blue Shield Master Medical Certificate MM 9 (1/1/76), as amended April 1, 1978, and further amended July 1, 1978, the provisions of which are made a part of this Contract. The Company will continue to pay the entire cost of the Plan.

## MEDICARE B REIMBURSEMENT

All full-time regular employees age 65 or over will be covered under the Carve-Out provision of Blue Cross/Blue Shield in addition to their Medicare Coverage.

Any full-time regular employee who is 65 years of age or over or whose spouse is age 65 or over, will be reimbursed an amount equal to the premium charged for Medicare Part B coverage for himself and/or his spouse.

6

DENTAL PLAN

All full-time regular employees with thirty (30) days of continuous employment and their eligible dependents will be covered under Massachusetts Dental Service Corporation benefits as outlined in Certificate DS-1 and appropriate riders, otherwise known as first level 100% (Plan 1), the provisions of which are made a part of this Contract. The Company will pay the entire premium of the Plan.

(Exh. 27 to NSTAR Appendix).

13.    Local 12004 and Commonwealth Gas entered into a collective bargaining agreement covering the period April 1, 1983 to March 31, 1986. Article VI, Section 2 of that agreement provided in part as follows:

HEALTH INSURANCE COVERAGE

All full-time regular employees under age 65 with thirty (30) days continuous employment and their eligible dependents will be covered under Blue Cross/Blue Shield Master Medical Certificate MM 9 (1/1/76), as amended April 1, 1978, and further amended July 1, 1978, January 1, 1981 and January 1, 1982, the provisions of which are made a part of this Contract. The Company will continue to pay the entire cost of the Plan.

MEDICARE B REIMBURSEMENT

All full-time regular employees age 65 or over will be covered under the Carve-Out provision of Blue Cross/Blue Shield in addition to their Medicare coverage.

Any full-time regular employee who is 65 years of age or over or whose spouse is age 65 or over, will be reimbursed an amount equal to the premium charged for Medicare B coverage for himself and/or his spouse.

DENTAL PLAN

All full-time regular employees with thirty (30) days of continuous employment and their eligible dependents will be covered under Dental Services of Massachusetts, Inc. benefits as outlined in Certificate DS-1 effective January 1, 1974 and amended July 1, 1978, and DS-1 second level 50% Plan and DS-1 third level Plan ($900 lifetime maximum), effective

January 1, 1981, otherwise known as first level 100% (Plan 1) effective January 1, 1974, and DS-1 Second Level 50% Plan and DS-1 Third Level Plan ($900 lifetime maximum), effective January 1, 1981, the provisions of which are made a part of this Contract.  The Company will pay the entire premium of the Plan.

(Exh. 28 to NSTAR Appendix).

14.    Local 12004 and Commonwealth Gas entered into a collective bargaining agreement covering the period April 1, 1986 to March 31, 1990.  Article VI, Section 2 of that agreement provided in part as follows:

HEALTH INSURANCE PLAN

Eligible employees, and their eligible spouses and dependents, will be covered under the terms and conditions of Blue Cross-Blue Shield of Massachusetts Master Medical Certificate, MM CES 1 (06/01/81), and further amended January 1, 1982, May 1, 1982, September 1, 1983, November 1, 1983 (TIP), May 1, 1984, January 1, 1985, March 27, 1985 and January 1, 1987, the provisions of which are made a part of this Contract.

The Company will continue to pay the entire cost of the Plan.

Eligible employees age 65 or over, and the spouses age 65 or over of such employees, may also be covered under the terms and conditions of Medicare.

MEDICARE B REIMBURSEMENT

Eligible employees age 65 or over, or whose spouse is age 65 or over, will be reimbursed an amount equal to the premium charged for Medicare B coverage for himself and/or his spouse.

DENTAL PLAN

Eligible employees and their eligible spouses and dependents will be covered under the terms and conditions fo Dental Services of Massachusetts Dental Plan, First Level Plan (100% Reimbursement), effective July 1, 1978, Second Level Plan (50% Reimbursement) effective January 1, 1981, (70% Reimbursement effective January 1, 1984) and Third Level Plan (Table of Allowance), effective January 1, 1981, and further amended May 11, 1981 and March 17, 1985, the provisions of which are made part of this Contract.

8

The Company will continue to pay the entire cost of the Plan.

(Exh. 29 to NSTAR Appendix).

15.    Local 12004 and Commonwealth Gas entered into a collective bargaining agreement covering the period April 1, 1990 to March 31, 1993.  Article VI, Section 2 of that agreement provided in part as follows:

### HEALTH INSURANCE PLAN

Eligible employees, and their eligible spouses and dependents, will be covered under the terms and conditions of Blue Cross-Blue Shield of Massachusetts Master Medical Certificate, MM CES 1, as amended, the provisions of which are made a part of this Contract.

The Company will continue to pay the entire cost of the Plan.

### MEDICARE B REIMBURSEMENT

Eligible employees age 65 or over, or whose spouse is age 65 or over, will be reimbursed an amount equal to the premium charged for Medicare B coverage for himself and/or his spouse.

### DENTAL PLAN

Eligible employees and their eligible spouses and dependents will be covered under the terms and conditions fo Dental Services of Massachusetts Dental Plan, First Level Plan (100% Reimbursement), effective July 1, 1978, Second Level Plan (50% Reimbursement) effective January 1, 1981, (70% Reimbursement effective January 1, 1984) and Third Level Plan (Table of Allowance), effective January 1, 1981, and further amended May 11, 1981 and March 17, 1985, the provisions of which are made part of this Contract.

The Company will continue to pay the entire cost of the Plan.

(Exh. 30 to NSTAR Appendix).

16.    Local 12004 and Commonwealth Gas entered into a collective bargaining agreement covering the period April 1, 1993 to March 31, 1996.  Article VI, Section 2 of that agreement

9

provided in part as follows:

### HEALTH INSURANCE PLAN

Eligible employees, and their eligible spouses and dependents, will be covered under the terms and conditions of Blue Cross-Blue Shield of Massachusetts Master Medical Certificate, MM CES 1, as amended, the provisions of which are made a part of this Contract.

The Company will continue to pay the entire cost of the Plan.

### MEDICARE B REIMBURSEMENT

Eligible employees age 65 and over, or whose spouse is age 65 and over, will be reimbursed an amount equal to the premium charged for Medicare B coverage for himself/herself and/or his/her spouse.

### DENTAL PLAN

Eligible employees, and their eligible spouses and dependents, will be covered under the terms and conditions of Dental Service of Massachusetts, Inc., DPP II, as amended, the provisions of which are made a part of this Contract.

The Company will continue to pay the entire cost of the Plan.

(Exh. 31 to NSTAR Appendix).

17.    Effective April 1, 1993, Local 12004 and Commonwealth Gas entered into a Memorandum of Agreement. (See Exh. 33 to NSTAR Appendix). The Memorandum of Agreement contained 22 "Items for Memorandum of Agreement Only," one of which (captioned "Post-Retirement Health Coverage") provided as follows:

### HEALTH INSURANCE PLAN BLUE CROSS/BLUE SHIELD

A)    Benefits After Retirement or Termination

If you were age 40 or over with 12 or more years of service as of January 1, 1993 and subsequently retire or terminate with the 'Rule of 75' (with the System Companies) you WILL BE eligible for COM/Energy sponsored Blue

10

Cross and Blue Shield Master Medical or Medex plan. If you retire or terminate prior to age 62, you will pay 10% of medical premiums in effect as of January 1, of the year which you terminate or retire. When you reach age 62, COM/Energy will pay your entire premium.

If you were under age 40 or had less that 12 years of service as of January 1, 1993 you WILL NOT be covered by the COM/Energy sponsored Master Medical or Medex program at your retirement or termination.

B)    Effective <u>April 1, 1993</u>, amend the Prescription Drug Plan Rider from the $3.00 co-payment to read as follows:

1.    For each prescription drug which is purchased from a Massachusetts participating pharmacy, the employee is responsible for $5.00 generic/$10.00 brand name co-payment.

2.    For each prescription drug which is purchased from a non-participating pharmacy in Massachusetts, the employee is reimbursed at 75% of the reasonable charge after the $5.00 generic/$10.00 brand name co-payment is taken.

3.    For each prescription drug which is purchased from a pharmacy outside of Massachusetts, the employee will be reimbursed at 100% of the reasonable charge after the $5.00 generic/$10.00 brand name co-payment is taken.

NOTE:  If no related generic drug exists for the brand name drug prescribed, $5.00 co-pay will apply to the above.

*         *         *         *         *         *         *

### DENTAL PLAN

Benefits After Retirement or Termination

If you were age 40 or over with 12 or more years of service as of January 1, 1993 and subsequently retire or terminate with the 'Rule of 75' (with the System Companies) you WILL BE eligible for the COM/Energy sponsored Delta Dental Plan. If you retire or terminate prior to age 62, you will pay 10% of dental premiums in effect as of January 1, of the year in which you terminate or retire. When you reach age 62, COM/Energy will pay your entire premium.

If you were under age 40 or had less than 12 years of service as of January 1, 1993 you WILL NOT be covered by the COM/Energy sponsored Delta Dental Plan at your retirement or termination.

(Exh. ___ to NSTAR Appendix).

11

18.    Instead of making changes to benefits, the 1993 Memorandum of Agreement (see par. 17, supra) only changed eligibility requirements. (Deposition of Francis Tieuli ("Tieuli Dep."), 46), Exh. 23 to NSTAR Appendix).

19.    Local 12004 and Commonwealth Gas entered into a collective bargaining agreement covering the period September 8, 1996 to March 31, 2002. Article VI, Section 2 of that agreement provided in part as follows:

HEALTH INSURANCE PLAN

Eligible employees, and their eligible spouses and dependents, will be covered under the terms and conditions of Blue Cross-Blue Shield of Massachusetts Master Medical Subscriber Certificate, MM CES 3, as amended, or HealthFlex Blue/Blue Choice Plan 2 Program, as amended, or Medex Subscriber Certificate, Medex CES 1, as amended the provisions of which are made a part of this Contract.

The Company will continue to pay the entire cost of the Plan through December 31, 1998. Effective January 1, 1999 employees will contribute through payroll deductions a weekly pre tax amount as set forth below:

|  | Individual | Family |
|---|---|---|
| Indemnity Plan | $6.00 | $15.00 |
| HealthFlex Blue | $4.00 | $10.00 |
| HMO | $0.00 | $0.00 |

MEDICARE B REIMBURSEMENT

Subject to Medicare regulations, eligible employees, or their eligible spouses, will be reimbursed an amount equal to 80% of the premium charged for Medicare Part B coverage.

DENTAL PLAN

Eligible employees, and their eligible spouses and dependents, will be covered under the terms and conditions of Dental Service of Massachusetts, Inc., DPP II, as amended, the provisions of which are made a part of this Contract.
The Company will continue to pay the entire cost of the Plan.

(Exh. 32 to NSTAR Appendix).

12

20.    Each of the collective bargaining agreements between Commonwealth Gas and Local 12004 for the periods 1973-1975, 1975-1978, 1978-1980, 1980-1983, 1983-1986, 1986-1990, 1993-1996 and 1996-2002 (Exhs. 24-32 to NSTAR Appendix),  contained the following provisions:

ARTICLE I

SECTION I            GENERAL

RECOGNITION OF UNION FOR CERTAIN DEPARTMENTS

Pursuant to and in conformance with the National Labor Relations Act, the Company recognizes the Union as the sole collective bargaining agency in behalf of all regular employees in the Office and Clerical Workers, *Payroll, Dispatchers, Commercial, Building and Grounds, Distribution, Meter Repair, Production, Stores, Transportation, Utilization, Gas Supply, to whom this agreement applies for the purpose of bargaining in respect to wages, hours and conditions of employment.

*Subject to the Memorandum of Understanding, dated December 4, 1974.

EMPLOYEE DEFINITIONS

Wherever used in this Agreement, the words 'employee' or 'employees' shall refer only to those employees to whom this Agreement is applicable.

SECTION 2

CLASSES OF EMPLOYEE AND ELIGIBILITY

The provisions of this agreement shall apply only to regular employees as defined in Article I, Section 1.  The term 'Regular Employees' means those holding regular positions so authorized by the Company.

It is agreed, however, that the following regular employees are excluded from the terms of this Agreement, and that they shall not be eligible for Membership in the Union.

13

Executives, Superintendents, Assistant Superintendents, Chief Engineer, Secretaries to Executives and Superintendents, Guards, Salesmen, *Payroll and Sales Clerks, Assistant Supervisors and Supervisors, as defined in the National Labor Relations Act.

The following not being regular employees are therefore excluded from the application of the terms of this Agreement and shall not be members of the Union:-

(A)     TEMPORARY EMPLOYEES

These are defined as those hired to fill temporary jobs such as seasonal construction work or temporary maintenance work. Any such employees who shall have worked twelve (12) consecutive months for the Company shall thereby become a regular employee, providing regular jobs are available.

The Company will not establish different hours for temporary employees in the future other than those already established for regular employees.

(B)     PROBATIONARY EMPLOYEES

These are defined as those hired on six (6) months' trial to fill regular authorized positions which are open or expected to be open. It is understood that if such probationary employees are found satisfactory, and if the positions are still open, they will become regular employees.

*Subject to the Memorandum of Understanding, dated December 4, 1974.

## C.     Collective Bargaining Negotiations Over Retirees

21.     In the experience of Douglas Miller as a senior labor relations executive for close to 20 years, Commonwealth Energy always took the position in collective bargaining negotiations with its labor unions that it did not have to bargain over retirees. Commonwealth Energy believed that it "could do anything you want with a retiree." (Deposition of Douglas Miller, Volume I, Utility Workers, Local 369, et al. v. NSTAR Electric and Gas Corp., Civil Action No. 03-19530-EFH

14

("Miller Dep. I"), 33-34, Exh. 17 to NSTAR Appendix). Mr. Miller took this position as the Company representative in negotiations with all unions at Commonwealth Energy. (Miller Dep. I, 45-46). Mr. Miller never negotiated with a union about health benefits for retirees. (Deposition of Douglas Miller, Volume II, Utility Workers, Local 369, et al. v. NSTAR Electric and Gas Corp., Civil Action No. 03-19530-EFH ("Miller Dep. II"), 130-131, Exh. 18 to NSTAR Appendix).

22.    Frank Tieuli was employed by Commonwealth Gas, its predecessors, and successor (NSTAR) from 1968 until October 1, 1999. (Tieuli Dep., 5-6, Exh. 23 to NSTAR Appendix). During the course of his employment, he served as department steward, recording secretary, vice-president and president of Local 12004 (after serving as an officer in a predecessor local of Local 12004). In 1982 Mr. Tieuli became a management employee in labor relations for Commonwealth Gas. (Tieuli Dep., 6-7). For many years he was involved in collective bargaining negotiations for Commonwealth Gas, after filling the same role for Local 12004. (Tieuli Dep., 5-9, 17-18, 41-42, 44-45). In these negotiations, the subject of retirees was never discussed. When the Union tried to raise the issue, the Company refused to discuss it. (Id. at 42-43). Mr. Tieuli always understood that retiree health benefits could change. (Id. at 36-37).

**D.    Changes To Retiree Health Benefits, Effective April 1, 2003**

23.    NSTAR, Boston Edison and Commonwealth Energy have maintained health benefit plans for retirees for many years. Prior to April 1, 2003, NSTAR maintained multiple plans for retirees of Boston Edison and Commonwealth Energy. Effective April 1, 2003, these plans were consolidated. (Affidavit of Bernard B. Peloquin, dated 4/3/03, Utility Workers, Local 369, et al. v. NSTAR Electric and Gas Corp., Civil Action No. 03-19530-EFH ("4/3/03 Peloquin Affidavit"), par. 3, Exh.9 to NSTAR Appendix).

15

24.    Effective April 1, 2003, NSTAR instituted a series of changes to its retiree health plans covering both union and management retirees. NSTAR communicated the highlights of these changes (including the replacement of Master Medical with Blue Care Elect or two HMO plans, discussed further below) to retirees in December 2002. (Letters of Bernard B. Peloquin to Retiree, December 2002, Exh. J. to 4/3/03 Peloquin Affidavit, Exh. 9 to NSTAR Appendix). Complete details of the changes were forwarded in January 2003. (4/3/03 Peloquin Affidavit, par. 9).

25.    The changes implemented on April 1, 2003 had two principal purposes: (1) to develop a more moderate approach to controlling costs while continuing to provide a substantial level of benefits for retirees; and (2) to standardize the health plans for retirees of Boston Edison and Commonwealth Energy, and to align retiree medical plans with those offered to current employees. None of the announced changes have altered the contribution methodology required of retirees toward their medical benefits. For example, if a retiree did not contribute toward coverage, that contribution level did not not change. The lone exception pertained to reimbursement for Medicare Part B, provided to some but not all retirees, as discussed further below. (4/3/03 Peloquin Affidavit, par. 9, Exh. 9 to NSTAR Appendix).

26.    The changes effectuated on April 1, 2003 are summarized in an exhibit to the 4/3/03 Peloquin Affidavit. (NSTAR, Comparison of Retiree Benefit Programs, Exh. K to 4/3/03 Peloquin Affidavit, Exh. 9 to NSTAR Appendix). The changes included: a) transferring retirees of Commonwealth Energy enrolled in the Medex III Medicare Supplemental coverage, to the Medex II coverage provided before April 1 to retirees of Boston Edison; and 2) transferring retirees of Commonwealth Energy enrolled in Master Medical or Blue Choice medical plans, to the same Blue Care Elect plan currently provided to Boston Edison retirees. The Blue Care Elect Plan is a preferred

provider option, meaning that the plan offers very generous benefits for in-network services as well as out-of-network benefits. In addition, the plan provides the highest level of benefits when out-of-state. Almost all major local hospitals are in this plan's network. Retirees were also provided the option of electing one of two HMO plans (Network Blue or Harvard Pilgrim Health Care). This change did not result in any retiree of Commonwealth Energy losing medical coverage, nor did these changes require any retiree to make any increased premium contribution toward retiree health coverage to the same comprehensive medical plans offered to employees. (4/3/03 Peloquin Affidavit, par. 10).

27.    In some instances the changes provided additional rather than reduced benefits. For example, for in-patient hospital admission, retirees under the Master Medical Plan were forced to pay up to $450 on an individual basis, and $900 for a family. Under Blue Care Elect, there is no cost for in-network, in-patient admission. (4/3/03 Peloquin Affidavit, par. 11, Exh. 9 to NSTAR Appendix).

28.    Further changes provided additional benefits to retirees. The payment required of a patient who visits a physician's office is now a standard $10 for all retirees who visit physicians within their network; benefits at 100% of the allowed charges are provided thereafter. Those who visit physicians outside their network are covered at 80% of the allowed charges for most covered services, after payment of the deductible. Prior to April 1, 2003, retirees of Commonwealth Energy in the Master Medical Plan only received 80% of allowed charges after the deductible. Retirees of Commonwealth Energy in Blue Choice had to pay $5 for visiting physicians in their network; that co-payment has been $10 since April 1, 2003. The co-payment for some Boston Edison retirees was reduced effective April 1 from $15 to $10. Thus, some Commonwealth Energy retirees experienced

17

an increase in co-payments of $5. Similar changes were put into effect for routine medical exams.

The following summarizes further changes pursuant to which retirees received additional benefits:

| Service | Current Benefit (Master Medical) | New Benefit (Blue Care Elect) |
|---|---|---|
| Outpatient Mental health visits | 100% for 16 visits | $10 for 24 visits 8 more available for alcoholism |
| Durable medical equipment | 80% o fallowed charge | 100% up to $1,500 |
| Pre-65 dental | Annual maximum-$1,200 | Annual maximum-$1,800 |
| Pre-65 dental | Orthodontics-$1,501 | Orthodontics-$1,800 |
| Medex program | Office visit for services not related to inpatient- no coverage | Office visit for services not related to inpatient- full coverage |
|  | Durable medical equipment - 80% coverage | Durable medical equipment - full coverage |

In addition, the HMO Plans available to retirees on or after April 1, 2003 provide for vision care benefits, specifically an annual eye exam (for a $10 co-pay). (4/3/03 Peloquin Affidavit, par. 12, Exh. 9 to NSTAR Appendix).

29.    For other insurances, coverage for retirees of Commonwealth Energy was aligned with that provided to Boston Edison retirees. Thus, for instance, before April 1, 2003, Commonwealth Energy retirees were reimbursed for their Medicare Part B premium, while Boston Edison retirees never received reimbursement for this premium. After April 1, neither Boston Edison nor Commonwealth Energy retirees have been reimbursed for this premium. (4/3/03

18

Peloquin Affidavit, par. 13, Exh. 9 to NSTAR Appendix).  For 2005, the premium cost is $78.20 per person per month, or $938.40 annually.

30.    All NSTAR retirees, whether or not covered by Medicare, have been required since April 1 to use mail order for purchase of maintenance drugs taken for more than 60 days (such as medication designed to control high blood pressure).  This change alone has resulted in significant cost savings to both the Company and its retirees.  All retirees continue to receive 100% coverage after a $20 co-pay for preferred prescriptions for a 90 day supply, or $10 co-pay for generic drugs. Retirees pay a maximum of $50 for any non-preferred prescriptions for a 90 day supply.  In regard to drugs not ordered through the mail, all retirees continue to receive 100% coverage (after a maximum $10 co-pay) for preferred prescription drugs.   For short term non-maintenance drugs (such as antibiotics) filled at participating retail pharmacies, all retirees contribute $5 for generic, $10 for preferred and 50% co-insurance with a $1,000 annual per person, per calendar year out of pocket expense cap for non-preferred.  For all non-preferred drugs, retirees must pay a maximum of $1,000 per person per calendar year for such prescriptions.  Non-preferred drugs are very much the exception to the usual practice of selecting from among the preferred prescriptions provided by physicians. (4/3/03 Peloquin Affidavit, par. 14, Exh. 9 to NSTAR Appendix).

31.    As noted, the changes affecting retirees brought their health benefits more in line with those afforded to current employees.  Thus, in regard to prescription drugs, the benefits provided to retirees and current employees became identical effective April 1, 2003.  In regard to the elimination of the Master Medical plan, no current employee received this coverage as of that date.  Likewise, no retiree of Boston Edison received this coverage.  A Master Health Plus Plan (a plan similar to the Master Medical plan) was completely eliminated for Boston Edison retirees on or about December

31, 2000, and these retirees were transferred to other plans. The Blue Care Elect plan has been available to retirees of Boston Edison since the early 1990s. (4/3/03 Peloquin Affidavit, par. 15, Exh. 9 to NSTAR Appendix).

32.     Management employees of Commonwealth Energy were last covered by Master Medical on December 31, 1999. Almost all union employees of Commonwealth Energy last received Master Medical in 2001; the remaining union employees were moved to new plans effective January 1, 2003. (4/3/03 Peloquin Affidavit, par. 16, Exh. 9 to NSTAR Appendix).

33.     The benefits provided to Commonwealth Energy retirees under the Master Medical, and now Blue Care Elect Plans, are comparable. (4/3/03 Peloquin Affidavit, par. 17, Exh. 9 to NSTAR Appendix).

34.     Boston Edison retirees never received post-65 retiree dental coverage, while Commonwealth Energy retirees did receive this benefit. Effective April 1, 2003, dental coverage for all retirees ceased once they turned age 65. However, between April 1, 2003 and the date they reach age 65, retirees of Commonwealth Energy received an increase of $600 annually ($1200 to $1800) in the maximum coverage provided. Other changes included a new $25 deductible, a change in coverage for restorative work, and an increase in the amount of orthodontic services covered annually. As for retirees of Commonwealth Energy who were age 65 and older as of April 1, 2003, they have continued to receive dental benefits in the same form provided before that date. (4/3/03 Peloquin Affidavit, par. 18, and Exh. K thereto, Exh. 9 to NSTAR Appendix).

E.    **Pertinent Provisions Of Health Insurance Plans And Related Documents**

    i)    **Plan Provisions - Background**

    35.    Commonwealth Energy never placed vesting provisions concerning health insurance in any Company documents concerning health insurance. (Miller Dep. II, 166-167, Exh. 18 to NSTAR Appendix).

    36.    Effective January 1, 1993, Commonwealth Energy established "the Commonwealth Energy System and Subsidiary Companies Post Retirement Benefit Program" for "Group I" and "Group II". Both these documents provided (at Article 8.02, at 16) that "[i]t is the expectation of the Company that the Program set forth herein and the payment of contributions hereunder will be continued indefinitely, but the continuation of the Program is not assumed as a contractual obligation of the Company, and the right is reserved at anytime to suspend or discontinue contributions hereunder. Subject to the provisions of Section 8.03 of Part I hereof, the Company, through the Plan Administrator, may terminate the Program or discontinue Benefits hereunder at anytime upon written notice to the affected Trustee and/or Insurer." (See Exhs. A and B to 4/3/03 Peloquin Affidavit, Exh. 10 to NSTAR Appendix). Group I and II referred to programs for union and management. (Miller Dep. I, 83, Exh. 17 to NSTAR Appendix).

    37.    The Post Retirement Benefit Program was created "for the purpose of establishing a voluntary employees' beneficiary association under Section 501(c)(9) of the Internal Revenue Code to provide eligible employees and their dependents and designated beneficiaries with certain life, accident, medical and dental benefits and such other benefits as the Plan Administrator, on behalf of the Company, may from time to time determine to provide under the Program." (Exh. A to

4/3/03 Peloquin Affidavit, Exh. 10 to NSTAR Appendix). This program was intended to fund the Company's future obligations in this area. (Miller Dep. I, 77-78, Exh. 17 to NSTAR Appendix).

### ii)    Plan Summaries And Descriptions

38.    For many years, Commonwealth Energy and its predecessors provided employees and retirees with a booklet describing their health insurance benefits. (Deposition of Donald Gifford, Utility Workers, Local 369, et al. v. NSTAR Electric and Gas Corp., Civil Action No. 03-19530-EFH, 55-56, Exh. 13 to NSTAR Appendix; Deposition of Robert Healy, Utility Workers, Local 369, et al. v. NSTAR Electric and Gas Corp., Civil Action No. 03-19530-EFH, ("Healey Dep.") 56-57, Exh. 15 to NSTAR Appendix; Deposition of Elizabeth Hayes, Utility Workers, Local 369, et al. v. NSTAR Electric and Gas Corp., Civil Action No. 03-19530-EFH ("Hayes Dep."), 24-27, Exh. 14 to NSTAR Appendix).

39.    Thus, in August 1976, NEGEA Service Corporation of New England Gas and Electric System distributed to employees "a complete Blue Cross-Blue Shield Master Medical Certificate describing in detail the benefits covered and the health care plan provided by your company." Employees were instructed to file this in the "red employee benefit booklet entitled 'You and Your Company.'" (Dupre 11742, Utility Workers, Local 369, et al. v. NSTAR Electric and Gas Corp., Civil Action No. 03-19530-EFH, Exh. 44 to NSTAR Appendix).

40.    Commonwealth Energy periodically distributed summary plan descriptions to all participants in the Company's benefit plans. (Miller Dep. II, 149, Exh. 18 to NSTAR Appendix; 12/29/03 Peloquin Affidavit, Utility Workers, Local 369, et al. v. NSTAR Electric and Gas Corp., Civil Action No. 03-19530-EFH, par. 4, Exh. 10 to NSTAR Appendix); Deposition of Bernard B. Peloquin, Volume I ("Peloquin Dep. I"), 58-59, 62-63, Exh. 19 to NSTAR Appendix).

41.    The Master Medical Subscriber Certificate for employees of Commonwealth Energy System and subsidiary companies (dated 1/1/91) provided that "[y]our plan sponsor may cancel your contract [i.e., 'the agreement...to provide benefits to you and your covered dependents'] for any reason." The Certificate further provided that "[w]e may change a part of the contract." (Exh. F to 4/3/03 Peloquin Affidavit), Exh. 9 to NSTAR Appendix). As long as can be remembered disclaimer language was contained in the Company's benefit descriptions. (Hayes Dep., 28, Exh. 14 to NSTAR Appendix).

42.    The certificate for the Dental Protection Plan for Commonwealth Energy System and Subsidiary Companies, updated through 4/1/90, provided (at 17) that the Plan Sponsor may cancel the contract for any reason. (Exh. G to 4/3/03 Peloquin Affidavit, Exh. 9 to NSTAR Appendix).

43.    The Summary Plan Description for the employees of Commonwealth Energy System and subsidiary companies for 1996 provided, in regard to the Master Medical Plan (at MM56), HealthFlex Blue Plan 2 (at HFB63), Delta Dental Plan (at DD20), and Delta Premier II Plan (at DB31), in identical sections entitled "Your Rights," that "[t]he Company reserves the right, subject to the provisions of any collective bargaining agreement, to amend, modify or terminate the Plan at anytime." (Exh. C to 4/3/03 Peloquin Affidavit, Exh. 9 to NSTAR Appendix).

44.    An updated Summary Plan Description for employees of Commonwealth Energy System and subsidiary companies, dated February 1997, contained the same language on reservation of rights set forth in the Summary Plan Description described in par. 23, supra. (See Exh. D to 4/3/03 Peloquin Affidavit, at MM58 for Master Medical Plan, BC 63 for Blue Choice Plan 2, MX58-R for Medex Plan, and DB33 for Delta Premier II Plan, Exh. 9 to NSTAR Appendix).

45. The Medex Certificate for participants of Commonwealth Energy System and subsidiary companies provided that the group could terminate the contract. (Exh. H to 4/3/03 Peloquin Affidavit, Exh. 9 to NSTAR Appendix).

46. In about January 1993, Commonwealth Energy distributed a document entitled, "Changes to the Employee Benefits Package for All Non-Bargaining Employees and Commonwealth Gas Union Local #12004." (See Exh. E to 4/3/03 Peloquin Affidavit, Exh. 9 to NSTAR Appendix). The first page of the document contained a "Message from the President" (William G. Poist, who was also Chief Executive Officer). This message provided in part that "[i]n the future, we will continue to examine the plans and make adjustments and modifications consistent with our overall goals and in response to changes in our competitive situation." (See id.).

F.    **Personnel Reduction Programs, 1997 & 1999**

47. In about May 1997 Commonwealth Energy announced a Personnel Reduction Program ("PRP"). A document entitled, "Personnel Reduction Program, Information for Commonwealth Energy System and Subsidiary Company Employees," dated May 1997, provided as follows with respect to "Health and Dental Insurance Coverage":

> Eligibility: (all non-union, Commonwealth Gas Union Local #12004 and Canal Electric Local #480C employees, where eligible):
>
> 1) All employees who were **not** at least age forty (40) and had **not** completed at least twelve (12) full years of System service as of January 1, 1993, are entitled to continuation of coverage for eighteen (18) months through Consolidated Omnibus Budget Reconciliation Act (COBRA). The Company will pay the cost of the first twelve (12) months premium. Employees will be responsible for the cost of the remaining six (6) months premium.
>
> 2) Employees who were at least age forty (40) and had completed at least twelve (12) full years of System service as of January 1, 1993

24

but currently have not met the "Rule of 75" will be entitled to continuation of coverage for eighteen (18) months through COBRA. The Company will pay the cost of the first twelve (12) months premium. Employees will be responsible for the cost of the remaining six (6) months premium.

3) Employees who were at least age forty (40) and had completed at least twelve (12) full years of System service as of January 1, 1993 and currently meet the "Rule of 75" will be entitled to medical and dental insurance coverage provided they pay ten percent (10%) of the current medical and dental premium until age sixty-two (62). At age 62, the Company will pay 100% of the premium.

(Exh. 40 to NSTAR Appendix).

48.    The 1997 PRP Document further provided:

**Plan Documents...The Last Word:**

This summary is not intended to offer detailed descriptions of the System's employee benefit plans. All information furnished is governed by the provisions of the actual plan documents pertaining to the appropriate benefit plans. If any conflict arises between this summary and the System's employee benefit plan documents, or if any point is not covered, the terms of the appropriate plan documents will govern in all cases.

(Exh. 40 to NSTAR Appendix).

49.    When they retired under the PRP in 1997, Plaintiffs Fahy and Phipps, and all other retirees under that program, received a document entitled, "Information Relative to Employee Benefits Upon Your Retirement Date". (Phipps Dep., 30, Exh. 20 to NSTAR Appendix; Fahy Dep., 22-23, Exh. 12 to NSTAR Appendix; "Information Relative to Employee Benefits Upon Your Retirement Date," Plaintiffs Fahy and Phipps, Exhs. 35, 37 to NSTAR Appendix). The Fahy and Phipps Information Documents (see pars. 4, 6, supra) provided in part:

## HEALTH INSURANCE

### A.    Medical Insurance

Since you were age 40 and had 12 or more years of employment as of January 1, 1993, you will be covered by the Company sponsored medical insurance plans at your Actual Retirement Date until you become eligible for Medicare. You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire) from age 55 to age 62. When you reach age 62, the Company will pay the entire premium.

When you become eligible for Medicare, your primary medical insurance coverage will be through Medicare Part "A" and Part "B". Currently, the Company reimburses you for the cost of Medicare Part "B". There is no additional cost to you for Medicare Part "A" when you become eligible for the coverage. The Company provides a Medicare supplement which extends over and above those provided by Medicare. Currently, the Company pays the entire cost of the Medicare supplement.

Coverage for your spouse and/or any eligible dependent(s) will be provided.

Your medical insurance coverage will be for your life. Your spouse and/or eligible dependents will be covered for 12 months after your death. At the end of the 12 months, your spouse and/or eligible dependents will be offered continuation of coverage through COBRA.

### B.    Dental Insurance

Since you were age 40 and had 12 or more years of employment as of January 1, 1993, you will be covered by the Company sponsored dental plan at your Actual Retirement Date.

You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire) from age 55 to age 62. When you reach age 62, the Company will pay the entire premium.

Coverage for your spouse and/or any eligible dependent(s) will be provided.

Your dental coverage will be for your life. Your spouse and/or eligible dependents will be covered for 12 months after your death. At the end of the 12 months, your spouse and/or eligible dependents will be offered continuation of coverage through COBRA.

The word "currently" was added to the description of Medicare Part B about the time that the PRP was instituted. (Peloquin Dep. I, 54-56; compare pars. 58, 66, infra).

50.    Paragraph 9 of the Fahy and Phipps Information Documents (as well as the other information documents furnished to other retirees under the 1997 program) provided:

> **9.    Plan Documents**
>
> The retirement benefits outlined in this report are estimated. You will receive documentation from the Plan Agent confirming your retirement benefits upon retirement.
>
> This summary is not intended to offer detailed descriptions of employee benefit plans. All information furnished is governed by the provisions of the actual plan documents pertaining to the appropriate benefit plans. If any conflict arises between this summary and the System's employee benefit plan documents, or if any point is not covered, the terms of the appropriate plan documents will govern in all cases.
>
> This summary is not intended to offer detailed descriptions of employee benefit plans. All information furnished is governed by the provisions of the actual plan documents pertaining to the appropriate benefit plans. If any conflict arises between this summary and the System's employee benefit plan documents, or if any point is not covered, the terms of the appropriate plan documents will govern in all cases.

(Exhs. 35 , 37 to NSTAR Appendix).

51.    In 1999, Commonwealth Energy and Boston Edison offered eligible employees a Voluntary Separation Program ("VSP"). The Program Summary for the VSP provided in part that "[i]f any conflict arises between this summary and either the Company's employee benefit plan documents, the Agreement and General Release, or if any part is not covered, then the terms of the appropriate plan documents or Agreement and General Release, as appropriate, will govern in all cases." (COM/Energy, Boston Edison, 1999 Voluntary Separation Program, Program Summary, Exh. 41 to NSTAR Appendix).

52.    The Program Summary for the VSP contained the following provision on medical /

dental benefits:

| | |
|---|---|
| Medical/Dental: For those employees who are eligible for post-retirement medical/dental benefits. | Coverage will continue to employee and eligible dependents. Certain employees might be responsible for co-payment of premiums. |

(Exh. 41 to NSTAR Appendix).

53.    At the foot of the page on which appears the language quoted in par. 22, italicized

language provided:

> *The Company reserves the right to change or terminate coverage for*
> *current and former employees at any time. Any such change may be*
> *in the benefits provided, the contributions required, or in any other*
> *aspect in accordance with applicable laws.*

(Exh. 41 to NSTAR Appendix) (emphasis in original).

54.    Plaintiffs Hirl and Postma, and all of those who retired under the 1999 VSP, received

a document entitled either, "NSTAR, Information Relative to Employee Benefits Upon Termination

of Employment," or "Commonwealth Energy System and Subsidiary Companies, Information

Relative to Employee Benefits Upon Your Retirement Date." (Exhs. 36, 38 to NSTAR Appendix;

see pars, 5, 7, supra).

55.    Each of the documents referred to in par. 54, supra, however titled, provided in

pertinent part:

**3.    HEALTH INSURANCE**

**A.    Medical Insurance**

> Since you were age 40 and had 12 or more years of employment as of
> January 1, 1993, you will be covered by the Company sponsored
> medical insurance plans at your Actual Retirement Date until you

become eligible for Medicare. You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire) from age 55 to age 62. Under the 1999 Voluntary Separation Program, you will pay the lessor of the 10% premium or active employee cost for the first full nine months of coverage. When you reach age 62, the Company will pay the entire premium.

When you become eligible for Medicare, your primary medical insurance coverage will be through Medicare Part "A" and Part "B". Currently, the Company reimburses you for the cost of Medicare Part "B". There is no additional cost to you for Medicare Part "A" when you become eligible for the coverage. The Company provides a Medicare supplement which extends over and above those provided by medicare. Currently, the Company pays the entire cost of the medicare supplement.

Coverage for your spouse and/or any eligible dependent(s) will be provided.

Your medical insurance coverage will be for your life. Your spouse and/or eligible dependents will be covered for 12 months after your death. At the end of the 12 months, your spouse and/or eligible dependents will be offered continuation of coverage through COBRA.

**B.**    **Dental Insurance**

Since you were age 40 and had 12 or more years of employment as of January 1, 1993, and met the 'Rule of 75' at termination of employment, you will be entitled to dental insurance providing you pay ten percent (10%) of the current dental premium (the premium in effect as of the first of the year in which you terminate) from termination date to age 62. When you reach age 62, the Company will pay the entire premium.

Your dental coverage will be for your life time. Your spouse and/or eligible dependents will be covered for 12 months after your death. At the end of the 12 months, your spouse and/or eligible dependents will be offered continuation of coverage through COBRA.

(Exhs. 36, 38 to NSTAR Appendix).

56.    The last paragraph of each of the documents referred to in par. 54, supra, provided:

29

**Plan Documents**

This summary is not intended to offer detailed descriptions of employee benefit plans. All information furnished is governed by the provisions of the actual plan documents pertaining to the appropriate benefit plans. If any conflict arises between this summary and the System's employee benefit plan documents, or if any point is not covered, the terms of the appropriate plan documents will govern in all cases.

(Exhs. 36, 38 to NSTAR Appendix).

## G.    Allegation Of Individual Plaintiffs

57.    Plaintiff Fahy alleges that he met with Ms. Cormier before his retirement from Commonwealth Gas in 1997. (Fahy Dep., 20-23, Exh. 12 to NSTAR Appendix). In one of those meetings Mr. Fahy received his Information Document. (Fahy Dep., 22-23, Exh. 12 to NSTAR Appendix; see discussion supra at pars. 4, 49-50).

58.    Plaintiff Fagan alleges that after his retirement benefits representative Cormier told him that "all the insurance I had was covering my wife and I any dependents I had, it would cover them until death -- until the end of my time." (Fagan Dep., 36-37, Exh. 11 to NSTAR Appendix). Plaintiff Fagan further received a document entitled, "New England Gas and Electric Association and Subsidiary Companies, Information Relative to Employee Benefits Upon Attaining Your Normal Retirement Age" ("Fagan Information Document"). (Fagan Dep., 21; Fagan Information Document, Exh. 34 to NSTAR Appendix). The Fagan Information Document provided in pertinent part:

### 3)    Health Insurance Benefits

Three (3) months prior to your attaining age 65, you must apply for Medicare Part 'A' and Part 'B', at your local Social Security office, whether or not you are going to retire at this time. If you do not do this, you will have an extremely serious gap in your medical coverage. When you receive your Social Security benefit, Social Security will deduct a premium from your

check each month for Medicare Part "B" coverage. If you are not receiving Social Security benefits at age 65, you will be billed quarterly by Social Security for this coverage.

In either of the above cases, the company will reimburse you for the cost of Medicare Part 'B'. The Company will also provide you with Medex III coverage which extends benefits over and above those provided by Medicare. This valuable protection is provided at no cost to you.

Note: The above also applies to your spouse when he/she attains age 65.

For your spouse and/or dependent children under age 65, the Company will provide Revised Medical coverage.

4.    **Dental Plan Benefits**

Your Dental Plan coverage will continue for you, your spouse and dependent children whether or not you retire at age 65.

\*          \*          \*          \*          \*          \*          \*

9.    **General**

The retirement benefits outlined in this report are estimated at this time. A fully audited computation sheet showing exact figures will be delivered to you shortly before you retire.

In all cases, the exact provisions of the various Benefit Contracts and applicable laws will determine the benefits to be paid thereunder.

(Exh. 34 to NSTAR Appendix).

59.    Plaintiff Hirl and two other prospective retirees met with Ms. Cormier about seventeen (17) days before Mr. Hirl was to retire in 2000. Ms. Cormier told these employees that they were signing a contract, and that nothing in the contract could be changed. (Hirl Dep., 14-15, Exh. 16 to NSTAR Appendix).

31

60.     In Mr. Hirl's meeting with Ms. Cormier and the other retirees, there was discussion about his Information Document. Ms. Cormier took the employees present through each paragraph one by one. (Hirl Dep., 22, Exh. 16 to NSTAR Appendix; see discussion supra at pars. 5, 54-56).

61.     Plaintiff Phipps alleges that in 1995, at a pre-retirement seminar (referred to as a Ready or Not Session) attended by numerous employees, Douglas Miller said that health and dental insurance would continue unchanged for life. (Phipps Dep., 12-15, Exh 20 to NSTAR Appendix). In an individual pre-retirement meeting, Ms. Cormier told Mr. Phipps that for the rest of his life he would be cared for in respect to his medical and dental insurance. (Phipps Dep., 29-30). Kenneth Margosian, President of Commonwealth Energy, told a small group of employees (including Mr. Phipps) shortly before Phipps's retirement in 1997 that all of the benefits under the retirement programs would be for their lives. (Phipps Dep., 25).

62.     Before his retirement Mr. Phipps received from Ms. Cormier a document entitled, "Information Relative to Employee Benefits Upon Your Retirement Date". (Phipps Dep., 30, Exh. 20 to NSTAR Appendix; see discussion supra at pars. 6, 49-50).

63.     Plaintiff Postma alleges that before his retirement in early 2000 under the 1999 VSP, he met with Ms. Cormier of the benefit group. Ms. Cormier discussed with him his benefits under the program, and that he would retain his health and dental benefits for as long as he lived. (Postma Dep., 16-17, Exh. 21 to NSTAR Appendix).

64.     At some point before his retirement, Ms. Cormier gave to Mr. Postma a document entitled, "Information Relative to Employee Benefits Upon Your Retirement Date." (Postma Dep., 16, Exh. 21 to NSTAR Appendix; see discussion supra at pars. 7, 54-56).

32

65.    Plaintiff Charles J. Senior alleged that in 1991 or 1992, he and his wife met regarding his retirement with Carol Cormier of the benefits group for Commonwealth Gas. Ms. Cormier told Plaintiff Senior that the benefits he received in retirement, he would have for the rest of his life. (Senior Dep., 8, 10, 15, Exh. 22 to NSTAR Appendix).

66.    At the meeting which Mr. Senior had with Ms. Cormier, he received a document entitled, "Information Relative to Employee Benefits Upon Your Retirement Date" ("Senior Information Document") (Senior Dep., 9-10, Exh. 22 to NSTAR Appendix; Senior Information Document, Exh. 39 to NSTAR Appendix). This document provided in pertinent part:

### 3.    Health Insurance

A.   If you are age 65 or over you will be covered under Medicare Part 'A' and Part 'B'. The company will reimburse you for the cost of Medicare Part 'B' and there is no cost to you for Medicare Part 'A'. The Company will also provide you with Medex 3 coverage which extends benefits over and above those provided by Medicare. The Company pays the entire cost of Medex 3.

Note: The above also applies to your spouse if he or she is age 65 or over.

B.     If you are under age 65, your coverage will continue until you reach 65 at which time paragraph A above will apply.

Note:  Your spouse will be covered until he or she reaches age 65 at which time paragraph A will apply. Your eligible dependents will also be covered under Master Medical.

### 4.    Dental Plan Benefits

Your Dental Plan coverage will continue for you, your spouse and eligible dependents.

\*          \*              \*              \*              \*              \*              \*

### 10.    General

33

> The retirement benefits outlined in this report are estimated at this time. You will receive a letter, from the Plan Agent, confirming your retirement figures shortly before you retire.
>
> In all cases, the exact provisions of the various Benefit Contracts and applicable laws will determine the benefits to be paid thereunder.

(Exh. 39 to NSTAR Appendix).  (See generally, as to allegations of all individual Plaintiffs,

Plaintiffs' Answers to Defendants' First Set of Interrogatories, Exh. 5 to NSTAR Appendix; Plaintiff

Charles J. Senior's Answers to Defendants' First Set of Interrogatories and All Plaintiffs' Further

Answers to Interrogatory 1, Exh. 6 to NSTAR Appendix; Garrett M. Fagan's Answers to

Defendants' First Set of Interrogatories and All Plaintiffs' Further Answers to Interrogatorys [sic]

3, 5, 6, 7 and 8, Exh. 7 to NSTAR Appendix).

Respectfully submitted,

NSTAR ELECTRIC AND GAS CORPORATION and COMMONWEALTH GAS COMPANY,

By their Attorneys,

MORGAN, BROWN & JOY, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
(617) 523-6666

By: _____
Keith B. Muntyan
B.B.O. #361380
Robert P. Morris
B.B.O. #546052

Dated: March 4, 2005

34

## CERTIFICATE OF SERVICE

I, Robert P. Morris, certify that on March 4, 2005, I caused to be served a copy of the within pleading by hand on counsel for Plaintiffs, Warren H. Pyle, Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., 18 Tremont Street, Suite 500, Boston, MA 02108.

Robert P. Morris