UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES J. SENIOR, NORMAN FAHY, ) | |
| RONALD D. PHIPPS, RAYMOND ) | |
| W. POSTMA, THOMAS G. HIRL, ) | |
| GARRETT M. FAGAN ) | |
| and UNITED STEELWORKERS ) | |
| OF AMERICA, LOCAL 12004 ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 04-10160-EFH |
| ) | |
| NSTAR ELECTRIC AND GAS ) | |
| CORPORATION and ) | |
| COMMONWEALTH GAS COMPANY ) | |
| ) | |
| Defendant ) | |
| ) | |

**PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS**

The Collective Bargaining Agreements, 1973 - 2006

1. The collective bargaining agreement between  Commonwealth Gas Company

and Local 12004, United Steelworkers of America (herein CBA) covering the period

April 1, 1973 to April 1, 1975 contained the following provision under the heading

Health Insurance Coverage:

> A.    All full time regular and limited employees with six (6) months of
> continuous employment and their eligible dependents will be covered
> under Blue Cross/Blue Shield Master Medical Certificate MM 1 2-2-68
> Rev. and supplemented by amendatory riders R770, R642, R626, R603,
> R623, R630, R662, R126, R300 and R638 except that if such eligible
> employee or dependent is age 65 or over, such person shall be covered
> under Medicare Extension Certificate ME 3 7-1-66 as amended by Rider
> ME 3 R316.
> The Company will continue to pay the entire cost of this plan.
>
> B.    Medicare B. Reimbursement
> Any eligible employee or retiree who is 65 years of age or over or whose
> spouse is age 65 or over, will be reimbursed an amount equal to the

1

premium charged for Medicare Part B coverage for himself and/or his spouse.

Effective April 1, 1974 all full time regular and limited employees with six (6) months of continuous employment and their eligible dependents will be covered under Massachusetts Dental Service Corporation benefits as outlined in certificate DS-1 and Appropriate riders, otherwise known as First-Level 70% Plan (Plan 5).

The Company will pay the entire premium of the Plan.

2. The CBA for the period April 1, 1975-April 1, 1978 contained the following

provision under the heading Health Insurance Coverage:

A. All full time regular employees with six (6) months of continuous employment and their eligible dependents will be covered under Blue/Cross/Blue Shield Master Medical Certificate MM 2-1-68 Rev. and supplemented by amendatory riders R770, R642, R603, R623, R630, R662, R126, R300 and R658 except that if such eligible employee or dependent is age 65 or over, such person shall be covered under Medicare Extension Certificate ME 3 7-1-66 as amended by Rider ME 3 R316.
The Company will continue to pay the entire cost of this plan.

B. Medicare B Reimbursement
Any eligible employee or retiree who is 65 years of age or over or whose spouse is age 65 or over, will be reimbursed an amount equal to the premium charge for Medicare Part B coverage for himself and/or his spouse.

C. Dental Plan
All full time regular employees with six (6) months of continuous employment and their eligible dependents will be covered under Massachusetts Dental Service Corporation benefits as outlined in certificate DS-1 and appropriate riders, otherwise known as First-Level 70% Plan (Plan 5).
The Company will pay the entire premium of the plan.

3. The CBA for the period April 1, 1978 to April 1, 1980 contained the following

provision under the heading Health Insurance Coverage:

All full time regular employees with thirty (30) days of continuous employment and their eligible dependents will be covered under Blue Cross/ Blue Shield Master Medical Certificate MM 9 (1/1/76), as amended April 1, 1978, the provisions of which are made a part of this Contract. The Company will continue to pay the entire cost of the Plan.
Medicare B Reimbursement

Any eligible employee or retiree who is 65 years of age or over or whose spouse is age 65 or over, will be reimbursed an amount equal to the premium charged for Medicare Part B coverage for himself and/or his spouse.
Dental Plan
All full time regular employees with thirty (30) days of continuous employment and their eligible dependents will be covered under Massachusetts Dental Service Corporation benefits as outlined in certificate DS-1 and appropriate riders, otherwise known as First-Level 70% (Plan 5), the provisions of which are made a part of this Contract. The Company will pay the entire premium     of the Plan.

4. The CBA for the period April 1, 1980 to March 31, 1983 contained the following

provision under the heading Health Insurance Coverage:

All full time regular employees under age 65 with thirty (30) days continuous employment and their eligible dependents will be covered under Blue Cross/Blue Shield Master Medical Certificate MM9 (1/1/76), as amended April 1, 1978, and further amended July 1, 1978, the provisions of which are made a part of this Contract. The Company will continue to pat the entire cost of the Plan.
Medicare B Reimbursement
All full time regular employees age 65 or over will be covered under the Carve-Out provision of Blue Cross/Blue Shield in addition to their Medicare coverage.
Any full time regular employees 65 years of age or over or whose spouse is age 65 or over, will be reimbursed an amount equal to the premium charged for Medicare Part B coverage for himself and/or his spouse.
Dental Plan
All full time regular employees with thirty (30) days of continuous employment and their eligible dependents will be covered under Massachusetts Dental Service Corporation benefits as outlined in Certificate DS-1 and appropriate riders, otherwise known as First Level 100% (Plan 1), the provision of which are made a part of this Contract. The Company will pay the entire premium of the Plan.

5. The CBA for the period April 1, 1983 to March 31, 1986 contained the

following provision under the heading Health Insurance Coverage:

All full time regular employees under age 65 with thirty (30) days of continuous employment and their eligible dependents will be covered under Blue Cross/Blue Shield Master Medical Certificate MM 9 (1/1/76), as amended April 1, 1978, and further amended July 1, 1978, January 1, 1981 and January 1, 1982, the provisions of which are made a part of this Contract. The Company will continue to pay the entire cost of the Plan.

3

Medicare B Reimbursement

All full time regular employees age 65 or over will be covered under the Carve-out provision of Blue Cross/Blue Shield in addition to their Medicare coverage. Any full time regular employee who is 65 years of age or over, will be reimbursed an amount equal to the premium charged for Medicare B coverage for himself and/or his spouse.

Dental Plan

All full time regular employees with thirty (30) days of continuous employment and their eligible dependents will be covered under Dental Services of Massachusetts, Inc. benefits as outlined in Certificate DS-1 effective January 1, 1974 and amended July 1, 1978, and DS-1 second level 50% Plan and third level Plan ($900 lifetime maximum), effective January 1, 1981, otherwise known as first level 100% (Plan 1) effective January 1, 1974, and DS-1 Second Level 50% Plan and DS-1 Third Level Plan ($900 lifetime maximum), effective January 1, 1981, the provisions of which are made a part of this Contract. The Company will pay the entire premium of the Plan.

6. The CBA for the period April 1, 1986 to March 31, 1990 contained the

following provisions concerning heath benefits:

Health Insurance Plan

Eligible employees, and their eligible spouses and dependents, will be covered under the terms and conditions of Blue Cross-Blue Shield of Massachusetts Master Medical Certificate, MM CES 1 (06/01/81), and further amended January 1, 1982, May1, 1982, September 1, 1983, November 1, 1983 (TIP), May 1, 1984, January 1, 1985, March 27, 1985 and January 1, 1987, the provisions of which are made a part of this Contract.

The Company will continue to pay the entire cost of the Plan.

Eligible employees age 65 or over, and the spouses age 65 or over of such employees, may also be covered under the terms and conditions of Medicare.

Medicare B Reimbursement

Eligible Employees age 65 or over, or whose spouse is age 65 or over, will be reimbursed an amount to the premium charged for Medicare B coverage for himself and/or his spouse.

Dental Plan

Eligible employees and their eligible souses and dependents will be covered under the terms and conditions of Dental Services of Massachusetts Dental Plan, First Level Plan (100% Reimbursement), effective July 1, 1978, Second Level Plan (50% Reimbursement) effective January 1, 1981, (70% Reimbursement effective January 1, 1984) and Third Level Plan (Table of Allowance), effective January 1, 1981, and further amended May 11, 1981 and March 27, 1985, the provisions of which are made part of this Contract.

The Company will continue to pay the entire cost of the Plan.

7. The CBA for the period April 1, 1990 to March 31, 1993 contained the

following provisions concerning health benefits:

> Health Insurance Plan
> Eligible employees, and their eligible spouses and dependents, will be covered
> under the terms and conditions of Blue Cross-Blue Shield of Massachusetts
> Master Medical Certificate, MM CES 1, as amended, the provisions of which are
> made a part of this Contract.
> The Company will continue to pay the entire cost of the Plan.
> Medicare B Reimbursement
> Eligible employees age 65 and over, or whose spouse is age 65 and over, will be
> reimbursed an amount equal to the premium charged for Medicare B coverage for
> himself/herself and his/her spouse.
> Dental Plan
> Eligible employees, and their eligible spouses and dependents, will be covered
> under the terms and conditions of Dental Service of Massachusetts Inc., DPP II,
> as amended, the provisions of which are made a part of this Contract.
> The Company will continue to pay the entire cost of the Plan.

8. The CBA for the period April 1 1993 to March 31, 1996 contained the

following provisions concerning health benefits:

> HEALTH INSURANCE PLAN
> BLUE CROSS/BLUE SHIELD
> A)    Benefits After Retirement or Termination
>
>       If you were age 40 or over with 12 or more years of service as of January
> 1, 1993, and subsequently retire or terminate with the "Rule of 75" (with the
> System Companies) you WILL BE eligible for COM/Energy sponsored Blue
> Cross and Blue Shield Master Medical or Medex plan.  If you retire or terminate
> prior to age 62, you will pay 10% of medical premiums in effect as of January 1,
> of the year which you terminate or retire.  When you reach age 62, COM/Energy
> will pay your entire program.
>
> If you were under 40 or had less than 12 years of service as of January 1, 1993,
> you WILL NOT be covered by the COM/Energy sponsored Master Medical or
> Medex program at your retirement or termination.
>
> B)    Effective April 1, 1993, amend the Prescription Drug Plan Rider from the
>       $3.00 co-payment to read as follows:

1.  For each prescription drug which is purchased from a Massachusetts participating pharmacy, the employee is responsible for $5.00 generic/$10.00 brand name co-payment.

2.  For each prescription drug which is purchased from a non-participating pharmacy in Massachusetts, the employee is reimbursed at 75% of the reasonable charge after the $5.00 generic/$10.00 brand name co-payment is taken.

3.  For each prescription drug which is purchased from a pharmacy outside of Massachusetts, the employee will be reimbursed at 100% of the reasonable charge after the $5.00 generic/$10.00 brand name co-payment is taken.

NOTE:  If no related generic drug exists for the brand name drug prescribed, $5.00 co-pay will apply to the above.

C)  OPT OUT Program

Effective Date 05/01/93

Eligibility

You will have the opportunity to OPT OUT of COM/Energy Medical coverage at any time, however, you must provide evidence of medical coverage elsewhere and complete an OPT OUT Application election form.  The Employee Benefits Department will review application and notify you in writing of your status.

Employees Not Eligible

- Any Employee or retiree married to another employee or retiree
- Part-time employees

Waiver Allowance

- If your application is approved and you OPT OUT of a family membership, you will receive $83.33 per month ($19.23 if paid weekly) up to a maximum of $1,000 per twelve month period.
- If your application is approved and you OPT OUT of an individual membership, you will receive $41.67 per month ($9.62 per week if paid weekly) up to a maximum of $500 per 12 month period.

OPT IN Enrollment

In order to return to coverage under COM/Energy, you must complete an OPT IN election form and submit proof of loss of coverage.  The Employee Benefits Department will review your OPT IN election form and notify you in writing of your status.

DENTAL PLAN

Benefits After Retirement or Termination

If you were age 40 or over with 12 or more years of service as of January 1, 1993 and subsequently retire or terminate with the "Rule of 75" (with the System Companies) you WILL BE eligible for the COM/Energy sponsored Delta Dental Plan. If you retire or terminate prior to age 62, you will pay 10% of dental premiums in effect as of January 1, of the year in which you terminate or retire. When you reach age 62, COM/Energy will pay your entire premium.

If you were under age 40 or had less than 12 years of service as of January 1, 1993, you WILL NOT be covered by the COM/Energy sponsored Delta Dental plan at your retirement or termination.

In negotiations leading to this agreement the company spokesman told the Union negotiators that under the terms of the agreement employees who were age 40 with at least 12 years of service as of January 1, 1993 would have no change in benefits on retirement from those then in effect. (Tieuli dep. at 12) Management representatives said nothing to the effect that the company could terminate or cancel health or dental insurance after employees retired. (Laflash aff., ¶ 1)

9. The CBA for the period April 1, 1996 to March 31 2002 contained the following provisions concerning health benefits:

HEALTH INSURANCE PLAN

Eligible employees, and their eligible spouses and dependents, will be covered under the terms and conditions of Blue Cross-Blue Shield of Massachusetts Master Medical Subscriber Certificate, MM CES 3, as amended, or HealthFlex Blue/Blue Choice Plan 2 Program, as amended, or Medex Subscriber Certificate, Medex CES 1, as amended, the provisions of which are made a part of this Contract.

7

The Company will continue to pay the entire cost of the Plan through December 31, 1998. Effective January 1, 1999 employees will contribute through payroll deductions, a weekly pre tax amount as set forth below:

|  | Individual | Family |
|---|---|---|
| Indemnity Plan | $6.00 | $15.00 |
| HealthFlex Blue | $4.00 | $10.00 |
| HMO | $0.00 | $0.00 |

### MEDICARE B REIMBURSEMENT

Subject to Medicare regulations, eligible employees, or their eligible spouses, will be reimbursed an amount equal to 80% of the premium charged for Medicare Part B coverage.

### DENTAL PLAN

Eligible employees, and their eligible spouses and dependents, will be covered under the terms and conditions of Dental Service of Massachusetts Inc., DPP II, as amended, the provisions of which are made a part of this Contract.

The Company will continue to pay the entire cost of the Plan.

(Pyle affidavit, ¶ 2 and attachment A thereto)

10. In August 1999 Commonwealth Energy Systems merged with the parent company of Boston Edison Company to form NSTAR. NSTAR Electric and Gas Corporation is now the formal employer of NSTAR's gas and electric utility employees.

11. The CBA between NSAR Electric & Gas Corporation and Local 12004 covering the period March 25 2002 to March 31 2006 contained the following provisions concerning health care:

### HEALTH INSURANCE PLAN

Eligible employees, and their eligible spouses and dependents, will be covered under the terms and conditions of either the Blue Care Elect Plan, or one of the following Health Maintenance Organization (HMO) Plans, Harvard Pilgrim Healthcare, Network Blue or Tufts Health Plan, the provisions of which are made a part of this Contract.

The Company will continue to pay the entire cost of the Plan through December 31, 12002. Effective January 1, 1003 active employees will pay 15% of the premium cost, on a pre-taxed basis, for these medical costs as set forth in the Memo of Agreement dated, March 25, 2002, the provisions of which are made a part of this contract.

## POST EMPLOYMENT BENEFITS

Employees who had retiree health care coverage under the Commonwealth Energy Plan (employees age 40 or older and had completed at least twelve (12) full years of employment as of January 1, 1993, herein referred to as grandfathered employees) keep their current health care benefit provided they retire prior to December 31, 2002. After this date and through March 30, 2006, the Commonwealth Energy contribution methodology and plan eligibility for these grandfathered employees will be applied to the NSTAR health plans. Should these employees choose the newly negotiated NSTAR Post-Employment Plan, they will become eligible for survivor benefits under these plans and will be subject to all of the terms and eligibility requirements of these plans. During the open enrollment period in 2002, these employees will have a one-time option to choose the newly negotiated NSTAR Plan.

All other Post Employment Benefits eligibility and employee co-payment costs are subject to the Memo of Agreement, dated March 25, 2002, the provisions of which are made a part of this Contract.

## MEDICARE B REIMBURSEMENT

Subject to Medicare regulations, eligible employees, or their eligible spouses, will be reimbursed an amount equal to 80% of the premium charged to Medicare Part B coverage.

## DENTAL PLAN

Eligible employees, and their eligible spouses and dependents, will be covered under the terms and conditions of the NSTAR Dental Plan, the provisions of which are made a part of this Contract.

Active employees will pay 15% of the premium cost, on a pre-taxed basis, as set forth in the Memo of Agreement dated March 25, 2002, the provisions of which are made a part of this Contract.

(Pyle affidavit, ¶ 2 and attachment A thereto)


## Medicare Part B Reimbursement

12. Medicare Part B is the part of the federal Medicare program which pays eligible senior citizens part of the cost of physicians' services. It is funded in part by the federal government and in part by participants. Social Security Act, Title XVIII, 42 U.S.C. §§ 1395, et seq. Beginning as early as 1973, pursuant to the 1973-1975 collective bargaining agreement, ¶ 1, supra, Commonwealth Gas reimbursed employees who retired with an immediate pension, and their spouses for the Medicare Part B premium by an added payment to their monthly pension checks.

13. However, under the terms of the 1993 CBA, employees who retired on or after January 1, 1993 qualified for retiree health insurance only if they were age 40 and who had 12 years of service as of January 1, 1993 and retired with the "Rule of 75" (age and years of service totaling at least 75). See ¶ 8, supra.

14. James J. Pignataro was employed by Commonwealth Gas Company on February 5, 1936 and retired on July 31, 1975, during the term of the 1975-1978 CBA. On February 12, 1974 he was given a document entitled: "Estimated Retirement Benefits for James J. Pignataro that described his retirement benefits. It included the following statement concerning health insurance benefits:

    (4)   Health Insurance Benefits:

When you reach age 65, you will automatically become covered under the Medicare Act, Part "A" which is the hospitalization portion of the coverage. However, you must sign up for Part "B", the medical portion, which id optional at least 3 months prior to your 65th birthday or you could have a serious gap in your coverage. Social Security will deduct a premium from your check each month for this part of your Medicare coverage. The Company will reimburse you for this in your Pension check each month!

The Company will also provide you with MEDEX III coverage which extends benefits over and above those provided by Medicare. This valuable protection is provided at no cost to you.

Note: The above applies also to your spouse when he/she attains age 65.

For your spouse and/or dependent children under age 65, the Company will provide Revised Master Medical coverage for them, the same as when you were an active employee.

Your Dental Plan coverage will continue on you, your spouse and your dependent children.

(Pyle aff. ¶ 5, attachment D(A))[1]

15. Ralph C. Smith, Jr. was born December 7, 1914. He was hired by Commonwealth Gas on October 31, 1946. He retired on December 31, 1979, during the term of the 1978-1980 CBA. On December 19, 1979 he met with Commonwealth Gas representative Londergan and was given a document entitled "New England Gas and Electric Association and Subsidiary Companies Information Relative to Employee Benefits Upon Attaining Your Normal Retirement Age." That document contained personalized information concerning pension and other benefits for Mr. Smith, including the following:

(3) <u>Health Insurance Benefits</u>

Three (3) months prior to your attaining age 65, <u>you must apply for Medicare Part "A" and Part "B"</u>, at your local Social Security office, whether or not you are going to retire at this time. If you do not do this, you will have an extremely serious gap in your medical coverage. When you receive your Social Security benefit, Social Security will deduct a premium from your check each month for Medicare Part "B" coverage. If you are not receiving Social Security benefits at age 65, you will be billed quarterly by Social Security for this coverage.

In either of the above cases, the Company will reimburse you the cost of Medicare Part "B". The Company will also provide you with Medex III coverage which extends benefits over and above those provided by Medicare. This valuable protection is provided at no cost to you.

<u>Note</u>:  The above also applies to your spouse when he/she attains age 65.

---

[1] References to the affidavits contained in the Attachment to Plaintiffs' Statement of Undisputed Facts, and paragraphs therein are indicated by (___ aff., ¶ __)

For your spouse and/or dependent children under age 65, the Company will provide Revised Master Medical coverage.

(4)  Dental Plan Benefits

Your Dental Plan coverage will continue for you, your spouse and dependent children whether or not you retire at age 65.

(Pyle aff., ¶ 5, attachment D(B))

16. Records provided by Commonwealth Gas for Patrick J. O'Brien (Pyle aff., ¶ 5, attachment D(C)) include a document entitled "Commonwealth Energy System and Subsidiary Companies, Information Relative to Employee Benefits Upon Your Retirement Date." It was prepared by Carol Cormier and dated November 13, 1990. It sets out pension benefits for Mr. O'Brien based on an actual retirement date of January 1, 1991. It provided as follows concerning health insurance:

**3. Health Insurance**

A. If you are age 65 or over you will be covered under Medicare Part "A" and Part "B". The Company will reimburse you for the cost of Medicare Part "B" and there is no cost to you for Medicare Part "A". The Company will also provide you with Medex 3 coverage which extends benefits over and above those provided by Medicare. The Company pays the entire cost of Medex 3.
Note: The above also applies to your spouse if he or she is age 65 or over.

B. If you are under age 65, your coverage will continue until you reach age 65 at which time paragraph A above will apply.
Note: Your spouse will be covered until he or she reaches age 65 at which time paragraph A will apply. Your eligible dependents will also be covered under Master Medical.

17. An earlier document from company records dated March 22, 1988 contains the following handwritten information concerning Mr. O'Brien:

12

Blue Cross/Blue Shield – Master Medical coverage for you and your wife to age 65 then Medex III coverage for life and Medicare A & B.*

Delta Dental – Coverage for life.*

* In the event of your death, your wife will remain covered for one year.

18. Another handwritten document from company records concerning Mr. O'Brien is addressed to him and signed by Carol Cormier. It includes the following statement: "Your wife can remain on the Master Medical plan until you retire. If you retire January 1, 1991, she should apply for benefits (Medicare A & B) in November to take effect January 1, 1991. We will provide Medex III coverage for her and reimburse you for the cost of Medicare B. This reimbursement will be put in your pension check." Company records show that Mr. O'Brien retired on January 1, 1991. (Pyle aff. ¶5, Attachment D(C))

19. Plaintiff Charles J. Senior was born on March 10, 1932. He was hired by Commonwealth Gas on March 13, 1956 and retired on January 1, 1993. When he was considering retirement he and his wife spoke with Carol Cormier, who was then    ***
for Commonwealth Gas on September 14, 1992. She provided him with a document signed by her and dated September 14, 1992 entitled Information Relative to Employee Benefits Upon Your Retirement Date. (Senior dep. at 9-10; Attachment 14)[2] It contained individualized information as to the amount of Mr. Senior's pension benefits, depending on the date of his retirement, the amount of his pension if he elected a joint and survivor option or other pension options, as well his the amount of group insurance available to him. It also provided:

---

[2] References to portions of the Attachment to this Statement of Undisputed Facts are indicated by (Attachment ___). References to deposition transcripts and pages therein are indicated by (___ dep. at p. ___)

13

3. Health Insurance

A. If you are age 65 or over you will be covered under Medicare Part "A" and part "B." The company   will reimburse you for the cost of Medicare Part B and there is no cost to you for   Medicare Part "A." The Company will also provide you with Medex 3 coverage which extends benefits over and above those provided by Medicare. The Company pays the entire cost of Medex 3.

Note: The above also applies to your spouse if he or she is age 65 or over.

B. If you are under age 65, your coverage will continue until you reach age 65 at which time paragraph A will apply.

Note: Your spouse will be covered until he or she reaches age 65 at which time paragraph A will apply. Your eligible dependents will also be covered under Master Medical.

20. Ms. Cormier specifically told Mr. and Mrs. Senior that Commonwealth Gas would provide these benefits, including Medicare Part B reimbursement, for his life. (Senior deposition at 8-10, 15-16, 20; affidavit of Mary Jane Senior) relied on these promised benefits, including reimbursement of Medicare Part B for life, in deciding to retire rather than continuing to work. (Senior dep. at 10.)

21. Garrett M. Fagan was born on August 10, 1925. He was hired by Commonwealth Gas on November 28, 1955 and retired on August 31, 1980. On June 12, 1980 Commonwealth Gas mailed a statement to Mr. Fagan entitled "New England Gas and Electric Association and Subsidiary Companies Information Relative to Employee Benefits Upon Attaining Your Normal Retirement Age." (Fagan depo. at 10; Attachment 15) The document contained a personalized statement of Mr. Fagan's pension and other retirement benefits, including a statement concerning his health insurance benefits identical to that given Ralph C. Smith, Jr., supra, para. 15. (Attachment 15) Carol Cormier, a representative of the Company's human relations department, told him that all

the health insurance that the health insurance he had would cover him, his wife and dependents for his lifetime. (Fagan dep. at 36-37)

22. Other retirees during the years 1981 to 1996 were given documents describing what their benefits would be on retirement like those given to plaintiffs Senior and Fagan and Pignataro, Smith and O'Brien, including reimbursement for Medicare Part B premiums. Pyle affidavit, ¶ 5 attachments D(D-H) shows the documents given to Ragnar Montelius (1980 retirement), Edward Dow (1982), Clifford Gordon (1990), James F. Toomey (1994) and Albert Deconing (1996).

23. Beginning in 1997, however, documents given to employees, including plaintiff Raymond Postma, considering retirement contained the following reference to reimbursement for Medicare Part B premiums and dental coverage:

### A. Medical Insurance

Since you were age 40 and had 12 or more years of employment as of January 1, 1993, you will be covered by the Company sponsored medical insurance plans at your Actual Retirement Date until you become eligible for Medicare. You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire from age 55 to age 62. When you reach age 62, the Company will pay the entire premium.

When you become eligible for Medicare, your primary medical insurance coverage will be through Medicare Part "A" and Part "B." *Currently, the Company reimburses you for the cost of Medicare Part "B."* There is no additional cost to you for Medicare Part "A" when you become eligible for the coverage. The Company provides a Medicare supplement which extends over and above those provided by Medicare. *Currently, the Company pays the entire cost of the Medicare supplement.*

Coverage for your spouse and/or any eligible dependent(s) will be provided.

*Your medical insurance coverage will be for your life.*

…

### B. Dental Insurance

…

*Your dental coverage will be for your life.*

(Attachment D, Peloquin dep. at 1/52, emphasis supplied)

24. Bernard Peloquin is the Director of Total Compensation at NSTAR Electric
and Gas Company. From 1993 until the merger with NSTAR he was manager of
employee benefits for Commonwealth Gas Company and the Commonwealth Energy
System companies. When asked about the change in language in information documents
given to employees in 1997, Peloquin testified:

> Q. Could you tell us how that change in language came about?
>
> A. … We looked at the whole thing, the whole disclosure, to people who were
> leaving the company. And at the time we had a lot of people leaving because of
> one of the programs.  So it was a function of let's have a consistent message
> going out to everybody. It's all being administered centrally. And we reviewed
> not only this particular language, but all the language. And this we felt was
> an accurate reflection of the   benefit the people would receive at that time.
>
> Q. Okay. Was there an effort in this process to be more clear and careful about
> what you were saying?
>
> A. I think it was an accurate description of the benefit that people would receive.
> This was the currently – that was the currently available benefit to people, and it
> was an accurate reflection.

(Peloquin depo. at 1/55-56)

25. Peloquin was asked in a Rule 30(b)(6) deposition to identify any reservation
of rights by Commonwealth Gas to change or terminate reimbursement of Medicare Part
B premiums to retirees. Unlike health, dental and life insurance benefits, there is no
document, SPD or otherwise, describing this benefit. (Peloquin depo. at 1/41) Peloquin
pointed to the statement at the end of documents given retirees describing their benefits
on retirement:

> General. The retirement benefits outlined in this report are estimates at this time.
> A fully audited computation sheet showing exact figures will be delivered to you
> shortly before you retire. In all cases the exact provisions of the various benefit
> contracts and applicable laws will determine the benefits to be paid thereunder.

(Peloquin depo. at 1/23-24) Peloquin testified that "benefit contracts" are SPD's and contracts with insurance companies, pension contracts, savings plan documents and the like. Peloquin testified that this language is "a global caveat covering all benefit programs (Peloquin depo. at 1/33), but there is nothing in there about Medicare Part B. (Id., at 33). No benefit contract document that refers to Medicare Part B reimbursement. (Peloquin depo. at 1/24, 25) He stated that he is not aware of any reservation of rights that specifically refers to Medicare Part B reimbursement. (Peloquin depo. at 1/27) He referred to Commonwealth Gas 1993 trust and plan documents, but they were not distributed to employees or referred to in any document given to employees. (Peloquin depo. at 1/15, 18, 27, 2/14). He was unable to identify any document that would have advised a retiree that the company reserved the right to change or terminate Medicare Part B reimbursement. (Peloquin depo. at 1/28-29) He was unable to identify any law that allowed the company to cancel Medicare Part B reimbursement. (Id., at 33)

The 1997 Personnel Reduction Program

26. In 1997 Commonwealth Gas Company and Commonwealth Electric Company had merged and decided to reduce the work force, both management and labor. To accomplish this, they sought to attract employees to retire voluntarily. (Tieuli dep. at 19) On May 23, 1997 Commonwealth Gas and Local 12004 entered into a memorandum of agreement (Pyle aff., ¶ 3 and attachment B thereto) that included the following paragraphs:

> It is mutually agreed and understood that effective May 13, 1997 the Company will offer the following Personnel Reduction Program to all employees that are members of the United Steelworkers of America, Local #12004.
> …

17

> Employees who were at least age forty (40) and had completed at least twelve (12) full years of System service as of January 1, 1993 and currently meet the "Rule of 75" will be entitled to medical and dental insurance coverage providing they pay ten percent (10%) of the current medical and dental insurance premium until age sixty-two (62). At age 62 the Company will pay 100% of the premium.

In discussions that led to this agreement management negotiators did not indicate that there could be any change in retiree benefits. (Tieuli dep. at 37-38) At no time during the discussions that led to this agreement did the Company representatives state or suggest that the health and dental benefits set forth in the agreement could be cancelled or modified at any time by the Company. Nor did the Company mention or refer to in any way to a provision in a dental plan document that could limit the duration of the health and dental benefits that would be given to retirees. (Laflash aff. ¶ 3)

27. In May 1997 Commonwealth Gas distributed to employees a document entitled "Personnel Reduction Program," (Tieuli depo., p. 17; Pyle aff. ¶ 6, Attachment D) The document did not contain any statement reserving a right in the Company to terminate health or dental insurance coverage. A copy of this document was presented to union negotiators during discussions that led to the agreement. (Tieuli depo. at 27)

28. Employees represented by Local 12004 who considered participation in the 1997 Personnel Reduction Program were each given documents entitled "Information Relative to Employee Benefits Upon Your Retirement Date." (The one given to plaintiff Fahy is Exhibit 2 to his deposition, Attachment 5A) These documents provided individualized pension calculations and information for each employee concerning the amount of his/her life insurance, employee savings plan insurance and severance pay plan balance. The document also contained the following provisions concerning health and dental insurance:

18

HEALTH INSURANCE

A. Medical Insurance

Since you were age 40 and had 12 or more years of employment as of January 1, 1993, you will be covered by the Company sponsored medical insurance plans at your Actual Retirement Date until you become eligible for Medicare. You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire) from age 55 to age 62. When you reach age 62, the Company will pay the entire premium.

When you become eligible for Medicare, your primary medical insurance coverage will be through Medicare Part "A" and Part "B". Currently, the Company reimburses you for the cost of Medicare Part "B". There is no additional cost to you for Medicare Part "A" when you become eligible for the coverage. The Company provides a Medicare supplement which extends over and above those provided by Medicare. Currently, the Company pays the entire cost of the Medicare supplement.

Coverage for your spouse and/or eligible dependent(s) will be provided.

Your medical insurance coverage will be for your life. Your spouse and/or eligible dependents will be covered for 12 months after your death. At the end of the 12 months, your spouse and/or eligible dependents will be offered continuation of coverage through COBRA.

B. Dental Insurance

Since you were age 40 and had 12 or more years of employment as of January1, 1993, you will be covered by the Company sponsored dental plan at your Actual Retirement Date.

You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire) from age 55 to age 62. When you reach age 62, the Company will pay the entire premium.

Coverage for your spouse and/or any eligible dependent(s) will be provided.

Your dental coverage will be for your life. Your spouse and/or eligible dependents will be covered for 12 months after your death. At the end of the 12 months, your spouse and/or eligible dependents will be offered continuation of coverage through COBRA.

Also included in the individualized information given to Fahy, Postma and the other participants in the 1997 program was the following paragraph:

7. Plan Documents

This summary is not intended to offer detailed descriptions of employee benefit plans. All information furnished is governed by the provisions of the actual plan documents pertaining to the appropriate benefit plans. If a conflict arises between this summary and the System's employee benefit plan documents, or if any point is not covered, the terms of the appropriate plan documents will govern in all cases.

The statement of benefits and individualized information provided Fahy and Phipps contained no reservation of right of Commonwealth Gas to terminate lifetime health and dental benefits. At no time did any company representative tell either of them that dental benefits could be changed by the company. No company representative mentioned or drew their attention to any provision of any separate dental plan document that stated that the company could terminate the plan. (Affidavits of Norman Fahy and Ronald D. Phipps, Attachments 20, 21) About 13 employees represented by Local 12004 accepted the 1997 Personnel Reduction Plan and retired. (Laflash aff. ¶ 5, Attachment 24)

29. Plaintiffs Fahy and Phipps met the age and service requirements above, and elected to retire under the terms of the 1997 Personnel Reduction Program, in reliance of the promises of benefits described in Exhibit A, including the promise of lifetime health and dental benefits for them and their spouses and eligible dependents. They executed releases of rights against the company. (Affidavits of Fahy and Phipps, Attachments 20 and 21)

30. In May 1996 Phipps had discussed the possibility of retirement with Carol Cormier, an assistant to the head of human resources (Phipps depo. at 16). Cormier gave Phipps a document (Phipps depo. exh. 2), which sets forth his individualized retirement pension and other benefits. It includes a statement: "Dental coverage for life." At a group meeting to discuss the 1997 early retirement program Kenneth Margosian, president of

the company (Phipps depo. at 20) told the group that the medical insurance and other benefits provided were for their lifetimes. (Phipps depo. at 25) Phipps was initially undecided, but as a result of three individual meetings with Cormier, in which she assured him that medical and dental benefits in the package were for his life, and gave him the Information Relative to Employment Benefits Upon Your Retirement Date, he decided to accept the package. (Phipps depo. at 27-31) Phipps did not read paragraph 9 of the Information document, and no one told him that paragraph 9 or any other document would somehow negate the statement in the Information document that the dental insurance was for his life. (Phipps aff., Attachment 21) Phipps learned in April 2003 that his dental coverage would end at age 65. (Phipps depo. at 38)

31. Norman Fahy was given the Information document by Carol Cormier in meetings before his retirement. (Fahy depo. at 23) He was never told that his retirement benefits might change. (Fahy depo. at 28)

32. At some time following their election to participate in the 1997 Program plaintiffs Fahy, Phipps and all other retired employees received a 264 page document entitled "Participant Benefit Information." (Peloquin depo.at 1/62-63) In its answer to interrogatories in this case NSTAR stated that the lifetime dental benefit statement in the Information document given to those who accepted the 1997 and 1999 retirement incentive programs was qualified and limited by this and similar documents. (Peloquin depo. at 1/62-69. The 264 page document was a series of SPD's for the Employee Savings Plan, the Master Medical Plan, the Blue Choice Plan, the Medex Plan, the Dental Blue Plan, the Life Insurance Plan and the Pension Plan. (Peloquin depo. at 1/62-63)

33. At page DB 33 of the Dental Blue Plan, under a heading "Your Rights" the

following text appears:

> This section describes the Dental Blue Program 2 in general, If any conflict arises
> between this description and the Plan document, or if we do not cover any point,
> the terms of the Plan document will always govern.
>
> The Company reserves the right, subject to the provisions of any collective
> bargaining agreement, to amend, modify or terminate the Plan at any time.
>
> Please refer to the Administrative Information section for all information related
> to the administration of this Plan.

(Attachment 16) Peloquin testified that the "Plan document" referred to was a 1993

document that was not given to employees. (Peloquin depo. at 1/65-66)


### The 1999 Voluntary Separation Program

34. In 1999, as a result of the merger of Commonwealth Energy System with

NSTAR, there were "redundancies" that the company wished to address; it wanted to

"reduce its [work] force on a voluntary basis as much as possible." (Peloquin depo. at

2/33) On July 26, 1999 Commonwealth Gas Company and Local 12004 entered into a

memorandum of agreement (Pyle aff., ¶ 4, Attachment C) that included the following

provisions:

> It is mutually agreed and understood that effective August 4, 1999, the Company
> will offer the following Voluntary Separation Program (VSP) to all employees
> that are members of the United Steelworkers of America, Local 12004.
> …
> Employees who were at least age forty (40) and had completed at least twelve
> (12) full years of System service as of January 1, 1993 and currently meet the
> "Rule of 75" will be entitled to medical and dental insurance coverage providing
> they pay ten percent (10%) of the current medical and dental premium until age
> sixty-two (62). At age 62 the Company will pay100% of the premium.

The Company's proposal required that employees who accepted the retirement offer

would have to execute a release of claims. After discussion Local 12004 accepted the

proposal. At no time during these discussions did the company representatives state or suggest that health and dental benefits set forth in the agreement could be cancelled or modified by the Company. Nor did the Company mention or refer to in any way to a provision of a dental insurance plan document that could limit the duration of the health and dental benefits that would be given to retirees. (Laflash aff., Attachment 24, ¶ 4)

35. Following execution of the 1999 memorandum of agreement, the company distributed to eligible employees a document entitled "Com/Energy 1999 Voluntary Separation Program for Employees Represented by Locals 333, 392 and 12004, Program Summary. (Peloquin depo. at 2/29; Peloquin depo. Exh. 25, Attachment 2.) The program summary did not state that the Company reserved a right to terminate health or dental benefits.

36. Employees who considered participating in the 1999 program were each given a document entitled "Information Relative to Employee Benefits Upon Termination of Employment." The one given to plaintiffs Postma is Postma depo., Attachment 7. These documents provided pension calculations for the employee and individualized information for each employee concerning their benefits, including life insurance, savings plan balance and severance pay plan balance. Also included in the individualized information given to Fahy, Postma and the other participants in the 1997 program was the same statement of health and dental insurance as had been given to employees who participated in the 1997 Personnel Reduction Plan, and the same paragraph concerning "plan documents." (See ¶ 14, supra)

37. The statement of benefits and individualized information provided each eligible employee contained no reservation of rights on the part of the company to

terminate lifetime health and dental benefits. At no time did any company representative tell them that their dental benefits could be terminated and no company representative mentioned or drew their attention to any separate dental plan document that stated that the company could terminate that plan. (Affidavits of Postma and Hirl, Attachments 22 and 23)

38. Plaintiffs Raymond W. Postma and Thomas G. Hirl met the age and years of service requirements for the 1999 program and elected to retire, relying on the benefits set forth in literature distributed by the company, including the promise of lifetime dental coverage for them, their spouses and eligible dependents. They executed releases waiving their rights against the company. (Postma and Hirl affidavits, Attachments 22 and 23) Postma attended a group meeting addressed by Carol Cormier, the benefits consultant when he was considering taking the 1999 package. Cormier told him that "his medical and dental insurance would continue for the rest of his life, provided he paid 10 percent of the coat at the time of his retirement until age 62. After age 62, the company would pay the premiums." (Postma depo at 14) She gave him the Information document at an individual meeting in her office and reiterated that he would have these benefits as long as he lived. There was no mention of termination or reduction of these benefits, and no reference to the final paragraph of the document. (Postma depo. at 16-18) About 17employees represented by Local 12004 elected to retire under the 1999 program. (Laflash aff. ¶ 5)

39. Thomas Hirl also accepted the 1999 Voluntary Separation Program. He and two other employees met with Carol Cormier, who passed out the documents showing

what they would receive and told them that "this is a contract we were signing, and nothing could be changed in the contract." (Hirl depo. at 15)

40. In January 2003 NSTAR informed employees who had retired under the 1997 and 1999 retirement incentive programs that any retiree who was not then age 65 would have dental insurance only until he or she reached age 65. (Peloquin depo., Attachment 2, at 69-70)

41. Peloquin, testifying in a Rule 30(b)(6) deposition on behalf of the company, testified that the individualized documents given to the employees in connection with the 1997 Personnel Reduction Program and the 1999 Voluntary Separation Program promising, inter alia, lifetime dental benefits, were general forms, customized for the individual employee's situation. (Peloquin depo. at 2/21) The purpose of these documents, he stated, was "to try to summarize at a high level the benefits that [the employees] may be eligible for under the particular plans and plan documents," (Id., at 2/22-23) containing "certain elements of those plans to make it easier for them to review. (Ibid.). But the company, Peloquin testified, reserved the right to change or cancel dental coverage for retirees and their spouses. He relied on the statement on page DB 33 of the 264 page document entitled "Participant Benefit Information" (see ¶¶18-19. supra) under the heading "Your Rights" that the company reserved the right to amend, modify or terminate the plan at any time. (Peloquin depo. at 1/64-65)

42. Asked why the company stated in the individualized documents given to the employees that dental coverage would be for their lifetimes and for their spouse and eligible dependents for 12 months after the employee's death, Peloquin responded:

> A. Well, the intent of this document was just to provide a brief summary of all of the employee benefit plans. They were not intended to be a detailed description of

the employee benefit plans, and they can't be read in isolation of the other documents. … [The statement of lifetime benefits] was accurate as of that particular point in time, but the company did retain the right to make changes to those plans. … It was applicable – it was for your life at that particular point in time, but it was subject to the plan documents and the company's ability to make changes.

(Peloquin depo. at 2/16, 18) The basis for Peloquin's contention that dental benefits could be cancelled, notwithstanding the statement in the individualized documents that they were for life was based on a paragraph at the end of the documents:

Changes in Health Insurance Carriers and Policies

43. Since 1973 the health and dental group insurance benefit plans for employees of Commonwealth Gas Company have been changed from time to time. The company added plans, changed benefits, changed insurance carriers, changed trustees, changed individual benefits provided in the plans and changed employee co-payments. (Peloquin depo. at 2/8, 37) In the mid 1990's the company changed dental benefit providers from Delta Dental to Dental Blue. (Peloquin depo. at 2/8, 10-11) Union contracts and memoranda executed by company and Local 12004 officials show the following changes:

A. The 1973-1975 CBA (supra, ¶ 1) provided for health insurance coverage "under Blue Cross/Blue Shield Master Medical Certificate MM 1 2-1-68 Rev. and supplemented by amendatory riders R770, R642, R603, R 623, R630, R662, R126, R300 and R658 except that if such eligible employee or dependent is age 65 or over, such person shall be covered under Medicare Extension Certificate ME 3 7-1-66 as amended by Rider ME 3 R316." Dental coverage was under "Massachusetts Dental Corporation benefits as outlined in Certificate DS-1 and appropriate riders, otherwise known as First Level 70% Plan (Plan 5)."

B. The 1978-1980 CBA (¶ 3, supra) provided for health insurance coverage "under Blue Cross/Blue Shield Master Medical Certificate MM9 (1/1/76), as amended April 1, 1978, the provisions of which are made a part of this Contract."

C. The 1980-1983 CBA (¶ 4, supra) changed the health insurance coverage in the 1978-1980 agreement by adding a further amendment dated July 1, 1978 to the Blue Cross/Blue Shield certificate. That CBA also provided for dental coverage "under Massachusetts Dental Service Corporation benefits as outlined in Certificate DS-1 and appropriate riders, otherwise known as first level 100% (Plan 1), the provisions of which are made a part of this Contract."

D. The 1983-1986 CBA (¶ 5, supra) provided for health insurance coverage as in the 1978 and 1980 agreements, with the addition of further amendments to the certificate dated January 1, 1981 and January 1, 1982. The 1983-1986 CBA also changed the dental coverage to be that "under Dental Services of Massachusetts, Inc. benefits as outlined in Certificate DA-1 effective January 1, 1874 and amended July 1, 1978 and DS-1 second level 50% Plan and DS-1 third level plan ($ 900 lifetime maximum), effective January 1, 1981, otherwise known as first level 100% (Plan 1) effective January 1, 1974, and Second Level 50% Plan and DS-1 Third Level Plan ($900 lifetime maximum), effective January 1, 1981."

E. The 1986-1990 CBA (¶ 6, supra) provided health insurance "under the terms and conditions of Blue Cross/Blue Shield of Massachusetts Master Medical Certificate MM CES 1 (06/01/81), and further amended January 1, 1982, September 1, 1983, November 1, 1983 (TIP), May 1, 1984, January 1, 1985, March 27, 1985 and January 1, 1987, the provisions of which are made a part of this Contract." That CBA also changed

the dental benefits to "First Level Plan (100% Reimbursement), effective July 1, 1978,

Second Level Plan (50% Reimbursement) effective January 1, 1981 (70%

Reimbursement effective January 1, 1984) and Third Level Plan (Table of Allowance),

effective January 1, 1981, and further amended May 11, 1981 and March 27, 1985."

F. A memorandum of agreement between Commonwealth Gas Company and

Local 12004 dated June 16, 1986 amended the table of allowances under the Dental Plan.

A further memorandum dated December 11 1986 added benefits for cardiac rehabilitation

and enhanced vision care. A further memorandum dated July 20, 1987 added provision

for certain diabetic medical supplies. A further memorandum dated October 14, 1987

added hearing care benefits and added a prescription plan rider. A further memorandum

dated June 13, 1989 increased the allowance for outpatient psychiatric services. (Pyle aff.

¶ 1, Attachment E)

G. The 1990-1993 CBA (¶ 4, supra) provided dental coverage "under the terms

and conditions of Dental Service of Massachusetts Inc., DPP II, as amended, the

provisions of which are made a part of this Contract." A memorandum agreement dated

April 6, 1990 provided for an employee co-payment for in-patient room and board and

increased the maximum annual dental maximum per employee from $1000 to $1200.

H. The 1993-1996 CBA (¶ 5, supra) provided for changes in the Prescription

Drug Plan Rider and an opt out program whereby employees having medical coverage

elsewhere.

I. The 1996-2002 CBA (¶ 6, supra) provided health insurance "under the terms

and conditions of Blue Cross/Blue Shield of Massachusetts Master Medical Subscriber

Certificate, MM CES 3, as amended, or Health Flex Blue/Blue Choice Plan 2 Program, as

amended, or Medex Subscriber Certificate, Medex CES 1, as amended, the provisions of which are made a part of this Contract."

44. The affidavit of Carol S. Chandor (Attachment 18) an expert in insured employee medical and dental benefit plans, states that the provisions of the SPD's for health and dental plans used by Commonwealth Gas in 1990, 1997 and 1997 are prepared by the insurance providers, Delta Dental Plan or Blue Cross Blue Shield of Massachusetts and are not unique to Commonwealth Gas Company. She states that: "In preparing and issuing summary plan descriptions Massachusetts health and dental insurers typically include a provision allowing the plan sponsor (the employer who provides and purchases the insurance coverage for its employees and retirees) to terminate the coverage at any time." She also states that employers regularly review their plans, the plan design and service levels of their insurers and may change insurance providers. She observes that the language providing for lifetime dental coverage in the documents given to employees in the 1997 and 1999 early retirement programs do not specify any particular insurance provider or any particular plan. Therefore the standard termination clause in the Dental Blue SPD does not negate or limit the promised lifetime dental coverage.

Respectfully submitted:

CHARLES J. SENIOR, NORMAN FAHY,
RONALD D. PHIPPS, RAYMOND
W. POSTMA, THOMAS G. HIRL,
GARRETT M. FAGAN
and UNITED STEELWORKERS
OF AMERICA, LOCAL 12004

By their attorneys,

Warren H. Pyle, BBO # 408400
Pyle, Rome, Lichten, Ehrenberg
    & Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
Tel: (617) 367-7200

Dated: March 4, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon all counsel of record, by hand delivery, on March 4, 2005.

Warren H. Pyle

Warren/NStar Senior Statement of Undisputed Facts 3-Mar 3 05

30