UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
CHARLES J. SENIOR, NORMAN FAHY, )
RONALD D. PHIPPS, RAYMOND )
W. POSTMA, THOMAS G. HIRL, )
GARRETT M. FAGAN )
and UNITED STEELWORKERS )
OF AMERICA, LOCAL 12004 )
 )
v. ) Civil Action No. 04-10160-EFH
 )
NSTAR ELECTRIC AND GAS )
CORPORATION and )
COMMONWEALTH GAS COMPANY )
_____)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs oppose defendants' motion for summary judgment and in support thereof direct the Court's attention to their main memorandum, their statement of undisputed facts and their response to defendants' statement of undisputed facts.

I. THIS CASE PRESENTS DIFFERENT FACTS AND THEORIES
OF RECOVERY AND IS NOT CONTROLLED BY THE COURT'S
DECISION IN UTILITY WORKERS, LOCAL 369 v. NSTAR

Defendant's summary judgment memorandum argues primarily that this case is no different from Local 369, Utility Workers Union of America v. NSTAR Electric and Gas Corporation, 317 F.Supp.2d 69 (D.Mass. 2004) and that this Court's decision is dispositive of plaintiffs' claims. This, as we will show, is incorrect. In Local 369, the plaintiffs sought a broad ruling that under a series of collective bargaining agreements between Local 369's predecessors and Commonwealth Energy System subsidiaries, all past retirees were entitled to continued, unmodified health and dental benefits, including Medicare Part B reimbursement. In this case Local 12004's claims are limited and based

1

on different contracts and facts and different theories of recovery. Here Local 12004 seeks relief for three groups of employees: (1) Employees who retired under the terms of the 1973, 1975 and 1978 collective bargaining agreements (CBAs), which specifically provided for reimbursement of Medicare Part B premiums for retired employee, (2) two retired employees (representative of a class similarly situated) who were promised lifetime Medicare Part B reimbursement in written and oral communications by company representatives, and (3) former employees who retired under the terms of 1997 and 1999 memorandums of agreement and/or ERISA plans providing lifetime dental benefits as part of special retirement incentive programs.

The Court's opinion indicates that Local 369 plaintiffs made two principal arguments: <u>First</u>, that the provisions of the various collective bargaining agreements (CBAs) that "eligible employees … will be covered under the terms and conditions of Blue Cross and Blue Shield of Massachusetts Master Medical Certificate, MM CES 3, as amended, or Medex Subscriber Certificate, Medex CES 1, as amended [and similar language for dental benefits]" somehow extended to employees after they retire. The Court ruled that phrases such as "eligible employees will be covered" does not include retired employees and rejected that argument. Plaintiffs in this case do not rely on those CBAs that do not specifically provide for retirees' benefits. <u>Second,</u> the plaintiffs in Local 369 argued, in support of the section 301 claim that the CBAs – which did not mention retiree benefits at all – provided lifetime health and dental benefits because some plaintiffs received benefit summaries that stated "your medical coverage will be for your life" and "your dental coverage will be for your life." The court pointed out that the CBAs did not provide for retiree health benefits and that the benefit summaries were not

2

incorporated into the CBAs. Plaintiffs in this case do not. (3) A third claim made by the Local 369 plaintiffs was that the changes in health benefits violated the Commonwealth Pension plan. The Local 12004 plaintiffs do not make such an argument. (4) Finally, the Court's opinion indicates that the Local 369 plaintiffs claimed that "the eligibility requirements contained in the [1997] PRP amounted to promises of vested post-retirement health benefits." The Court ruled that "defining the eligibility requirements for participating in a retiree welfare benefits plan is not the same as granting vested rights," and dismissed that claim. While the plaintiffs in this case do claim relief under the 1997 PRP, they do so on different facts and theories of recovery. In short, the Local 369 plaintiffs went for a global, grand slam recovery, the Local 12004 plaintiffs make selective claims under focused agreements, plan documents and legal theories.

> II. THE FORMER EMPLOYEES WHO RETIRED DURING THE YEARS 1973 – 1980 UNDER THE TERMS OF THE CBAs ARE ENTIELED TO CONTINUED REIMBURSEMNT OF MEDICARE PART B PREMIUMS

Plaintiffs agree that ERISA welfare benefits, as defined in 29 U.S.C. § 1002(1) are not automatically vested. However nothing in ERISA precludes or is hostile to an employer's ERISA plan or contractual agreement to provide lifetime welfare benefits. Indeed, ERISA provides a vehicle for enforcement of welfare benefit plans according to their terms. "Thus, it is an issue of contract interpretation whether [Commonwealth Gas] vested its retirees with post-retirement welfare benefits." Murphy v. Keystone Steel & Wire Co., 61 ?F.3d 560, 564 (7th Cir. 1995. cited in Automobile Workers (UAW) v. Rockford Powertrain, 350 F.3d 698, 702 (7th Cir. 2003). In this circuit courts look to extrinsic evidence in construing collective bargaining agreements and draw an inference that benefits for retirees are "status" benefits which continue as long as the retiree status

is maintained. United Steelworkers of America v. Textron, 836 F.2d 6 (1 Cir. 1987), citing UAW v Yard-Man, 716 F.2d 1476 (6th Cir. 1983), and United Steelworkers of America v. Newman-Crosby Steel, 822 F.Supp. 862 (D.R.I. 1993).

NSTAR argues that the language of the 1973-1980 agreements do not support plaintiffs' claim that the relatively small number of surviving retirees who retired during the term of those agreements are entitled to reimbursement of Medicare Part B premiums for their lifetimes. Plaintiffs do not argue that employees who retired <u>after</u> April 1 1980 are entitled to Medicare Part B reimbursement by virtue of the language of the CBAs under which they retired. But the Yard-Man-Textron inference is the law of the First Circuit, and it is fully applicable those who retired under the 1973, 1975 and 1978 CBAs, although, as defendants point out, some other circuits do not agree with that inference.[1] As then Judge Breyer observed, "it would not make much sense for Textron to promise to pay retiree insurance costs for only the few years of the contract's actual life."

As shown in plaintiffs' main memorandum, the claims those who retired under the CBAs in 1973-1980 are based on the specific provisions in those agreements for reimbursement of Medicare Part B premiums, the Yard-Man and Textron inferences, and the extrinsic evidence – the documents they were given in connection with their retirement that promised Medicare Part B reimbursement for themselves and their spouses.

---

[1] NSTAR cites a passage from the Bankruptcy Court's opinion in In re Morse Tool, 148 B.R. 97 (Bankr. D. Mass. 1992) suggesting that the Court of Appeals merely recited the Union's argument in Textron. The Court of Appeals affirmed issuance of the injunction issued by the district court on established grounds, including the probability of success on the merits.

4

III. PLAINTIFFS SENIOR AND FAGAN

Plaintiffs' argument in support of the ERISA plan claims of Charles Senior and Garrett Fagan are set forth in our main memorandum.

IV. CLAIMS FOR 1997 AND 1999 RETIREES UNDER THE
MEMORANDUMS OF AGREEMENT AND ERISA PLANS

The claims of the Union and the individual retiree plaintiffs for lifetime dental benefits under the 1997 Personnel Retirement Program (PRP) and the 1999 Voluntary Separation Program (VSP) are firmly rooted in the relevant documents. The claim of the Local 369 plaintiffs under the 1997 PRP -- as recited in the Court's opinion, was that the series of CBAs – which did not mention retiree benefits at all – provided lifetime health and dental benefits because "some plaintiffs received benefit summaries that stated 'your medical coverage will be for your life' and 'your dental coverage will be for your life.'" The court pointed out that the CBAs did not mention retiree health or dental benefits and that the benefit summaries were not incorporated into the CBAs.

Plaintiffs in this case base their section 301 claims for lifetime dental benefits not on the CBAs – which, after April 1, 1980, made no reference to retirees -- but on the terms of the 1997 and 1999 memorandum agreements between Commonwealth Gas and Local 12004. The Court's Local 369 opinion makes no mention of such memorandum agreements between Local 369 and the company. The 1997 and 1999 memorandum agreements between Local 12004 and Commonwealth Gas, although not full dress CBAs, are nonetheless "contracts between an employer and a labor organization representing employees in an industry affecting commerce" within the meaning of section 301. Retail Clerks International Association v. Lion Dry Goods, 369 U.S. 17 (1962) (strike settlement agreement is a section 301 contract). These agreements specifically provided:

5

> It is mutually agreed and understood that effective May 13, 1997 the Company will offer the following Personnel Reduction Program to all employees that are members of the United Steelworkers of America, Local #12004.
>
> …    Employees who were at least age forty (40) and had completed at least twelve (12) full years of System service as of January 1, 1993 and currently meet the "Rule of 75" will be entitled to medical and dental insurance coverage providing they pay ten percent (10%) of the current medical and dental insurance premium until age sixty-two (62). At age 62 the Company will pay 100% of the premium.

Plaintiffs submit that under the language of these memoranda and the inferences provided in the <u>Textron</u> and <u>Newman-Crosby</u> decisions, these are lifetime commitments. They specifically provide that the employees "will be entitled to medical and dental coverage providing only that they pay ten percent of the cost to age 62; after 62 the company will pay the full cost. NSTAR seems to argue that even though the memoranda – unlike the periodic CBAs – had no specific duration, Commonwealth Gas could have cancelled medical and dental insurance at any time after the employees accepted the company's invitation to retire. Commonwealth Gas obtained a permanent reduction in its workforce and the resulting cost savings. It does not make much sense to read the 1997 and 1999 memorandums as allowing Commonwealth Gas to stop health or dental benefits any time after the employees retired.

NSTAR's argument does not take account of the fact that unlike the CBAs referred to in <u>Local 369</u>, (and the periodic Local 12004 CBAs) which made specific reference to particular Blue Cross Blue Shield, Medex, and Dental Blue policies, the 1997 and 1999 memorandum agreements simply provide for "medical and dental insurance coverage," without reference to any particular insurance carrier or policy.

6

Accordingly, the plaintiffs submit that the 1997 and 1999 memorandum agreements must be construed as providing lifetime medical and dental benefits.

But even if the Court were to regard the 1997 and 1999 memorandum agreements as ambiguous, the Court must examine the extrinsic evidence to ascertain the intent of the parties, as the courts did in Textron, 836 F.2d at 9, where the Court found support in evidence statements made by a company vice-president and a benefits clerk and Newman-Crosby, 822 F.Supp. at 866 where the court referred to statements by company officials and its attorney. Here Commonwealth Gas distributed plan documents to employees in 1997 and 1999. The 1997 PRP plan document provided:

> 3. Employees who were at least forty (40) and have completed at least twelve (12) full years of System service as of January 1, 1993 and currently meet the "Rule of 75" will be entitled to medical and dental insurance coverage providing they pay At age 62 the Company will pay 100% of the premiums.

(Attachment 10 to Plaintiffs' statement of material facts) The 1999 VSP plan document did not spell out the dental benefits to be provided to retirees eligible for retirement health and dental benefits. But, most significantly, in both 1997 and 1999 Commonwealth Gas gave each employee who was considering retirement personalized documents that specifically stated that dental benefits would be provided for the retiree's lifetime and to his or her surviving spouse for an additional year. These documents remove any doubt as to the intention of Commonwealth Gas to provide lifetime dental benefits to retirees under the PRP and VSP. As to dental benefits the personalized documents provided:

7

> Since you were age 40 and had 12 or more years of employment as of January 1, 1993, you will be covered by the Company sponsored dental plan at your Actual Retirement Date.
>
> You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire) from age 55 to age 62. When you reach age 62, the Company will pay the entire premium.
>
> Coverage for your spouse and/or any eligible dependent(s) will be provided.
>
> Your dental coverage will be for your life. Your spouse and/or eligible dependents will be covered for 12 months after your death. At the end of the 12 months, your spouse and/or eligible dependents will be offered continuation of coverage through COBRA.

An additional piece of extrinsic documentary evidence further confirms the intention of Commonwealth Gas. In the 1999 VSP there were two versions of the VSP plan document. The one given to non-union personnel contained a disclaimer at the bottom of the page that briefly describes or refers to benefits on retirement: *"The Company reserves the right to change or terminate coverage for current and former employees at any time. Any such change may be in the benefits provided, the contributions required, or in any other aspect in accordance with applicable laws."* (Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts and Supplement to Their Statement of Material Facts, at ¶ 67) There was no such disclaimer in the identical document given to prospective retirees who were represented by Local 12004 and covered by the 1999 VSP memorandum agreement.[2] These facts demonstrate

---

[2] Defendant's Statement of Material Facts, at ¶ 53, states that there was such a disclaimer on the documents given to union retirees. We understand that this error will be corrected.

clearly that Commonwealth Gas considered that it had contractual commitments to the union retirees for lifetime medical and dental benefits.[3]

Defendants argue that various disclaimers over the years defeat the Union' and the employees' claims for lifetime dental benefits under the 1997 and 1999 retirement incentive programs. First, the terms of the "Commonwealth Energy Post Retirement Benefit Program," established in 1993 were never communicated to the Union or the employees. (P.St. ¶ 32; Peloquin dep. at 1/65-66) and are therefore not relevant. Defendants also refer to various summary plan descriptions for *particular* health and dental plans, which generally, buried in their lengthy terms, state that the insurer or the company may terminate coverage under the particular plan. Over the years since 1973 Commonwealth Gas' health and dental plans changed from year to year. (P.St. ¶ 43) Each CBA referred to specific health and dental plans identified by the name of the insurance provider and policy number. As the expert affidavit of Carol Chandor shows, these provisions are typical of those in health and dental policies generated by Massachusetts group insurers.

However, unlike the CBAs, the 1997 and 1999 memorandum agreements, in describing the dental benefits to be provided to those retirees, did not refer to any particular insurance carrier or plan. Nor did the 1997 and 1999 individual summaries given to the prospective retirees identify any particular insurance provider or plan. They simply provided that dental coverage would be for the employee's lifetime, without reference to any particular insurer or plan.

---

[3] However, as explained in the non-union employees' Opposition to NSTAR's motion for summary judgment in Balestracci, et als. v. NSTAR , the recited disclaimer does not defeat the claims of the 1999 non-union retirees.

9

The difference is significant and controlling. While the CBAs required the company to maintain in force particular health and dental plans provided by particular insurance companies, the 1997 and 1999 memoranda, plan documents and personalized summaries simply provided for lifetime health and dental coverage. As we have shown, the Court dismissed Local 369's section 301 claims for lifetime health coverage because Local 369 relied on the CBAs, which specifically referred to and effectively incorporated particular insurance carriers and particular policies and did not incorporate the individual plan summaries.

Carol Cormier was supervisor of payroll and employee benefits for Commonwealth Gas from September 1987 through October 1997 and benefits coordinator for Commonwealth Energy Systems thereafter through 2000. In these capacities she administered benefit plans on a daily basis. During that time she met with Commonwealth Gas employees who had questions about their benefits. She testified in a deposition that she never discussed the language of summary plan descriptions with employees. In speaking with a Commonwealth Gas employee considering retirement in1997 she would have said that he had medical coverage for his lifetime. She added that it would not necessarily be the same plan as on the date of retirement. That was because coverage changes when you go on a different plan. She added that she would not have told an employee that the company could eliminate Master Medical and bring in another plan or that the company had a right to do so. Her opinion was that the company could change a benefit to something similar or change to a different product. (Plaintiffs' Response to Defendants' Statement of Material Facts and Supplement to Their Statement of Material Facts, ¶ 68)

Defendants finally rely on oblique language in the 1997 and 1999 plan documents – language not included in the 1997 and 1999 memoranda of agreement – that say that plan documents are the last word and that in the event of any conflict between the summary and unspecified "employee plan documents" the "appropriate plan documents" govern. The collection of summary plan descriptions given employees *after* their retirements -- running 240 or more pages – contain detailed descriptions of benefits and, buried in the text under the headings of "Your Rights," state that the company can cancel the particular insurance plan. These summary plan descriptions for particular insurance plans are not relevant because the company's promise of lifetime dental benefits was not tied to any particular insurance company or policy. In any event, these separately provided documents do not give the kind of notice ERISA courts require to make disclaimer language. If "a participant has to read and understand the policy in order to make use of the summary, then the summary is of no use at all." Hansen v. Continental Life Ins. Co., 940 F.2d 971, 981-982 (5th Cir. 1991). Courts have ruled that where the document promising health or dental insurance for life has no reservation of rights, but the employer relies on another document that does have disclaimer language, the other document is not relevant, unless the employee's attention is somehow specifically directed to the document with a reservation of rights. See Diehl v. Twin Disc, Inc., 102 F.3d 301 (7th Cir. 1996), Heidgerd v. Olin Corp., 906 F.2d 903, 907-908 (2d Cir. 1990).

Defendants rely on UAW v. Rockford Powertrain, Inc., 350 F.3d 698 (7th Cir. 2003). But in that case there was both a lifetime benefits clause and a reservation of rights clause in the same document. The court cited Abbruscato v. Empire Blue Cross and Blue Shield, 274 F.3d 90, 99 (2nd Cir. 2001) where the court said:

11

> Here ... we have SPD language that both appears to promise lifetime life insurance coverage at a particular level *and* clearly reserves Empire's right to amend or terminate such coverage. Because the same document that potentially provided the 'lifetime' benefits also clearly informed the employees that these benefits were subject to modification, we conclude that the language contained in the 1987 SPD is not susceptible to an interpretation that promises vested lifetime life insurance benefits.

(emphasis in original).

An alternative basis for relief for the 1997 and 1999 plaintiffs under ERISA, 29 U.C.C. § 1132 is that the memoranda, together with the plan documents issued by the company and the individualized statements of benefit given the prospective retirees comprise an ERISA "plan" that promises, among other things, lifetime dental coverage for the retiree. There is nothing to require that the terms of an ERISA plan be confined to statements in a single document. Wickman v. Northwestern Nat. Ins. Co., 908 F.3d 1077 (1Cir. 1990), citing the criteria set forth in the leading case of Donovan v. Dillingham, 688 F.2d 1367 (11th Cir. 1982): "In summary, 'a plan, fund or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of funding, and procedures for receiving benefits.

Finally, as argued in our prior memorandum, if the Court should rule that the 1997 and 1999 individual plaintiffs do not have a claim because the 1997 PRP and the 1999 VSP are not ERISA plans, they are entitled to recovery on the same facts and arguments under Massachusetts contract law and estoppel doctrine.

## Conclusion

For the reasons set forth in plaintiffs' main memorandum and herein, the Court should grant the relief sought by the plaintiffs.

Respectfully submitted:

CHARLES J. SENIOR, NORMAN FAHY,
RONALD D. PHIPPS, RAYMOND
W. POSTMA, THOMAS G. HIRL,
GARRETT M. FAGAN
and UNITED STEELWORKERS
OF AMERICA, LOCAL 12004

By their attorneys,

__s/Warren H. Pyle_____
Warren H. Pyle, BBO # 408400
Pyle, Rome, Lichten, Ehrenberg
     & Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
Tel: (617) 367-7200

Dated: April 8, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon all counsel of record, by hand delivery, on April 8, 2005.

__s/Warren H. Pyle_____
Warren H. Pyle

13