UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
CHARLES J. SENIOR, NORMAN FAHY, )
RONALD D. PHIPPS, RAYMOND )
W. POSTMA, THOMAS G. HIRL, )
GARRETT M. FAGAN )
and UNITED STEELWORKERS )
OF AMERICA, LOCAL 12004 )
 )
          Plaintiffs, )
v. ) Civil Action No. 04-10160-EFH
 )
NSTAR ELECTRIC AND GAS )
CORPORATION and )
COMMONWEALTH GAS COMPANY )
 )
          Defendant )
_____)

**PLAINTIFFS' RESPONSE, PURSUANT TO LOCAL RULE 56.1,
TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL
FACTS AND SUPPLEMENT TO THEIR STATEMENT
OF UNDISPUTED MATERIAL FACTS**

Plaintiffs submit the following response, pursuant to Local Rule 56.1, to Defendants' Statement of Undisputed Material Facts:

1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17.  Plaintiffs agree.

18. Plaintiffs agree that, as to retirement benefits, the provisions quoted in paragraph 17 changed only eligibility requirements.

19. Plaintiffs agree.

20. Plaintiffs agree that the 1975-1978 agreement contained the quoted language. Other agreements differed to some degree. The exact provisions of the 1975, 1980, , 1983, 1986, 1993, 1986, 1993 and 1996 are shown in Attachment A to this Response.

21. Plaintiffs admit that Mr. Miller testified that "the feeling was that you could do anything you wanted to with a retiree." (Miller Dep., Vol. I, p.34) However Mr. Miller

did not work in Labor Relations for Commonwealth Gas until 1979. (Miller dep. Vo I, p. 38). Miller testified that "there was times that they, in all honesty, made promises to retirees." (Id., at 46)

22. Plaintiffs admit that paragraph 22 correctly reflects Mr. Tieuli's positions with the Company and his testimony that benefits for (already) retired persons was not discussed while he was involved in contract negotiations. As to his own understanding that benefits could change, he testified that this was based on a conversation he had with the president of the company. He also testified (Tieuli dep. at 42) that in meetings with Local 12004 leading to the memorandum of agreements concerning the 1997 PRP and the 1999 VSP the union did not ask and was not told by anyone on the company committee that benefits under those programs might change. (Tieuli dep. at 36-38)

23, 24. Plaintiffs agree.

25. Plaintiffs agree that Mr. Peloquin's affidavit contains the quoted statements from his affidavit as to the stated purpose of the 2003 changes in retirement health care. Plaintiffs submit that the changes necessarily reduced the Company's health care costs, since Medicare Part B requires a monthly contribution of approximately $58 per person per month.

26. Plaintiffs accept the generalized description of the changes. However, as shown elsewhere, the Company ceased reimbursing retired employees for the cost of Medicare Part B and announced that dental care would be eliminated for Commonwealth Gas retirees and their spouses who were not age 65 as of April 1, 2003. And NSTAR reserves the right to make further changes and to eliminate coverage entirely.

2

27, 28, 30, 31, 32, 33. Plaintiffs accept the statement that in some instances there were improvements in benefits to retirees and that some changes did not reduce benefits. However NSTAR reserved the right to make further changes and to eliminate coverage entirely. However NSTAR has claimed the right to change any of the described benefits.

34. Plaintiffs agree, except as to the second sentence, which applies only to Boston Edison retirees. Commonwealth Gas retirees who were 65 or more as of April 1, 2003 continued to receive dental coverage.

35. This is not a fair characterization of Mr. Miller's deposition testimony. Mr. Miller's testimony, at Vol. II, pp. 166-167 was that he would not be surprised if he were told that there are no vesting provisions in the company's plans for health benefits. And, as is set forth in Plaintiff's statement of material facts, some collective bargaining agreements provided for reimbursement of Part B premiums for retirees, and various summaries of benefits provided for lifetime health and dental coverage. (PSt. ¶¶ 1-3, 23, 26-28, 34, 36.

36, 37. Plaintiffs accept the quotations from the Post Retirement Benefit Program documents. However Bernard Peloquin, Manager of Employee Benefits for Commonwealth Energy System beginning in 1993 Director of Total Benefits for NSTAR since 2000, testified that these documents were not given to employees and that he could not recall having been asked for a copy of those documents by employees. (Peloquin dep. at 1/13-18, 61-62)

38, 39. Plaintiffs admit that the individuals referred to gave the quoted testimony. However they were management personnel dealing with employees other than those represented by Local 12004.

3

40. Plaiintiffs agree.

41. Plaintiffs agree that the particular certificate identified in Defendant's Appendix, dated 1/1/91 contained the quoted language on page 41 of an unspecified total number of pages. And plaintiffs agree that Ms.Hayes gave testimony in the case of Local 369 v. NSTAR Electric & Gas Company that "my understanding, it was standard in almost every [insurance] contract you had because you just didn't know what the future held – way off in the future." Ms. Hayes testified that Larry Stempkowski explained to her "that it had to be in there because it's very unlikely that the company would go under. But if it did, you know, there was no money. How can you pay out benefits? It had to be in there from the legal viewpoint, from what I was told." (Hayes dep. at 28-29)

42. Plaintiffs agree that the dental certificate set out in Defendant's appendix contains the quoted language, at page 17 of at lease 23 pages.

43, 44. Plaintiffs agree that the documents identified contain the quoted language, at pages 56, 63, 20 and 31 of the respective collection of documents under the headings "Your Rights." Plaintiffs believe that the total document given to employees would total between 250 and 275 pages, as does that referred to in Plaintiffs' Statement of Undisputed Facts, ¶ 32. Plaintiffs also note that the enclosing letter to employees states that the documents are for reference if an employee has any question about benefits and coverages.

45. Plaintiffs agree that the quoted provision appears at page 57 of a booklet of at least 59 pages, as shown in the appendix to Defendant's Motion for Summary Judgment.

4

46. Plaintiffs agree that the document referred to was distributed to all employees, union and non-union.

47, 48. Plaintiffs agree that the document referred to contained the quoted language.

49. Plaintiffs do not agree that employees were given the documents entitled "Information Relative to Employee Benefits Upon Your Retirement Date" "when they retired." The deposition transcript of plaintiff Ronald Phipps shows that he was given this document at the first of three meeting with company representative Carol Cormier; that he went through it at the first meeting, that she went through it again in the second meeting. (Phipps dep. at 30-31) Plaintiff Norman Fahy testified in his deposition that he was given that document at some time before he retired; that he had two or three meetings with Carol Cormier and that he was not sure when he received it. (Phipps dep. at 20-23).

50. Plaintiffs agree.

51, 52. Plaintiffs agree that the eleven page document contained the quoted statements.

53. Plaintiffs disagree. The document (Exhibit 41, Defendant's Appendix, at page 8) contains no such language. However a version of the same document given to employees not represented by a union in connection with the 1999 VSP program did contain such a statement. See paragraph 67, infra.

54, 55, 56, 57, 58, 59, 60. Plaintiffs agree.

61, 62. Plaintiffs disagree in part. Douglas Miller told those at the pre-retirement seminar that the benefits would stay the same for the rest of his life and for an additional

5

year for his spouse if she survived him. (Phipps dep. at 15-16. Mr. Margosian told the small group of employees that he guaranteed that the medical, insurance and other benefits would be for the rest of their lives. (Phipps dep. at 25) Mr. Phipps testified that he met with Carol Cormier "going over things, making sure, because I was, you know, -- I wasn't sure whether I wanted to take this… but when all the … assurances came through, I decided I'd be foolish not to take it… as long as I had the assurances, that I was going to go out and I'd find another job." (Phipps dep. at 27) He testified that he had two [meetings] with Ms. Cormier "because I was undecided. You know, I went up the first time, and then I went back the second time and went through with it." At the second meeting she "reassured me that the entire package was true, that I would be covered for the rest of my life in every aspect, my insurance, my medical coverage, dental and all that stuff, so I said yes." He was given the document entitled "Information Relative to Employee Benefits Upon Your Retirement Date" at "the final stage, you had to go through these all over again just so you understood it completely." (Phipps dep. at 29-30)

 63, 64, 65, 66. Plaintiffs agree.

### Additional Undisputed Facts

 Plaintiffs submit the following additional undisputed facts in opposition to Defendants' Motion for Summary Judgment and in support of their own Motion for Summary Judgment:

 67. In the case of <u>Balestracci, et. als. v. NSTAR Electric and Gas Corporation</u>, Docket number 04-CV-11103 EFH the Statement of Undisputed, Material Facts Submitted by NSTAR Electric and Gas Corporation includes the following statements:

### E.     1999 Voluntary Separation Program

22.    In 1999, Commonwealth Energy and Boston Edison offered eligible employees a Voluntary Separation Program ("VSP"). The Program Summary for the VSP provided in part that "[i]f any conflict arises between this summary and either the Company's employee benefit plan documents, the Agreement and General Release, or if any part is not covered, then the terms of the appropriate plan documents or Agreement and General Release, as appropriate, will govern in all case." (COM/Energy, Boston Edison, 1999 Voluntary Separation Program, Program Summary, Exh. 63 to NSTAR Appendix).

23.    The Program Summary for the VSP contained the following provision on medical/dental benefits:

| | |
|---|---|
| Medical/Dental: For those employees who are eligible for post-retirement medical/dental benefits. | Coverage will continue to employee and eligible dependents. Certain employees might be responsible for co-payment of premiums. |

(Exh.63 to NSTAR Appendix).

24.    At the foot of the page on which appears the language quoted in par. 23, italicized language provided:

*The Company reserves the right to change or terminate coverage for Current and former employees at any time. Any such change may be in the benefits provided, the contributions required, or in any other aspect in accordance with applicable laws.*

(Exh. 64 to NSTAR Appendix)(emphasis in original).

Appendix A hereto contains the relevant pages of NSTAR's statement in that case and a copy of Exhibit 63 to the NSTAR appendix in that case.

68. Carol Cormier was supervisor of payroll and employee benefits for Commonwealth Gas from September 1987 through October 1997 and benefits coordinator for Commonwealth Energy Systems thereafter through 2000. In these capacities she administered benefit plans on a daily basis. During that time she met with Commonwealth Gas employees who had questions about their benefits. She testified in a deposition that she never discussed the language of summary plan descriptions with employees. In speaking with a Commonwealth Gas employee considering retirement in1997 she would have said that he had medical coverage for his lifetime. She added that

7

it would not necessarily be the same plan as on the date of retirement. That was because coverage changes when you go on a different plan. She added that she would not have told an employee that the company could eliminate Master Medical and bring in another plan or that the company had a right to do so. Her opinion was that the company could change a benefit to something similar or change to a different product. Cormier dep. at 10-12, 17-18, 66-72; Appendix B hereto).

            Respectfully submitted:

            CHARLES J. SENIOR, NORMAN FAHY,
            RONALD D. PHIPPS, RAYMOND
            W. POSTMA, THOMAS G. HIRL,
            GARRETT M. FAGAN
            and UNITED STEELWORKERS
            OF AMERICA, LOCAL 12004

            By their attorneys,

            ___s/Warren H. Pyle_____
            Warren H. Pyle, BBO # 408400
            Pyle, Rome, Lichten, Ehrenberg
               & Liss-Riordan
            18 Tremont Street, Suite 500
            Boston, MA 02108
            Tel: (617) 367-7200

Dated: April 8, 2005

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was served upon all counsel of record, by hand delivery, on April 8, 2005.

            __s/Warren H. Pyle_____
            Warren H. Pyle

WHP/Senior et al/ Senior Response to NSTAR St of Facts