UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*******************************************
CHARLES J. SENIOR, NORMAN FAHY, *
RONALD D. PHIPPS, RAYMOND W. *
POSTMA, THOMAS G. HIRL GARRETT *
M. FAGAN and UNITED STEELWORKERS *
OF AMERICA, LOCAL 12004, *
 *
                         **Plaintiffs** *
v. *    Civil Action No. 04-10160-EFH
 *
NSTAR ELECTRIC AND GAS *
CORPORATION and COMMONWEALTH *
GAS COMPANY, *
 *
                         **Defendants.** *
*******************************************

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

A.    **Introduction**

In their Motion for Summary Judgment, and voluminous supporting materials, Plaintiffs do not even mention, much less attempt to distinguish, this Court's opinion in Local 369, Utility Workers v. NSTAR Electric and Gas Corp., 317 F.Supp. 2d 69 (D. Mass. 2004) ("Local 369"). In Local 369, this Court entered summary judgment for NSTAR Electric and Gas Corporation ("NSTAR") on the very issues raised by Plaintiffs' motion. Based on this Court's decision in Local 369, Plaintiffs' Motion for Summary Judgment should be denied, and the Motion for Summary Judgment of NSTAR and Commonwealth Gas Company ("Commonwealth Gas") (collectively referred to as "Defendants"), granted.

Before addressing the specifics of Plaintiffs' claims, it bears mentioning that Plaintiffs have withdrawn virtually all of the claims asserted in their initial Complaint based on the changes

to retiree health and dental benefits implemented by NSTAR effective April 1, 2003. By virtue of the limited claims asserted in their Motion for Summary Judgment, Plaintiffs have conceded that the full panoply of changes implemented by NSTAR, which affected members of Local 12004 of the United Steelworkers of America ("Local 12004"), as well as others, were lawful, with the exception of: 1) the cessation of reimbursement for Medicare Part B premiums for former members of Local 12004 of the Steelworkers Union who retired from Commonwealth Gas between 1973 and early 1997, and 2) the cessation of dental benefits for those retiring under retirement programs in 1997 and 1999, once they turn age 65 (but excluding those who had attained age 65 by April 1, 2003, and thereby retained their benefits). For the reasons discussed within, Plaintiffs' belated efforts to salvage some cherry-picked claims for relief must be rejected.

**B.    Argument:    Summary Judgment Is Appropriately Entered For Defendants On All Of Plaintiffs' Claims.**

    **1.    Persons Who Retired Between 1973 And 1980 Have No Right To Reimbursement For Medicare Part B Premiums.**

As anticipated in the "Memorandum in Support of Defendants' Motion for Summary Judgment" ("Defs. Mem"), filed on March 4, 2005, Plaintiffs have argued that persons who retired between April 1, 1973 and March 31, 1980 are entitled to reimbursement of Medicare Part B premiums for life, based on language in collective bargaining agreements for those periods. (See Exhs. 24-26 to Appendix to Defendants' Motion for Summary Judgment ("Defs. Appendix")). Plaintiffs erroneously base their argument on United Steelworkers of America, AFL-CIO v. Textron, Inc., 836 F.2d 6 (1st Cir. 1987).

In Textron, the court upheld the entry of a preliminary injunction based on the non-payment of health and life insurance benefits allegedly owed to retirees under a collective bargaining

agreement. In so ruling, the court found that it "need not weigh the[] conflicting arguments" of the union and company over likelihood of success on the merits. 836 F.2d at 9. A likelihood of success at a preliminary stage of litigation, however, is a far cry from considering a fully developed record on summary judgment. See In re Morse Tool Inc., 148 B.R. 97, 149 (Bankr. D. Mass. 1992) (Textron does not "provide[] the full analytical framework needed to resolve the issues presented in that case..."). (See also Defs. Mem. at 12).

Moreover, there is no basis for concluding that the reimbursement of "[a]ny eligible employee or retiree" (emphasis added) for Medicare Part B premiums under the terms of the collective bargaining agreements should be treated as a vested benefit. Plaintiffs cannot seriously contend that the obligation to reimburse employees extended beyond the life of the pertinent agreements. There is no reason to conclude that retirees were meant to be treated any differently.

In International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, U.A.W. v. Skinner Engine Co., 188 F.3d 130 (3rd Cir. 1999), a collective bargaining agreement likewise provided for medical benefits for active employees and for retirees. The court reasoned that "[c]learly, the medical insurance benefits did not vest for active employees...Yet, the [collective bargaining agreement] provisions make no material distinction between active employees and retirees in this regard. The only reasonable conclusion -- if one begins with the uncontroversial premise that benefits for active employees were not vested -- is that benefits for retirees were likewise not vested." 188 F.3d at 144. The same conclusion should be reached for the collective bargaining agreements for 1973-1980 between Local 12004 and Commonwealth Gas.

Plaintiffs' further reliance on United Steelworkers of America, AFL-CIO v. Newman-

Crosby Steel, Inc., 822 F. Supp. 862 (D.R.I. 1993), is misplaced. There, the plaintiffs' claim for life insurance benefits was based upon a provision of a collective bargaining agreement that provided benefits for retirees only. See 822 F.Supp. at 864-865. By contrast, the agreements in this matter provided the same contractual benefit to both employees and retirees, thereby negating, as discussed, any inference of the sort of "status" benefits sought by Plaintiffs.

In short, the Plaintiffs have established no contractual right to reimbursement of Medicare Part B premiums beyond the terms of the three (3) agreements, the last of which expired in 1980. Accordingly, summary judgment should enter for Defendants on this aspect of Plaintiffs' claims.

2. **Persons Who Retired Between 1980 And 1997 Have No Right To Reimbursement Of Medicare Part B Premiums.**

In contending that reimbursement for Medicare Part B premiums extends for the lives of former members of Local 12004 who retired between April 1980 and sometime in early 1997 (when the language of the benefit summaries changed slightly), Plaintiffs make no reference to collective bargaining agreements for this period. Plaintiffs' silence on this score is not surprising. Starting in 1980, and continuing through 1997 (and beyond), the collective bargaining agreements have only provided for Medicare Part B reimbursement for employees, and not retirees. (See Statement of Undisputed Material Facts Submitted by NSTAR Electric and Gas Corporation and Commonwealth Gas Company Pursuant to Local Rule 56.1 ("Defendants' Statement"), pars. 12-16, 19). As discussed in Defendants' underlying memorandum of law, "[i]t would do violence to the bargaining process and the national policy furthering free collective bargaining to impose by judicial fiat a duty upon [the contracting parties ] that the parties in arm's-length bargaining first included

4

and then purposely deleted." See Carbon Fuel Co. v. United Mine Workers of America, 444 U.S. 212, 221-222 (1979), and cases cited at Defs. Mem. at 10-11.

Notwithstanding the absence of any support from the collective bargaining agreements, Plaintiffs purport to find a right to reimbursement based upon the individual documents, or "benefit summaries," see Local 369, 317 F.Supp. 2d at 74, provided to employees who had decided to retire. No such right exists. The meager phrase in those summaries -- "the Company will reimburse you the cost of Medicare Part 'B'" -- is insufficient to create a vested benefit. The benefit summaries do not state for how long or short Medicare Part B reimbursement will be provided, but only that it will be provided. In other words, the benefit summaries are silent on the subject of vesting. "Given [the] presumption against vesting of welfare benefits, silence indicates that welfare benefits are not vested." Vallone v. CNA Financial Corp., 375 F.3d 623, 632 (7th Cir.), cert. denied, 125 S. Ct. 670 (2004). Courts in analogous cases have reached similar results. See Senn v. United Dominion Industries, Inc., 951 F.2d 806, 816 (7th Cir. 1992), cert. denied, 509 U.S. 903 (1993) (statement that medical benefits "will continue" did not create vested benefit); Skinner Engine Co., 188 F.3d at 141 ("A plain reading of the phrases, 'will continue' and 'shall remain,' certainly does not *unambiguously* indicate that the benefits will continue *ad infinitum*, as argued by the appellants. It cannot be said that the phrases clearly and expressly indicate vesting since there is simply no durational language to qualify these phrases.") (emphasis in original).

Moreover, the provision on Medicare Part B reimbursement must be read in conjunction with the language immediately above the signature line of the Commonwealth Gas benefits representative on each benefit summary, namely that "[i]n all cases, the exact provisions of the...applicable laws will determine the benefit to be paid thereunder." As held in Local 369,

"'[e]mployers or other sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.'" Local 369, 317 F.Supp. 2d at 75 (quoting Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 74, 78 (1995)). "[A]n obligation [to vest] is not to be inferred lightly.'" Local 369, 317 F.Supp 2d at 76 (citation omitted). Under this Circuit's precedent, "'resolution of questions concerning employer obligations under such plans must be tailored to avoid undermining Congress' considered decision that welfare benefit plans must be subject to a vesting requirement.'" Local 369, 317 F.Supp. 2d at 76 (citation omitted). "In addition, several circuits require that employers agree to vested benefits in writing as part of the plan documents." 317 F.Supp. 2d at 76.

Under the "applicable law[]," then, as referenced in the benefit summaries, vesting is not lightly inferred. Based on the terms of these summaries, no reasonable factfinder could conclude that vesting is "stated in clear and express language," much less that any vesting provision is "contained in the plan document" as required by the U.S. Supreme Court. See Vallone v. CNA Financial Corp., 375 F.3d at 632.

### 3. Summary Judgment Is Appropriate For Defendants On Plaintiffs' Claims For Dental Benefits Under The 1997 And 1999 Programs.

Plaintiffs advance several arguments in support of their claims for dental benefits under the 1997 and 1999 early retirement programs offered to Local 12004 members employed by Commonwealth Gas. The short response to Plaintiffs' position is that this Court has already addressed and decided these claims, in Defendants' favor, in the opinion which Plaintiffs declined to acknowledge -- Local 369. The same result should be reached here as in Local 369.

a. **While Plaintiffs Erroneously Contend That ERISA Applies To The 1997 And 1999 Retirement Programs, The Issue Need Not Be Resolved**.

Plaintiffs seek to avoid the holding in O'Connor v. Commonwealth Gas Co., 251 F.3d 262 (1st Cir. 2001), that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq., did not apply to the Personnel Reduction Program ("PRP") offered in 1997 by Commonwealth Gas. This was exactly the same PRP, offered by the same Commonwealth Gas, that is at issue in this action. Plaintiffs' contention that the two (2) plaintiffs in O'Connor did not meet the "Rule of 75", see Local 369, 317 F.Supp. 2d at 76 n.6, or otherwise held insufficient service to qualify for post-retirement health and dental benefits under the PRP, is erroneous. See O'Connor v. Commonwealth Gas Co., 251 F.3d at 268 n.7 (both plaintiffs "had surpassed" 37 years of service). See also O'Connor, 251 F.2d at 269 (referring to "employees like [plaintiffs] with over 37 years service...").

That the claims of the Plaintiff retirees in the present action focus on continuation of post-retirement dental coverage under the 1997 and 1999 programs, rather than seeking eligibility for the PRP's benefits (at issue in O'Connor), does not allow Plaintiffs to shoehorn their claims under ERISA. "Given that the main ingredient of the PRP was a one-time, lump-sum severance bonus, calculated according to a formula that required no exercise of employer discretion, we hold that it is not a plan within the meaning of ERISA." 251 F.3d at 272. The same result should be reached in this action, in which the same early retirement program is at issue.

Nonetheless, the applicability of ERISA to the 1997 PRP, as well as to the analogous Voluntary Separation Program ("VSP"), offered in 1999, is ultimately irrelevant. For the reasons discussed within, and in Defendants' Memorandum in Support of their Motion for Summary

Judgment, summary judgment is appropriate for Defendants under both ERISA and state law. Moreover, to the extent necessary, it is appropriate for this Court to retain jurisdiction over this action, given the late stage of this litigation, and its close relation to Local 369. See O'Connor v. Commonwealth Gas Co., 251 F.3d at 272-273 (district court even on remand had "discretion" to "elect to assert supplemental jurisdiction and address the state claims," citing 28 U.S.C. §1367(c)(3)).

b. **Summary Judgment Is Appropriately Entered For Defendants On Plaintiffs' Claims Under Both The 1997 and 1997 Programs**.

    i. **Plaintiffs Have Misconstrued The 1997 and 1999 Programs**.

Plaintiffs have sought the entry of summary judgment in their favor without even mentioning this Court's opinion in Local 369. In Local 369, this Court entered summary judgment for NSTAR on claims by retirees formerly represented by Local 369 of the Utility Workers Union. The claims by the plaintiffs in Local 369 were based on changes to retiree medical and dental benefits implemented by NSTAR in April 2003, including claims based on the 1997 and 1999 retirement programs, and the changes to dental benefits under those programs. See 317 F.Supp. 2d at 76 ("The PRP contained a section regarding health and dental care."); 317 F.Supp. 2d at 77 n.7 (the "dental benefits plan explicitly provided that...the plan[] could be changed or cancelled."). The Plaintiffs to the present action -- retirees under the 1997 and 1999 programs -- are asserting claims based on the same changes to dental benefits at issue in Local 369. There are no rational legitimate grounds for reaching a different result in this action.

None of the arguments advanced by Plaintiffs -- all of which mirror those of the Plaintiffs in Local 369 -- warrant disturbing this Court's opinion. Plaintiffs' focus on the words "for

life" in reference to dental benefits overlooks the clear language of the "benefit summaries," see Local 369, 317 F.Supp. 2d at 74, provided to employees. In both 1997 and 1999, prospective retirees were informed that the terms of the plan documents controlled. (See Defendants' Statement, par. 48; Response of Defendants NSTAR Electric and Gas Corporation and Commonwealth Gas Company to Plaintiffs' Statement of Undisputed Facts in Support of Motion for Summary Judgment ("Defendants' Response"), par. 36).[1] Compare Local 369, 317 F.Supp. 2d at 74-75 (notwithstanding "benefit summaries" stating that 'your dental coverage will be for your life,'" "the summaries provide that '[i]f any conflict arises between this description and the Plan document, or if we do not cover any point, the terms of the Plan document will always govern.' It is clear that the plan documents, not the plan summaries, control...[T]he plan documents clearly allow for the plans to be changed or cancelled."); 317 F.Supp. 2d at 77 n.7 ("the terms of the...dental benefits plan explicitly provided that the plans could be changed or cancelled."). Under the terms of the summary plan descriptions (SPDs) for the dental and other medical benefit plans, participants had the right to review all plan documents. (See Defendants' Response, par. 8).

Plaintiffs also seek to create the false impression that SPDs were first issued (at least as to employees retiring under the 1997 and 1999 programs) only after employees had decided to

---

[1] Paragraph 53 of Defendants' Statement mistakenly states that the 1999 VSP plan summary provided to employees who were members of Local 12004 contained the quoted language. In fact, such language was included only in the plan summary for management employees. (Compare Exh. 41 to Defs. Appendix with Exh. 63 to Appendix to Defendant's Motion for Summary Judgment, Balestracci, et al. v. NSTAR Electric and Gas Corp., et al., Civil Action No. 04-11103-EFH). However, the plan summary for Local 12004 members did contain the language set forth in paragraph 35 of Defendants' Response, making clear that the plan documents controlled. As discussed above, this same language was relied upon by this Court in Local 369 in entering summary judgment for NSTAR. The use of more explicit language for management employees does not diminish the effect of the language used for members of Local 12004 (and Local 369).

retire under these programs. In fact, SPDs containing the same reservation of rights language used in the June 1997 SPD, had been issued prior to the announcement of the 1997 program. (See, e.g., Defendants' Statement, pars. 43, 44).[2] These SPDs had plainly stated that "[t]he Company reserves the right, subject to the provisions of any collective bargaining agreement, to amend, modify or terminate the [dental] Plan at anytime." (Defendants' Statement, par. 43). Other documents likewise informed employees of the Company's right to discontinue benefits. (See Defendants' Statement, par. 46 (1993 letter from President of Commonwealth Gas)).

The opinions of Plaintiffs' "expert" (Carol Chandor) should be disregarded. Defendants have filed a motion to exclude Ms. Chandor's report and opinions, for reasons including that expert testimony is not permitted regarding questions of contract or other interpretation which are regularly addressed to courts. (See Defendants' Motion to Prohibit Use of Expert Witness (Carol Chandor) and Strike Expert Report, and in Alternative for Leave to Conduct Deposition, filed March 4, 2005, and supporting memorandum).

Even if considered, Ms. Chandor's opinions are irrelevant. No reasonable factfinder could conclude that the plan documents and SPDs only reserved the right to change insurance policies or carriers. Rather, the reservation of rights clearly extended to the right to "amend, modify or terminate the [dental] Plan at any time." (See Defendants' Statement, pars. 43, 44). Ms. Chandor presumes to take over the role of this Court, and substitute her own judgment for that of this Court

---

[2]Moreover, Plaintiffs' citation to 29 U.S.C. §1022 is inapposite. For one, Plaintiffs have advanced no claims based on this statute. Moreover, Commonwealth Gas regularly issued SPDs for its health and dental benefit plans which contained the information required under the statute. (See Defendants' Statement, pars. 40, 43, 44; see also Defendants' Response, par. 21). Other documents provided to employees apprised them of the potential modification or elimination of benefits. (See Defendants' Statement, par. 46).

10

in Local 369. Such usurpation should not be allowed.

In sum, the Plaintiffs have shown no basis for disturbing this Court's decision in Local 369. In that decision this Court determined the very same issues presented by the cross-motions for summary judgment in this action. Accordingly, Plaintiffs' motion should be denied, and Defendants' motion allowed.

> ii.   **The Case Law Cited By Plaintiffs Does Not Justify Disturbing This Court's Decision In Local 369.**

While Plaintiffs' memorandum of law cites to numerous opinions, none of them have either been issued subsequent to this Court's decision in Local 369, or provide any support for Plaintiffs' position.

Plaintiffs' citation to United Steelworkers of America, AFL-CIO v. Newman-Crosby Steel, Inc., 822 F. Supp. 862 (D. R.I. 1993) (see Plaintiffs' Brief at 25), is unavailing. Unlike the situation in Newman-Crosby, where the collective bargaining agreement relied upon by plaintiffs did not limit the benefits provided for, the language concerning "lifetime" dental benefits in the benefit summaries here was made subject to the provisions of the plan documents, which authorized the Company to terminate dental benefits. See also Matter of Consolidated Mutual Insurance Co., 77 N.Y.2d 144, 148, 566 N.E.2d 633, 565 N.Y.S.2d 434 (1990), cited by Plaintiffs at 25, in which the employer reserved the right to discontinue "many" plans and benefits; SPDs of Commonwealth Gas specifically reserved rights as to each plan.

Plaintiffs' further citations (at 26) are unpersuasive. Pizzuti v. Polaroid Corp., 985 F.2d 13 (1st Cir. 1993), is a patent infringement action. In GCIU Employer Retirement Fund v. Chicago Tribune Co., 66 F.3d 862 (7th Cir. 1995), the court held that an employer's obligation to

11

make pension contributions expired with a collective bargaining agreement. This issue is not pertinent to the present action.

Plaintiffs' brief makes no attempt to distinguish among the four (4) counts in their Complaint. Nonetheless, Plaintiffs do specifically mention their claim of breach of fiduciary duty under ERISA (which has no state law analogue), and cite to Center v. First International Life Insurance Co., 1997 WL 136473 (D. Mass. 1997), and its discussion of that claim. The court in Center in turn relied upon Varity Corp. v. Howe, 516 U.S. 489 (1996). As the case law has developed since Varity, courts have consistently held that fiduciary duty claims are unavailable absent evidence of an intent to deceive employees, i.e., unavailable when the evidence shows that the information provided was accurate when it was conveyed. (See Memorandum in Support of Defendants' Motion for Summary Judgment, at 18-20). Plaintiffs have identified no evidence of an intent to deceive prospective retirees. Including a reservation of rights in connection with the SPDs for the Company's dental plans is wholly inconsistent with such an intent.

Plaintiffs rely heavily upon Diehl v. Twin Disc, Inc., 102 F.3d 301 (7th Cir. 1996) (at 28-29), but this citation is unpersuasive. As explained in International Union of United Automobile, Aerospace and Agricultural Implement Workers of America, U.A.W. v. Rockford Powertrain, Inc., 350 F.3d 698, 705 (7th Cir. 2003), at issue in Diehl was a collective bargaining agreement which granted certain rights to retirees "notwithstanding any provision of" an "Insurance Agreement" relied upon by the employer. In the present matter, by contrast, the individualized benefit summaries provided to employees retiring under the 1997 and 1999 programs did not state that benefits were furnished "notwithstanding" the "provision(s)" of any documents. In fact, the benefit summaries plainly stated that "the terms of the appropriate plan documents will govern in all cases."

12

In sum, Plaintiffs' citation to numerous cases -- but not to Local 369 – represents an apparent attempt to obscure the undisputed fact that this Court has already disposed of the issues raised by the cross-motions. Accordingly, summary judgment for Defendants is appropriately entered.

**c.    Plaintiffs' Purported State Law Claims Of Contract And Estoppel Must Fail.**

Plaintiffs argue in the alternative that if ERISA is inapplicable to the 1997 and 1999 retirement programs, then state law contract and estoppel claims are available. Plaintiffs' position is erroneous. Plaintiffs' purported state law estoppel claim is addressed in Defendants' underlying memorandum of law. (See Memorandum in Support of Defendants' Motion for Summary Judgment, at 14-17).

Plaintiffs' state law breach of contract claim is identical to Count I of the Complaint as amended, alleging breach of plan provisions under ERISA. For the reasons discussed above, and in Defendants' underlying memorandum of law (at 5-8, 20), no reasonable factfinder could find for Plaintiffs on these claims.

**D.    Conclusion**

For all the above reasons, and the reasons set forth in the underlying memorandum of law in support of Defendants' Motion for Summary Judgment, Plaintiffs' Motion for Summary Judgment should be denied, Defendants' Motion for Summary Judgment should be granted, and Plaintiffs' Complaint, as amended, should be dismissed, with prejudice.

Respectfully submitted,

NSTAR ELECTRIC AND GAS CORPORATION
and COMMONWEALTH GAS COMPANY,

By their Attorneys,

MORGAN, BROWN & JOY, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
(617) 523-6666

By: _____
Keith B. Muntyan
B.B.O. #361380
Robert P. Morris
B.B.O. #546052

Dated: April 8, 2005

## CERTIFICATE OF SERVICE

I, Robert P. Morris, certify that on April 8, 2005, I caused to be served a copy of the within pleading by hand on counsel for Plaintiffs, Warren H. Pyle, Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., 18 Tremont Street, Suite 500, Boston, MA 02108.

_____
Robert P. Morris