UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*******************************************
CHARLES J. SENIOR, NORMAN FAHY,           *
RONALD D. PHIPPS, RAYMOND W.              *
POSTMA, THOMAS G. HIRL GARRETT M.         *
FAGAN and UNITED STEELWORKERS OF          *
AMERICA, LOCAL 12004,                     *
                                          *
                    Plaintiffs            *
v.                                        *   Civil Action No. 04-10160-EFH
                                          *
NSTAR ELECTRIC AND GAS                    *
CORPORATION and COMMONWEALTH              *
GAS COMPANY,                              *
                                          *
                    Defendants.           *
*******************************************
```

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

The briefing on the parties' cross-motions for summary judgment has largely addressed the issues raised by Plaintiffs' Complaint, as amended. However, in light of several erroneous arguments set forth in Plaintiffs' memorandum opposing the Motion for Summary Judgment of NSTAR Electric and Gas Corporation ("NSTAR") and Commonwealth Gas Company ("Commonwealth Gas") (collectively referred to as "Defendants"), Defendants respond briefly as follows:

**1**.      **This Action Is Governed By This Court's Opinion In Local 369**.

Plaintiffs maintain that this action is not governed by Utility Workers Local 369 v. NSTAR Electric and Gas Corp., 317 F.Supp. 2d 69 (D. Mass. 2004) ("Local 369"). Plaintiffs are mistaken.

The plaintiffs in Local 369 made claims on several fronts (or on a "global" basis, as

Plaintiffs to this action assert (at 3)). These claims included: a) alleged breach of collective bargaining agreements between 1973 and 1980, which agreements contained the same provisions on Medicare Part B reimbursement upon which the Plaintiffs to this action rely; b) the failure to reimburse Medicare Part B premiums for persons retiring after the 1980 agreement expired ; and c) changes to dental benefits for persons who retired under the 1997 and 1999 retirement programs. (See Memorandum of Law in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, Utility Workers, Local 369, et al. v. NSTAR Electric and Gas Corp., C.A. No. 03-CV-10530-EFH, 3/12/04, at 13-14 (referring to "the benefits [which] plaintiffs claim (Master Medical until age 65, Medicare Part B reimbursement at and after age 65, the Medex III supplement and Dental coverage for life"); at 11 (advancing arguments on behalf of those retiring since 1973 agreement)). Having dismissed the complaint in Local 369 in its entirety, see Local 369, 317 F. Supp. 2d at 77 ("NSTAR's motion for summary judgment is granted on all counts"), this Court must be presumed to have considered and rejected all of the claims raised by the Plaintiffs to this action.

Moreover, Plaintiffs' memorandum opts to ignore sections of the Local 369 opinion in which this Court specifically addressed whether the Personnel Reduction Program ("PRP") of 1997 guaranteed a lifetime of vested health and dental care. Lest there be any doubt, NSTAR once again identifies those sections of this Court's opinion which addressed this issue. See 317 F.Supp. 2d at 74-75, discussing "lifetime" language in benefit summaries used in 1997 and 1999 programs; 317 F.Supp. 2d at 76-77, discussing the PRP; and 317 F. Supp. 2d at 77 n.7, discussing reservation of rights language used in PRP.

For all purposes relevant to Defendants' motion, the 1999 Voluntary Separation Program ("VSP") is indistinguishable from the 1997 PRP. Plaintiffs do not claim otherwise. And

as noted in the initial memorandum of law in support of NSTAR's Motion for Summary Judgment in the related action of Balestracci v. NSTAR Electric and Gas Corp., Civil Action No. 04-11103-EFH (at 5 n. 4), several plaintiffs in Local 369 retired under the VSP. In short, this Court's rejection of the very claims advanced by Plaintiffs in this action calls for the entry of summary judgment in Defendants' favor.

**2.    The Specific Claims Identified By Plaintiffs Are Baseless.**

Despite this Court's prior rejection of all the "selective" and "focused" (Plaintiffs' Memorandum at 3) claims advanced by Plaintiffs to this action, Plaintiffs persist in advancing them. Pursuant to Defendants' Motion for Summary Judgment, all of these claims should be dismissed:[1]

**a.    The Retirees Under The 1973-1980 Collective Bargaining Agreements Have No Right To Medicare Part B Reimbursement.**

Plaintiffs seek to transform an appellate ruling on the propriety of a preliminary injunction motion, see United Steelworkers of America v. Textron, 836 F.2d6 (1st Cir. 1987), into a per se rule that an inference of vesting must be drawn from the provisions of the collective bargaining agreements at issue. Plaintiffs are mistaken.

As discussed in Defendants' underlying memorandum of law (at 12), the court in In re Morse Tool, Inc., 148 B.R. 97, 145-147 (Bankruptcy D. Mass. 1992) discussed at length Textron, International Union, United Automobile, Aerospace and Agricultural Inplant Workers of America, U.A.W. v. Yard-Man, 716 F.2d 1476 (6th Cir. 1983), cert. denied. 465 U.S. 1007 (1984), and related case law. The court explained that "the First Circuit's Textron decision ***does not*** 'explicitly endorse'

---

[1] Plaintiffs do not advance any further argument on their claim for a vested right to reimbursement for Medicare Part B premiums for persons retiring after the expiration (in 1980) of the 1978 collective bargaining agreement. Accordingly, this claim is not addressed in this memorandum.

or even address Yard-Man's holding that where benefits are promised to retirees, that fact alone gives rise to an inference that the benefits were intended to be lifetime benefits." 148 B.R. at 145 (emphasis added). Thus, this Court is not required to presume that any reference in a collective bargaining agreement to retiree benefits thereby vests those benefits.

Moreover, as discussed in Defendants' opposition to Plaintiffs' Motion for Summary Judgment (at 3), the agreements relied upon by Plaintiffs do not support any inference of lifetime vesting of reimbursement for Medicare Part B premiums. The provision on Part B reimbursement stands alongside provisions on benefits for active employees. There is no reason to conclude that retiree benefits are for life, while employee benefits provided for in the same provisions are available only for the life of the contract. See International Union, United Automobile, Aerospace and Agricultural Inplant Workers of America, U.A.W. v. Skinner-Engine Co., 188 F.3d 130, 144 (3rd Cir. 1999).

**b**.     **Plaintiffs Have No Right To Vested Dental Benefits Under The 1997 and 1999 Retirement Programs**.

Plaintiffs erroneously argue that they have a vested right to dental benefits under the 1997 and 1999 programs. The Memoranda of Agreement entered into between Local 12004 of the United Steelworkers of America and Commonwealth Gas/NSTAR for both the 1997 and 1999 programs (see Exhs. 42 and 43 to Appendix to Defendants' Motion for Summary Judgment), cited by Plaintiffs, in fact support Defendants' position.

Both Memoranda of Agreement explicitly refer to the "Personnel Reduction Program" and "Voluntary Separation Program" offered to eligible employees. The terms of these programs are not contained wholly within the four corners of the memoranda, but are also found in the other

4

documents provided to members of Local 12004.² As discussed, these documents reserve to the Company the right to modify or discontinue benefits. Thus, reading the program provisions as a whole makes clear that the Commonwealth Gas and NSTAR reserved to itself the right to modify or eliminate benefits.

Moreover, Plaintiffs' efforts at avoiding the various reservations of rights for the 1997 and 1999 retirement programs are unpersuasive. As discussed in the "Response of Defendants NSTAR Electric and Gas Corporation and Commonwealth Gas Company to Plaintiffs' Statement of Undisputed Facts in Support of Motion for Summary Judgment" (par. 33), the documents establishing Commonwealth Energy's retirement programs (which clearly reserve the Company's right to discontinue benefits) were available to employees and retirees. This same right was also specifically referred to in summary plan descriptions, distributed to all employees and retirees. The reservation of rights language in the summary plan descriptions repeated, for each and every plan, Commonwealth Energy's right to modify or terminate benefits. Plaintiffs retiring under the 1997 and 1999 programs have not claimed that they were covered by a dental plan that did not contain reservation of rights language.³

The case law cited by Plaintiffs to support their interpretation of the reservation of rights language in the benefit summaries provided to retiring employees, see Local 369, 317 F. Supp. 2d at 74, offers then no support. In Hansen v. Continental Insurance Co., 940 F.2d 971 (5th Cir.

---

²Plaintiffs have not alleged that the Memoranda of Agreement between the union and company for either program were widely distributed to employees.

³Plaintiffs' assertion that the plaintiffs in Local 369 based their claims on rights under specific benefit plans once again disregards this Court's opinion, discussed above, concerning the same PRP upon which the Plaintiffs to this action rely. This Court's rejection of Plaintiffs' position undermines their entire claim.

1991), the court never considered documents (such as the benefit summaries at issue here) which referred to plan documents reserving the right to modify or discontinue benefits. By contrast, in International Union of United Automobile, Aerospace, and Agricultural Implement Workers of America, U.A.W. v. Rockford Powertrain, Inc., 350 F.3d 698 (7th Cir. 2003), the plaintiffs relied on a collective bargaining agreement which referred to an "insurance agreement". The collective bargaining agreement's "incorporation of the Insurance Agreement necessarily incorporated the reservation of rights clause found in the plan documents." 350 F.3d at 705. Likewise, retiring employees in Rockford Powertrain received "benefit calculation sheets." These documents did "not attempt to override the terms of the plan description," and specifically referred to "the legal documents applying to the Plan" -- which documents reserved the employer's right to terminate benefits. See id. at 705.

No basis exists for reaching a different conclusion regarding the 1999 retirement program. The reservation of rights language used in the benefit summaries provided to retiring employees mirrored that used for the 1997 program, and supports the entry of summary judgment on this aspect of Plaintiffs' claim.

**4**. **Conclusion**

For all the above reasons, and the reasons set forth in NSTAR's previous memoranda, NSTAR's Motion for Summary Judgment should be granted, Plaintiffs' Motion for Summary Judgment denied, and Plaintiffs' Complaint, as amended, dismissed with prejudice.

        Respectfully submitted,

        NSTAR ELECTRIC AND GAS
        CORPORATION and COMMONWEALTH
        GAS COMPANY,

        By their Attorneys,

        MORGAN, BROWN & JOY, LLP
        200 State Street, 11th Floor
        Boston, MA 02109-2605
        (617) 523-6666

        By:   s/Robert P. Morris
              Keith B. Muntyan
              B.B.O. #361380
              Robert P. Morris
              B.B.O. #546052

Dated: April 29, 2005

## CERTIFICATE OF SERVICE

      I, Robert P. Morris, certify that on April 29, 2005, I caused to be served a copy of the within pleading by first class mail on counsel for Plaintiffs, Warren H. Pyle, Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., 18 Tremont Street, Suite 500, Boston, MA 02108.


        s/Robert P. Morris
        Robert P. Morris