UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES J. SENIOR, NORMAN FAHY, ) <br> RONALD D. PHIPPS, RAYMOND ) <br> W. POSTMA, THOMAS G. HIRL, ) <br> GARRETT M. FAGAN ) <br> and UNITED STEELWORKERS ) <br> OF AMERICA, LOCAL 12004 ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> NSTAR ELECTRIC AND GAS ) <br> CORPORATION and ) <br> COMMONWEALTH GAS COMPANY ) <br> ) <br> Defendant ) <br> _____ ) | Civil Action No. 04-10160-EFH |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' REPLY MEMORANDUM
ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

*I. This Case is not Governed by the Court's Local 369 Decision
Because the Facts Presented and the Arguments Made in
this Case are Completely Different and Were not Addressed in Local 369*

Defendants again argue that this case is governed by the Court's decision in Local 369, Utility Workers Union of America v. NSTAR Electric and Gas Corporation, 317 F.Supp.2d 69 (D.Mass 2004). As we demonstrated in our Memorandum in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, this is not the case. In Local 369 the union sought a broad ruling that all the changes in retiree health and dental benefits violated the collective bargaining agreements between Local 369's predecessors and Commonwealth Energy Systems. In this case Local 12004's claims are limited to three groups of employees and are based on different facts and theories of recovery.

1

NSTAR cites two parts of the Court's opinion. At 317 F.Supp.2d at 74-75 the Court disposed of Local 369's contention that the phrase "eligible employees" and "will be covered" in the series of collective bargaining agreements (CBAs) included *retired employees*. The Court noted that "the collective bargaining agreements explicitly incorporate the provisions of the Master medical, Medex and dental plans [and that] the Master Medical, Medex and dental benefit plans, in turn, explicitly state that the can be changed or cancelled." Id. at 74. [1]

Here the plaintiffs do not rely on the CBAs – except for the claims of those who retired under the 1973-1980 agreements which specifically provide that retired employees shall be reimbursed for their Medicare Part B premiums. Rather, plaintiffs have sued on the 1997 and 1999 memorandum agreements between Commonwealth Gas and Local 12004 which provided attractive incentives for early retirements that would reduce the company's payrolls. There is nothing in the 369 opinion to suggest that there were such memorandum agreements between Local 369's predecessors and Commonwealth Energy subsidiaries. The 1997 and 1999 memorandum agreements, (PSt. 26, 34) stated:

> Employees who were at least age forty (40) and had completed at least twelve (12) full years of System service as of January 1, 1993 and currently meet the "Rule of 75" will be entitled to medical and dental insurance providing they pay ten percent (10%) of the current medical and dental premium until age sixty-two (62). At age 62 the Company will pay 100% of the premium.

It is important to note that unlike the collective bargaining agreements discussed in the Local 369 opinion at pages 74-75, the memorandum agreement made no mention of any specific insurance provider's health or dental certificates or plans. We have shown

---

[1] The Court noted that: "The plaintiffs contend that the collective bargaining agreements provided a lifetime of unaltered coverage because some plaintiffs received benefit summaries that stated 'your medical insurance coverage will be for your life' and 'your dental coverage will be for your life.' The benefit summaries, however, were not incorporated into the terms of the collective bargaining agreements, as were the provisions of the Master Medical, Medex and dental benefit plans themselves." 317 F.Supp. 2d at 74.

2

that this company, like many Massachusetts employers, often changed insurance carriers and insurance certificates or programs. (PSt. ¶¶ 43-44) Thus, the fact that the promise of lifetime retiree health and dental insurance to the 1997 and 1999 early retirees was not stated as a promise of a *particular* health or dental plan or certificate, such as was done in the Local 369 CBAs as well as the Local 12004 CBAs[2] is fully consistent with a promise of lifetime coverage.

In connection with the 1997 and 1999 memorandum agreements Commonwealth Gas distributed plan documents that promised those who retired continued health and dental coverage, again *without* reference to any particular insurance carrier or and particular certificate or policy. See PSt. 27, Pyle aff. ¶ 6, Attachment A; PSt. ¶ 35 and Peloquin depo. Exhibit 25, Attachment 2.

Finally, those who retired under the terms of the 1997 and 1999 memorandum agreements were given individualized summaries of their retirement benefits. Those individualized summaries (PSt. 28, 36) promised lifetime dental coverage, again without reference to any particular insurance carrier or certificate or policy:

> Your dental coverage will be for your life. Your spouse and/or eligible dependents will be covered for 12 months after your death…

In short, *none* of the documents the 1997 and 1999 retirees rely on – the memorandum agreements, the plan documents and the individualized summaries – mention or promise coverage under any specific insurance carrier, certificate or policy. In other words, unlike the CBAs, Commonwealth Gas was simply promising lifetime dental

---

[2] Plaintiffs' Statement of Undisputed Facts, at ¶¶ 1-9 quote the CBA provisions for health and dental insurance. Each makes reference to a specific insurance certificate, for example, the 1973-1975 agreement provided for health and dental coverage under the following policies and certificates: "Blue Cross/Blue Shield Master Medical Certificate MM 1 2-2-68 Rev. and supplemented by amendatory riders R770, R642, R626, R 603, R 630, R. 662, R 126, R 300 and R 638" and "Massachusetts Dental Service Corporation benefits outlined in certificate DS-1 and Appropriate Riders, otherwise known as First Level 70% Plan (Plan 5)."

3

coverage, *not* coverage under any particular insurance carrier or policy. Thus, the fact a disclaimer was buried in the dental certificate given the plaintiffs after they retired is not relevant or controlling.

In construing contracts, courts always seek a construction which will give meaning to *all* provisions of a document. Mastrobuono v. Hutton, 514 U.S. at 63, 115 S.Ct. 1212 (1995) (courts must endeavor to read a contract in a manner that gives effect to all provisions and that causes them to be consistent with one another). NSTAR's argument would leave the words "your dental coverage will be for your life," without meaning or effect. It would sanction a fraud on the employees. It would, if judicially sanctioned, be a precedent for employers to promise anything as long as they had a reservation of a right to cancel buried in another document not explicitly incorporated therein, a document that employees and retirees do not read.

Plaintiff's position is that NSTAR's predecessor, Commonwealth Gas, did intend to provide lifetime dental coverage as part of the incentive to encourage eligible employees to take early retirement. Commonwealth Gas did not promise that it would continue the exact terms of any dental plan, but it did promise that there would be lifetime dental coverage for the employee and his spouse. Thus, if Commonwealth Gas had decided to use a different dental insurance provider or to add a rider or to make some other change, that would not offend the promise of the 1997 or 1999 memorandum agreements or plans or the language of the individualized benefit summaries.

Thus, the facts of this case are different from those in Local 369, and the analysis and arguments advanced herein were not presented in Local 369. This case is not

governed by Local 369, and if anything in that opinion could be construed as addressing the facts present and arguments advanced herein, it should not be controlling.

## II. The decisions in *Textron* and *Newman-Crosby* are Controlling as to the Claims of Those who Retired Under the 1973-1980 Agreements

Plaintiffs argue that the decision of the Court of Appeals in United Steelworkers of America v. Textron, 836 F2d 6 (1st Cir. 1987) should be disregarded as simply affirming issuance of a preliminary injunction by Judge McNaught in the District Court, and that it does not endorse the Sixth Circuit's landmark decision in International Union v. Yard-Man, 716 F.2d 1476 (6th Cir. 1983), cert. denied 465 U.S. 1007 (1984). A reading of the opinion by Judge Breyer will dispel that notion. The court said:

> Plaintiffs have also shown a likelihood of success on the merits. The contract language – retiree medical benefits "shall be provided" and the "Company shall pay" for retiree insurance – is consistent with a Textron promise to pay retirees' insurance costs throughout their retirement, even after the particular collective bargaining agreement expires. See, e.g., UAW v. Yard-Man, Inc., 716 F.2d 1476, 1480 (6th Cir. 1983), cert. denied, 465 U.S. 1007 (1984) ("will provide" supports this interpretation); Upholsters International Union v. American Pad & Textile Co., 372 F.2d 427 (same in regard to "will continue"). The Union adds that it would not make much sense for Textron to promise to pay retiree insurance costs for only the few years of the contract's actual life. See United Steelworkers of America v. Textron, 1987 WL 33023 (order granting preliminary injunction) (If retirement lasts at all, it lasts for a life time [sic]") cf. Yard-Man, 716 F.2d at 1482 (analogizing retiree benefits to "status" benefits, which carry "an inference that they continue so long as the prerequisite status is maintained")

The court's decision fully answers defendants' contentions. As we pointed out in an earlier brief, the contract language in Textron did not specifically promise retiree health insurance "for life." The Court of Appeals' reasoning in Textron was followed in United Steelworkers of America v. Newman-Crosby Steel, 822 F.Supp. 862 (D.R.I. 1993). Thus, contrary to defendant's contention, there is every reason to conclude that retiree benefits under the 1973-1980 agreements were for life, while employee benefits

5

provided in the same CBA are for the term of the agreement. Benefits for active employees can be renegotiated at the expiration of the contract. But an employer is not required to bargain for benefits for retired employees. Allied Chemical and Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co., Chemical Division, 404 U.S. 157 (1971).

III.

We have addressed defendants' contention that the Court's Local 369 opinion does not address the facts presented and arguments advances in this case. In its reply memorandum defendants repeat arguments previously made. As we have previously demonstrated, "the [1993] documents establishing Commonwealth Energy's retirement programs (which clearly reserve the Company's right to discontinue benefits)" were never distributed to employees. See, Plaintiffs' Response to Defendants' Statement of Material Facts, ¶¶ 36, 37, quoting Commonwealth Energy System's Director of Total Benefits. The fact that buried in various summary plan descriptions prepared by insurers are statements that those particular certificates or plans can be discontinued is not relevant because the 1997 memorandum, plan documents and individualized summaries promise lifetime dental coverage and do not – unlike the CBAs – incorporate or refer to any insurer or particular plan. Plaintiffs are suing under the promise of lifetime coverage in the memorandum agreements, the plans and the individualized summaries, not under the terms of any particular dental summary plan description.

Finally, it must be noted that in 1997, *for the first time*, documents summarizing retiree benefits explicitly promised dental coverage for the retiree's lifetime. Mr. Peloquin testified, with regard to the new language, that "this, we felt was an accurate

reflection of the benefit people would receive at that time." (PSt. 23, 24) It makes no sense to suggest that the newly minted lifetime commitment was a sham because of language hidden in another document not referred to or incorporated by reference. And it should also be noted that an express reservation of rights to change or cancel benefits in the 1999 VSP plan document given to non-union employees was omitted from that given to employees represented by Local 12004 and covered by the 1999 memorandum agreement. See Plaintiffs' Response to Defendants' Statement of Facts, ¶¶ 53, 67. Defendants have not attempted to address or explain the difference.

## Conclusion

Plaintiffs have demonstrated that on the undisputed material facts they are entitled to summary judgment.[3]

                                            Respectfully submitted:

                                            CHARLES J. SENIOR, NORMAN FAHY,
RONALD D. PHIPPS, RAYMOND
W. POSTMA, THOMAS G. HIRL,
GARRETT M. FAGAN
and UNITED STEELWORKERS
OF AMERICA, LOCAL 12004

By their attorneys,

                                            /s/ Warren H. Pyle
Warren H. Pyle, BBO # 408400
Pyle, Rome, Lichten, Ehrenberg
    & Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
Dated: May 11, 2005                       Tel: (617) 367-7200

---

[3] Alternatively, if the Court finds that the relevant documents are ambiguous – which plaintiffs do not concede – the interpretation is a question for trial, to the jury in a case under section 301, or for the Court in an ERISA case.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon all counsel of record, by first class mail, on May 11, 2005.

                                                        s/Warren H. Pyle
                                                        Warren H. Pyle