# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

CHARLES J. SENIOR, ET AL.,
                Plaintiffs

           v.                                   CIVIL ACTION NO.:
                                                         04-10160-EFH

NSTAR ELECTRIC AND GAS CORPORA-
TION and COMMONWEALTH GAS
COMPANY,
                Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

May 31, 2005

HARRINGTON, S.D.J.

### Introduction

Currently pending before the Court are the parties' cross-motions for summary judgment. The plaintiffs are United Steel Workers of America Local 12004 ("Local 12004") and six individuals who are both former members of Local 12004 and retirees from Commonwealth Gas Company (hereinafter, the "Company"). The plaintiffs filed this suit against the Company and NSTAR Electric and Gas Corp. ("NSTAR"), the Company's successor,[1] challenging NSTAR's modifications, effective April 1, 2003, to plaintiffs' health and dental benefits.

---

[1] NSTAR was created by the 1999 merger of BEC Energy, the parent of Boston Edison Company, and Commonwealth Energy, the parent of, inter alia, Commonwealth Gas Company.

The plaintiffs' second amended complaint contains six counts: violation of section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461; claims for equitable and promissory estoppel under ERISA; a claim for breach of fiduciary duty under ERISA, 29 U.S.C. § 1104(a)(1); and claims under state law for breach of contract and promissory estoppel.

For the reasons described below, the Court denies plaintiffs' motion for summary judgment and grants defendants' summary judgment motion on all counts.

## Background

At issue are the changes to retirees' health and dental benefits instituted by Defendant NSTAR on April 1, 2003. Specifically, on that date, Defendant NSTAR ceased reimbursing Medicare Part B premiums paid by retirees who retired from the Company between 1973 and early 1997. In addition, Defendant NSTAR had previously announced that retirees who were not age sixty-five as of April 1, 2003 would lose their dental benefits upon reaching age sixty-five.

This case is one of three related cases in which former employees of Defendant NSTAR's predecessors have brought suit challenging Defendant NSTAR's April 1, 2003 modification and termination of certain benefits. The Court previously decided one of these cases on May 12, 2004 when it granted Defendant NSTAR's motion for summary judgment on all counts. Utility Workers, Local 369 v. NSTAR Elec. & Gas Corp., 317 F.Supp.2d 69 (D. Mass. 2004). The third case, Balestracci v. NSTAR Elec. & Gas Corp., No. 04-CV-11103-EFH, which is currently pending before the Court, is identical to the case at bar except that the Balestracci plaintiffs are former management employees, as opposed to union employees, and their claims only relate to the termination of dental benefits, not to Medicare Part B reimbursement.

**Discussion**

**I.     Summary Judgment Standard**

"A motion for summary judgment should be granted when the evidence, taken in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." See Rocafort v. IBM Corp., 334 F.3d 115, 119 (1st Cir. 2003). At the heart of this case lies plaintiffs' claims for breach of collective-bargaining-agreement provisions in violation of the LMRA and breach of employee-benefit-plan provisions in violation of ERISA. Because neither issue involves a genuine issue of material fact, the Court shall resolve these matters at this time.

**II.    Reimbursement of Medicare Part B Premiums**

   A.   Medicare Part B Reimbursement Under Collective Bargaining Agreements
        Covering the Period from April 1, 1973 to April 1, 1980

Plaintiffs argue that they are entitled to relief under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, because on April 1, 2003 Defendant NSTAR terminated its practice of reimbursing retirees' Medicare Part B premium payments. Specifically, plaintiffs contend that by ceasing to reimburse Medicare Part B premium payments, Defendant NSTAR breached a provision contained in each of three collective bargaining agreements covering the period from April 1, 1973 to April 1, 1980. According to plaintiffs, these benefits were vested, entitling retirees to unalterable lifetime reimbursement of their Medicare Part B premium payments.

Collective bargaining agreements are contracts governed by federal common law. See Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448, 456, 77 S.Ct. 912, 1

L.Ed.2d 972 (1957). Generally speaking, contract interpretation is a legal question for the court, unless the contract is ambiguous, in which case the interpretation may become a fact question for the jury. See Casey v. Lifespan Corp., 62 F.Supp.2d 471, 480 (D.R.I. 1999). Here, plaintiffs do not contend that the applicable collective-bargaining-agreement provision was ambiguous, and the Court likewise finds no ambiguity in this provision. Therefore, interpretation of this provision is a question of law.

The applicable provision, which is identical in each of the three collective bargaining agreements, states:

> Medicare Part B Reimbursement
>
> Any eligible employee or retiree who is 65 years of age or over or whose spouse is age 65 or over, will be reimbursed an amount equal to the premium charged for Medicare Part B coverage for himself and/or his spouse.

As is clear from the language, the provision makes no reference to vesting or the duration of the Medicare Part B reimbursement.

Plaintiffs argue that this provision obligates defendants to provide lifetime reimbursement to retirees for their Medicare Part B premium payments. Defendants, on the other hand, contend that this obligation lasted only for the duration of the various collective bargaining agreements.

In support of their argument, plaintiffs cite United Steelworkers of America v. Textron, Inc., 836 F.2d 6 (1st Cir. 1987), in which the Court of Appeals for the First Circuit upheld a preliminary injunction requiring a company to pay retirees' health and life insurance premiums under several collective bargaining agreements. In affirming that the union demonstrated a likelihood of success on the merits, the Court of Appeals noted the union's argument "that it

would not make much sense for [the company] to promise to pay retiree insurance costs for only the few years of the contract's actual life." Id. at 9.

The Court does not agree with plaintiffs that Textron controls the outcome of this case. In Textron, the Court of Appeals merely held that the district court did not commit error in granting the preliminary injunction. Indeed, the Textron court explicitly stated that it "need not weigh these conflicting arguments [about the duration of the benefits]." Id. According to the Court of Appeals: "We need only decide whether the district court could find a likelihood of success for the Union. In our view, the record adequately supports that finding." Id. at 10 (emphasis added).

In addition, this portion of the Textron opinion cites to the oft-criticized International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, U.A.W. v. Yard-Man, Inc., 716 F.2d 1476 (6th Cir. 1983).[2] In Yard-Man, the Court of Appeals for the Sixth Circuit opined that "retiree [welfare] benefits are in a sense 'status' benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained." Id. at 1482. This statement was dicta, and immediately after this statement, the Court of Appeals noted that no federal labor policy presumptively favors the finding of irrevocable rights to retiree welfare benefits when the collective bargaining agreement is silent.

Moreover, other courts of appeal have criticized Yard-Man and have refused to infer an intent to vest retirement welfare benefits. See Int'l Union v. Skinner Engine Co., 188 F.3d 130, 139-41 (3d Cir. 1999); Int'l Ass'n of Machinists & Aerospace Workers, Woodworkers Div.,

---

[2] This Court does not read the Textron opinion as endorsing or adopting the so-called Yard-Man inference. See Ferrari v. Barclays Bus. Credit, Inc. (In re Morse Tool, Inc.), 148 B.R. 97, 144-47 (Bankr. D. Mass. 1992).

AFL-CIO v. Masonite Corp., 122 F.3d 228, 231 (5th Cir. 1997); Anderson v. Alpha Portland Indus., Inc., 836 F.2d 1512, 1517 (8th Cir. 1988). The Court of Appeals for the Seventh Circuit has held that benefits established by collective bargaining agreements do not survive the expiration of the contract, unless there is evidence that the parties intended the benefits to vest. Rossetto v. Pabst Brewing Co., 217 F.3d 539, 543-44 (7th Cir. 2000). Finally, the Sixth Circuit itself subsequently clarified that Yard-Man does not stand for the proposition that retiree status creates a legal presumption in favor of vesting. International Union, United Auto., Aerospace & Agr. Implement Workers of America v. BVR Liquidating, Inc., 190 F.3d 768, 772 (6th Cir. 1999) ("Although this inference does exist, Yard-Man does not shift the burden of proof to the employer, nor does it require specific anti-vesting language before a court can find that the parties did not intend benefits to vest.").

Instead, this Court rules that defendants' obligation to reimburse Medicare Part B premiums lasted only for the duration of the applicable collective bargaining agreement because both employees and retirees were equally entitled to this reimbursement. In International Union v. Skinner Engine Co., 188 F.3d 130 (3d Cir. 1999), the Court of Appeals for the Third Circuit rejected a similar vesting argument based on a collective bargaining agreement that provided medical benefits for both employees and retirees. The court reasoned that "[c]learly, the medical insurance benefits did not vest for active employees." Id. at 144. And the applicable collective-bargaining-agreement provision did not make a "material distinction between active employees and retirees in this regard." Id. Thus, "[t]he only reasonable conclusion – if one begins with the uncontroversial premise that benefits for active employees were not vested – is that benefits for retirees were likewise not vested." Id.

-6-

Here, like the collective bargaining agreement in Skinner Engine, these collective bargaining agreements provided Medicare Part B reimbursement to "[a]ny eligible <u>employee</u> or <u>retiree</u>." (emphasis added). And, also like the collective bargaining agreement in Skinner Engine, these collective bargaining agreements did not distinguish between active employees and retirees. Because the benefits for active employees were not vested and because the collective bargaining agreements do not differentiate between active employees and retirees, the Court shall not read into the collective bargaining agreements a provision vesting benefits for the retirees.

Based on the foregoing, the Court rules that the collective bargaining agreements covering the period from April 1, 1973 to April 1, 1980 did not entitle retirees to lifetime reimbursement of their Medicare Part B premiums.

### B.     Medicare Part B Reimbursement Between 1980 and 1997

The Court next rules that those employees who retired between April 1, 1980 and early 1997 are not entitled to Medicare Part B reimbursement for their lifetimes. The collective bargaining agreements for this period, unlike the agreements for the years 1973 to 1980, provided Medicare Part B reimbursement to employees only, and not to retirees. Thus, plaintiffs do not assert a claim under section 301 of the LMRA for these years. Instead, plaintiffs, citing several individualized documents, contend that they are entitled to relief under the ERISA doctrines of promissory estoppel and/or equitable estoppel, or, alternatively, under state-law contract principles and/or the state-law doctrine of promissory estoppel.

Initially, the Court rules that plaintiffs' state-law claims are preempted by federal law. As the Court previously explained in Local 369, supra, at 72, ERISA preempts any state-law claim that relates to an employee benefit plan. See 29 U.S.C. § 1144(a). Here, plaintiffs' state-law

breach-of-contract and promissory estoppel claims relate to the defendant Company's alleged representation that plaintiffs' Medicare Part B reimbursement would not change.[3] Accordingly, the Court rules that these claims are preempted by federal law.

Next, also as in Local 369, supra, at 72-73, the Court dismisses plaintiffs' promissory estoppel claim under ERISA because plaintiffs have an alternative form of relief under 29 U.S.C. § 1132(a)(1)(B).[4] Moreover, plaintiffs do not present a substantive argument in support of this promissory estoppel claim. The only time that plaintiffs' memorandum mentions the ERISA doctrine of promissory estoppel is in the subheading introducing the section on Medicare Part B reimbursement for the years 1980 to 1997. But in the section, plaintiffs make no arguments with respect to the ERISA doctrine of promissory estoppel. Instead, plaintiffs merely contend that the Company's practice of reimbursing Medicare Part B premiums is an ERISA plan and that plaintiffs are entitled to lifetime reimbursement of their premium payments. Both of these arguments support a claim for relief under section 1132(a)(1)(B). Because plaintiffs do not present a substantive argument with respect to their ERISA promissory estoppel claim and because plaintiffs' have an alternative form of relief under section 1132(a)(1)(B), the Court hereby dismisses plaintiffs' claim under the ERISA doctrine of promissory estoppel.

As for plaintiffs' equitable estoppel claim, "[i]t is . . . still an open question in this circuit whether an equitable estoppel claim is permitted under ERISA." Mauser v. Raytheon Co.

---

[3] The plaintiffs also raise state-law claims with respect to the termination of dental benefits described infra. For the same reasons, the Court rules that those state-law claims are also preempted.

[4] Section 1132(a)(1)(B) provides: "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Pension Plan for Salaried Employees, 239 F.3d 51, 57 (1st Cir. 2001). Yet, plaintiffs do not address why this Circuit should permit their equitable estoppel claim under ERISA – much less explain how their equitable estoppel claim differs from their promissory estoppel claim, or, alternatively, from a claim for relief under section 1132(a)(1)(B). As such, the Court dismisses plaintiffs' equitable estoppel claim. Thus, the sole remaining issue for the Court to decide with respect to Medicare Part B reimbursement for the years 1980 to 1997 is whether plaintiffs are entitled to relief under section 1132(a)(1)(B).

There are two types of employee benefit plans under ERISA: pension benefit plans and welfare benefit plans. Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co., 520 U.S. 510, 514, 117 S.Ct. 1513, 137 L.Ed.2d 763 (1997). Employee welfare benefit plans provide "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1)(A). Here, the defendant Company's reimbursement of Medicare Part B premiums constitutes a welfare benefit plan. Although ERISA contains stringent vesting requirements for pension benefit plans, it does not require automatic vesting for welfare benefit plans. Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 585 (1st Cir. 1993).

"The disparate treatment accorded welfare plans is not accidental." Wise v. El Paso Natural Gas Co., 986 F.2d 929, 935 (5th Cir. 1993). Congress did not establish vesting requirements for welfare benefit plans because "requir[ing] the vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income." Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1160 (3d Cir. 1990).

"Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). Of course, this does not mean that welfare benefit plans can never vest. An employer could certainly "oblige itself contractually to maintain benefits at a certain level in ways that are not mandated by ERISA." Vasseur v. Halliburton Co., 950 F.2d 1002, 1006 (5th Cir. 1992). But such an obligation is not to be inferred lightly. Skinner-Engine, 188 F.3d at 139.

Indeed, the Court of Appeals for the First Circuit has instructed district courts that "resolution of questions concerning employer obligations under [welfare benefit] plans must be tailored to avoid undermining Congress' considered decision that welfare benefit plans not be subject to a vesting requirement." Allen v. Adage, Inc., 967 F.2d 695, 698 (1st Cir. 1992) (internal quotations omitted). In addition, several courts of appeal require that employers agree to vested benefits in writing as part of the plan documents. See Sprague v. Gen. Motors Corp., 133 F.3d 388, 400 (6th Cir. 1998). "Given [the] presumption against the vesting of welfare benefits, silence indicates that welfare benefits are not vested." Vallone v. CNA Fin. Corp., 375 F.3d 623, 632 (7th Cir. 2004). "The plan participant bears the burden of proving, by a preponderance of the evidence, that the employer intended the welfare benefits to be vested." In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation, 58 F.3d 896, 902 (3d Cir. 1995).

Mindful of this strong presumption against the automatic vesting of welfare benefits, the Court rules that plaintiffs' evidence does not show that the Medicare Part B reimbursement for the years 1980 to 1997 was a vested benefit. The evidence proffered by plaintiffs in support of their argument consisted of personalized summaries given to individual Plaintiffs Fagan and

Senior. These summaries, which are virtually identical,[5] only state that "the Company will reimburse you the cost of Medicare Part 'B.'" No mention is made about the subject of vesting or the duration of the Medicare Part B reimbursement.

Furthermore, these summaries explicitly state that they are not governing: "In all cases, the exact provisions of the various Benefit Contracts and applicable laws will determine the benefits to be paid thereunder." Because these summaries make no mention of either vesting or the duration of the Medicare Part B reimbursement, and given that an employer is generally free to terminate welfare benefit plans, Curtiss-Wright, 514 U.S. at 78, these summaries do not demonstrate that plaintiffs were entitled to lifetime reimbursement of their Medicare Part B premiums.

The Court also rejects plaintiffs' argument that extrinsic evidence shows that the Medicare Part B benefits were vested. According to plaintiffs, Carol Cormier, a representative of the defendant Company's human resources department, allegedly informed certain individual plaintiffs that the Medicare Part B reimbursement would continue for their lifetimes. The plaintiffs, however, do not provide an affidavit or deposition testimony from Cormier herself, but rely on the deposition testimony of Plaintiffs Senior and Fagan and an affidavit submitted by Plaintiff Senior's wife. These oral statements allegedly made by Cormier, which are in no way supported by the documentation described above, are insufficient to overcome the strong presumption against the vesting of welfare benefits. See In re Unisys Corp., 58 F.3d at 902 ("The written terms of the plan documents control and cannot be modified or superseded by the employer's oral

---

[5] The document given to Plaintiff Senior adds the word "for" so that the statement reads: "the Company will reimburse you for the cost of Medicare Part 'B.'" (Emphasis added).

undertakings.").

Based on the foregoing, the Court rules that plaintiffs retiring between 1980 and 1997 are not entitled to lifetime reimbursement of their Medicare Part B premium payments.

**III.  Dental Benefits Under the 1997 Personnel Reduction Program and the 1999 Voluntary Reduction Program**

Plaintiffs next claim that Defendant NSTAR breached the terms of the 1997 Personnel Reduction Program ("PRP") and the 1999 Voluntary Separation Program ("VSP") in violation of ERISA.[6] Specifically, plaintiffs allege that Defendant NSTAR improperly canceled dental benefits for retirees, who were not age sixty-five as of April 1, 2003, when those retirees reached the age of sixty five.

As with the Medicare Part B reimbursement, plaintiffs contend that the dental benefits contained in the 1997 PRP and 1999 VSP were vested, entitling retirees to unalterable lifetime benefits. To this end, plaintiffs cite several documents,[7] including high-level documents that were personalized for individual retirees and entitled "Information Relative to Employee Benefits Upon Your Retirement Date." These personalized documents were given to Plaintiffs Fahy and Phipps in the 1997 PRP and Plaintiffs Potsma and Hirl in the 1999 VSP. Singling out the language in these documents stating that "[y]our dental coverage will be for your life," plaintiffs contend that these dental benefits were vested.

---

[6] Citing O'Connor v. Commonwealth Gas Co., 251 F.3d 262 (1st Cir. 2001), Defendant NSTAR disputes that the 1997 PRP and 1999 VSP are welfare benefit plans under ERISA. The Court, however, in Local 369, 317 F.Supp.2d at 75, has previously held that the 1997 PRP constituted an ERISA welfare benefit plan and so holds for the 1999 VSP.

[7] Plaintiffs also cite to a memorandum of agreement for each voluntary retirement program and documents announcing the inception of each program. None of these documents, however, make any mention of vesting, and they do not indicate the duration of the dental benefits. As such, they are not sufficient to show that the retirees' dental benefits were vested.

Defendants, however, point out that these same personalized documents caution that they are not governing:

> This summary is not intended to offer detailed descriptions of employee benefit plans. All information furnished is governed by the provisions of the actual plan documents pertaining to the appropriate benefit plans. If any conflict arises between this summary and the System's employee benefit plan documents, or if any point is not covered, the terms of the appropriate plan documents will govern in all cases.[8]

In addition, defendants note that in both the 1997 and 1999 programs prospective retirees were in fact given the governing, actual plan document, entitled "Participant Benefits Information," that contained a series of Summary Plan Descriptions ("SPDs"), including one for the dental plan. This governing document plainly states that "[t]he Company reserves the right, subject to the provisions of any collective bargaining agreement, to amend, modify or terminate the Plan at anytime."

The plaintiffs, however, contend that this reservation-of-rights language merely afforded defendants the right to modify or terminate a particular policy with a particular provider. It did not, plaintiffs insist, grant Defendant NSTAR the unfettered right to "amend, modify or terminate" its putative obligation to provide lifetime dental benefits.

The Court agrees with defendants and refuses to infer a vesting requirement based on personalized documents that plainly state they are not governing. Moreover, these documents

---

[8] Virtually identical language is also found in another document, "Personnel Reduction Program, Information for Commonwealth Energy System and Subsidiary Companies," which was distributed to employees in connection with the 1997 PRP.

explicitly direct prospective retirees to consult the "actual plan documents," which, in turn, properly reserve for the defendants the right "to amend, modify or terminate the Plan at any time." See In re Unisys Corp., 58 F.3d at 904 ("An employer who promises lifetime medical benefits, while at the same time reserving the right to amend the plan under which those benefits were provided, has informed plan participants of the time period during which they will be eligible to receive benefits provided the plan continues to exist.").

In addition, the Court disagrees with plaintiffs' contention that the reservation-of-rights language only grants defendants the right to modify or terminate a particular policy with a particular provider. This limited interpretation controverts the plain meaning of the provision, which unambiguously reserves the right to alter the plan as a whole; to wit: "[t]he Company reserves the right, subject to the provisions of any collective bargaining agreement, to amend, modify, or terminate the Plan at anytime." (Emphasis added).

For the aforementioned reasons, the Court rules that the dental benefits offered under the 1997 PRP and the 1999 VSP did not entitle retirees to lifetime dental benefits.

Finally, the Court dismisses plaintiffs' related claim that Defendant NSTAR breached its fiduciary duty under ERISA, 29 U.S.C. § 1104(a)(1), when, on April 1, 2003, it terminated the dental benefits contained in the 1997 PRP and 1999 VSP.

"[A]n employer breaches its fiduciary obligation [under section 1104(a)(1)] by lying to employees in order to induce them to surrender their benefits." Vallone, 375 F.3d at (citing Varity Corp. v. Howe, 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)). Here, plaintiffs argue that the inclusion of the "for life" language in the personalized documents shows that defendants set out to "mislead plan participants or misrepresent the terms or administration of

a plan." See id. (internal quotations omitted).

The Court disagrees. All of the cases cited by plaintiffs involve misrepresentations contained in SPDs. Here, the documents containing the "for life" language are not SPDs. See 29 U.S.C. § 1022(a)(1) (setting forth requirements for SPDs). Instead, they are high-level documents personalized for individual retirees. Furthermore, these documents explicitly state that they are not governing and they direct prospective retirees to consult the "actual plan documents," which, as described above, reserve for the Company the right "to amend, modify, or terminate the Plan at anytime."

In addition, Bernard Peloquin, Defendant NSTAR's Director of Total Compensation, explained in his rule 30(b)(6) deposition that the "for life" language "was accurate as of that particular point in time, but . . . . was subject to the plan documents and the company's ability to make changes." This testimony is consistent with the documentation, and does not, as plaintiffs contend, reveal a nefarious purpose on the part of defendants.

Based on the foregoing, the Court rules that the "for life" language, without more, does not show that defendants misled plaintiffs in order to induce them into surrendering their benefits.

**IV.   Conclusion**

For the reasons described above, the Court denies plaintiffs' motion for summary judgment and grants defendants' summary judgment motion on all counts.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge